IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

JOHN ANTHONY CASTRO,

    *Plaintiff*,

v.

SECRETARY OF STATE
ANDREW WARNER, and
DONALD JOHN TRUMP,

    *Defendants*.

Civil Action No. 2:23-cv-00598

Honorable Irene C. Berger

WEST VIRGINIA REPUBLICAN PARTY,

    *Intervenor-Plaintiff*.

### STATE OF WEST VIRGINIA'S MOTION TO INTERVENE AND FOR RESPONSE DEADLINES

The State of West Virginia respectfully moves to intervene as a defendant in this case. The State also requests that the Court set an October 6, 2023 deadline for the State to respond to Plaintiff's Verified Complaint for Declaratory and Injunctive Relief, *see* ECF No. 1, and an October 17, 2023 deadline for the State to respond to Intervenor-Plaintiff's Complaint in Intervention Seeking Declaratory and Injunctive Relief Pursuant to Federal Rules of Civil Procedure 24, 57, and 65, ECF No. 10-1.

The Court should grant this motion for the reasons found in the State's accompanying memorandum of law, which is incorporated by reference. *See* Fed. R. Civ. P. 24. The State seeks to intervene in this matter for the sole purpose of enabling the State's chief legal officer to express his view on the legal matters presented here, as the Attorney General's state constitutional rights and duties require. The State does not waive its right to sovereign immunity.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | **THE STATE OF WEST VIRGINIA** |
|  | PATRICK MORRISEY<br>ATTORNEY GENERAL |
|  | */s/ Michael R. Williams*<br>Michael R. Williams (WV Bar # 14148)<br>*Principal Deputy Solicitor General*<br>David E. Gilbert (WV Bar # 12157)<br>*Deputy Attorney General*<br>State Capitol Complex<br>Building 1, Room E-26<br>michael.r.williams@wvago.gov<br>dgilbert@wvago.gov<br>Telephone: (304) 558-2021 |
| Dated: October 2, 2023 | Facsimile: (304) 558-0140 |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

JOHN ANTHONY CASTRO,

    *Plaintiff*,

    v.

SECRETARY OF STATE
ANDREW WARNER, and
DONALD JOHN TRUMP,

    *Defendants*.

Civil Action No. 2:23-cv-00598

Honorable Irene C. Berger

WEST VIRGINIA REPUBLICAN PARTY,

    *Intervenor-Plaintiff*.

**STATE OF WEST VIRGINIA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO INTERVENE AND FOR RESPONSE DEADLINES**

Plaintiff John Anthony Castro is a serial, out-of-state litigant who seeks to deprive hundreds of thousands of West Virginians of their preferred choice for President of the United States. In doing so, Castro relies on a constitutional provision designed to ensure that certain Confederate belligerents would not retake federal office during the Reconstruction Era. Although courts have repeatedly refused to engage with political questions like the ones Castro means to advance here, *see, e.g.*, *Rudy v. U.S. Pat. & Trademark Off.*, No. 1:13-cv-00278, 2013 WL 12097552, at *2 (E.D. Va. Aug. 29, 2013), Castro nevertheless insists that this Court should march ahead and use this post-Civil-War law to intervene in an ongoing modern election. His suit thus "strike[s] at the heart" of one of our "democratic society[']s" "essen[tial]" rights: "[t]he right to vote freely for the candidate of one's choice." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). And West Virginia, like every State, "has a duty to enable its citizenry to vote." *Harding v. Edwards*, 484 F. Supp. 3d 299, 313 (M.D. La. 2020).

The State of West Virginia therefore moves to intervene as a defendant in this case. Allowing the State to intervene will enable the State's chief legal officer, the Attorney General, to express his views on the legal matters before the Court, as his State constitutional rights and duties expect he will. *See* Fed. R. Civ. P. 24.[1] But more importantly, allowing the State to intervene will ensure that the voters' interests will be fully voiced—and their right to cast a vote for the candidate of their choosing will be fully respected. After all, "[o]ther rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). And because the State seeks to intervene for that sole and limited purpose, the State does not waive its right to sovereign immunity.

If the Court grants the State's motion, then the State also requests that the Court give it until October 6, 2023, the same date as Defendants' deadline, to respond to Castro's Verified Complaint for Declaratory and Injunctive Relief. *See* ECF No. 1. The State further requests that it be permitted 21 days from filing—that is, until October 17, 2023—to respond to Intervenor-Plaintiff's Complaint in Intervention Seeking Declaratory and Injunctive Relief Pursuant to Federal Rules of Civil Procedure 24, 57, and 65. *See* ECF No. 10-1. These deadlines will not affect the broader timeline here, especially considering Defendants have not yet filed any responsive pleading or motion.

For the reasons that follow, the Court should grant the State's motion.

---

[1] The State recognizes that Federal Rule of Civil Procedure 24(c) contemplates that a proposed intervenor will attach a pleading its motion. Although the State has not attached a pleading here, that choice is not prejudicial because no responsive pleadings have been filed. *See Spring Construction Co. v. Harris*, 614 F.2d 374, 376-77 (4th Cir. 1980) (holding that when a responsive pleading is not attached under Rule 24(c), "the proper approach is to disregard non-prejudicial technical defects"). If permitted to intervene, the State will respond to Castro's complaint within the appropriate timeframe by moving to dismiss it. *See, e.g.*, *New Century Bank v. Open Sols., Inc.*, No. 10-6537, 2011 WL 1666926, *3 (E.D. Pa. May 2, 2011) (explaining that a motion to dismiss satisfies Rule 24(c)).

2

**BACKGROUND**

On September 7, 2023, Castro filed the Verified Complaint, asking the Court to declare that President Donald John Trump is disqualified from holding civil or military office—including the presidency—under Amendment XIV, Section 3 of the United States Constitution. Castro also asked the Court to enjoin West Virginia Secretary of State Mac Warner from "accepting and/or processing" President Trump's "ballot access documentation" for the 2024 presidential primary and general elections. ECF No. 1 ¶¶ 16, 18. Castro named as defendants Secretary Warner, in his official capacity, and President Trump. ECF No. 1 ¶¶ 3-4. Although Castro asks the Court to decide whether President Trump may ever again hold public office, Castro suggests that President Trump is merely "a nominal defendant." ECF No. ¶ 5.

Two weeks after filing his complaint, Castro filed an Emergency Application for a Temporary Restraining Order and Expedited Preliminary Injunction Hearing Consolidated with a Preliminary Bench Trial on the Merits. *See* ECF No. 9. In that motion, Castro sought a fourteen-day order restraining Secretary Warner from "accepting or scheduling an appointment" to accept "ballot access documentation" from President Trump or others, including the "State or National Republican Party[.]" ECF No. 9-2, at 2-3. In addition, Castro sought an expedited hearing on his further request for a preliminary injunction. ECF No. 9, at 8. In support, Castro submitted largely unsworn allegations and vague insistences that the "federal judiciary" must summon "the courage to do the right thing." ECF No. 9, at 7. Magistrate Judge Aboulhosn has since filed proposed findings of fact and conclusions of law recommending that the Court deny Castro's Emergency Application. ECF No. 13, at 10. Among other things, Castro has "failed to provide specific facts showing immediate and irreparable injury will occur prior to defendants' providing a response in opposition to his motion." ECF No. 13, at 7.

Castro did not name the State of West Virginia or its Attorney General as parties to his suit. Nor did he name the West Virginia Republican Party as a party, despite the Party's statutory responsibility for certifying at four-year intervals the plan by which delegates to the Republican National Convention will be elected or selected. *See* W. VA. CODE § 3-5-2(b). So the West Virginia Republican Party filed a motion to intervene, *see* ECF No. 10, and the Court granted it, *see* ECF No. 14. (Castro has declared that rather unexceptional decision "repugnant to the rule of law." ECF No. 24, at 2.) The State now likewise moves to intervene to protect its separate interests.

## ARGUMENT

### I. The State of West Virginia has the right to intervene.

Federal Rule of Civil Procedure 24(a) grants intervention as of right when, upon timely motion, the intervener "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). "[L]iberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (cleaned up). As the Fourth Circuit has put it, "to intervene as a matter of right under Rule 24(a), a movant generally must satisfy four criteria: (1) timeliness, (2) an interest in the litigation, (3) a risk that the interest will be impaired absent intervention, and (4) inadequate representation of the interest by the existing parties." *Scott v. Bond*, 734 F. App'x 188, 191 (4th Cir. 2018); *see also Hous. Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999) (same). The State's motion here satisfies each of these criteria.

*First*, the State's motion is timely. "In order to properly determine whether a motion to intervene in a civil action is sufficiently timely, a trial court in this Circuit is obliged to assess three factors: first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Alt v. EPA*, 758 F.3d 588, 591 (4th Cir. 2014). "[T]imeliness is a cardinal consideration of whether to permit intervention[.]" *Moore*, 193 F.3d at 839 (cleaned up). "But timeliness is to be determined from all the circumstances." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1012 (2022) (cleaned up).

Here, the State is filing this motion just twenty-five days after the Verified Complaint was filed, roughly two weeks after Castro purported to serve his complaint, and before any Defendants have filed a responsive pleading or motion in the case. Defendants only recently appeared. The State has not delayed or shown any lack of diligence in filing this motion. It has not been tardy under any standard. And no party is prejudiced by its timing, either. So the State's motion is prompt. *Contrast with Holsey v. Armour & Co.*, 743 F.2d 199, 205 (4th Cir. 1984) (permitting parties to intervene after trial).

*Second*, the State has a well-established and clearly articulated interest in having its Attorney General participate on behalf of the State in this litigation.

The Attorney General is an elected constitutional officer with "such duties as may be prescribed by law." W. VA. CONST. art. VII, § 1. He "is the State's chief legal officer" with implicit "constitutional responsibility for providing legal counsel to State officials and State entities." *State ex rel. McGraw v. Burton*, 569 S.E.2d 99, 108 (W. Va. 2002). His express statutory duties include "appear[ing] as counsel for the state in all causes pending . . . in any federal court[] in which the state is interested" and "defend[ing] . . . actions and proceedings against any state

5

officer in his official capacity in . . . any of the federal courts when the state is not interested in such cause against such officer[.]" W. VA. CODE § 5-3-2. In line with these express duties, the Attorney General has assigned three Deputy Attorneys General to represent Secretary Warner here. *See* ECF No. 12.

But the Attorney General's express statutory duties do not capture the full extent of his constitutional obligations. As the State's chief legal officer, the Attorney General's "inherent constitutional functions" include "play[ing] a central role in . . . the . . . legal policy and positions [asserted] by the State of West Virginia and State entities, particularly before tribunals." *Burton*, 569 S.E.2d at 101-02. These positions must result from "meaningful consideration of the potential effects of such legal policy and positions on the full range of State entities and interests[.]" *Id.* at 102. In playing this role, the Attorney General "assure[s] that a constitutional officer who is directly elected by and accountable to the people . . . express[es] his legal view on matters of State legal policy generally and particularly before tribunals where the State is a party." *Id.* (emphasis added). "No statute, policy, rule, or practice may constitutionally operate, alone or cumulatively, to limit, reduce, transfer, or reassign the duties and powers of the Office of the Attorney General in such a fashion as to prevent that office from performing [these] inherent constitutional functions." *Id.* at 102.

The Attorney General's "inherent constitutional functions" are not fully discharged when he assigns his deputies or assistants to represent another State entity or officer. In our federal system, "States are free to structure themselves as they wish," and they often "choose to conduct their affairs through a variety of branches, agencies, and elected and appointed officials" who may "reach very different judgments about important policy questions and act accordingly." *Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191, 2197 (2022). Indeed, "diverse State entities have

contrasting perspectives and interests, and may take different (even competing or conflicting) legal positions before tribunals—sometimes on important issues involving State rights and powers generally, citizen or business rights, etc." *Burton*, 569 S.E.2d at 114. A Deputy or Assistant Attorney General who represents a state officer represents that officer, "rather than the State itself," and must "advocate the policy position of the State officer in that litigation, even when the officer's policy position differ[s] from that preferred by the Attorney General." *Id.* at 106. Because of these realities, the Supreme Court of Appeals has held that the Attorney General has a "right to appear as an intervenor as Attorney General on behalf of the State in all proceedings where the interest of the State or a State entity is at issue, to assert the Attorney General's view of the law on behalf of the State." *Id.* at 102.

Federal courts should respect the State's sovereign choice about who should represent its own interests. *See Cameron*, 142 S. Ct. at 1011 (stating that "[r]espect for state sovereignty must also take into account the authority of a State to structure its executive branch in a way that empowers multiple officials to defend its sovereign interests in federal court"). "To hold otherwise would . . . evince disrespect for a State's chosen means of diffusing its sovereign powers among various branches and officials" and "risk[s] turning a deaf federal ear to voices the State has deemed crucial to understanding the full range of its interests." *Berger*, 142 S. Ct. at 2201. Worse yet, ignoring the State's wishes risks "encourag[ing] plaintiffs to make strategic choices to control which state agents they will face across the aisle in federal court" and "tempt[s] litigants to select as their defendants those individual officials they consider most sympathetic to their cause or most inclined to settle favorably and quickly." *Id.* By contrast, "[r]especting the States' plans for the distribution of governmental powers . . . serves important national interests." *Id.* at 2201-02 (cleaned up).

In short, although one state officer is already involved in this case, West Virginia law expects that the Attorney General will remain involved in cases of public importance to ensure that courts are informed of any interests beyond that officer's narrow remit. And "it is among the most elementary functions of a government to serve in a representative capacity on behalf of its people." *Stuart v. Huff*, 706 F.3d 345, 351 (4th Cir. 2013). Especially when a candidate for the highest federal office is accused of crimes for the purposes of barring him from a West Virginia ballot, the public importance—and the State and Attorney General's attendant interest—is obvious. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 41 (2013) (Alito, J., dissenting) ("The integrity of federal elections is a subject over which the States and the Federal Government are mutually concerned." (cleaned up)); *Gonzalez v. Arizona*, 677 F.3d 383, 440 (9th Cir. 2012) (Kozinski, J., concurring) ("While the federal government has an interest in how elections for federal office are conducted, the states are not disinterested bystanders."); *see also Weber v. Heaney*, 793 F. Supp. 1438, 1443 n.3 (D. Minn. 1992) (collecting Supreme Court authorities recognizing the "numerous state interests in regulating federal elections").

*Third*, the State's ability to protect its legal interest would be impaired in the absence of intervention. As one circuit court has explained, "the requirement of impairment of a legally protected interest is a minimal one: the requirement is met if the applicant shows 'that representation of his interest *may be* inadequate.'" *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1007 (6th Cir. 2006) (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (cleaned up)) (emphasis added); *accord Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976); *see also, e.g.*, *Rutherford Cnty. v. Bond Safeguard Ins. Co.*, No. 1:09CV292, 2009 WL 6543659, at *4 (W.D.N.C. Dec. 3, 2009)

8

(finding intervention appropriate where "there would be a possible impairment of the potential intervenor's legal interests if they were not allowed to participate").

Again: the Attorney General's ability to discharge his "inherent constitutional function" *will* be impaired if he is unable to "express his legal view on matters of State legal policy generally and particularly before [this] tribunal[] where the State is a party." *Burton*, 569 S.E.2d at 102. And more generally, the administration of elections—even federal elections—implicates serious state *sovereign* interests. *Shelby Cnty. v. Holder*, 570 U.S. 529, 543 (2013). The Attorney General, speaking on behalf of the State as a whole, is better able to articulate and defend those interests than anyone else. *Cf. Allied Title Lending, LLC v. Taylor*, 420 F. Supp. 3d 436, 457 (E.D. Va. 2019) (permitting the Virginia Attorney General to intervene to vindicate the State's quasi-sovereign interests).

*Fourth*, the State satisfies the final element that assesses the adequacy of representation by existing parties. "Rule 24(a)(2)'s [adequacy] test . . . presents proposed intervenors with only a minimal challenge: It promises intervention to those who bear an interest that *may be* practically impaired or impeded unless existing parties adequately represent that same interest." *Berger*, 142 S. Ct. at 2195-96 (cleaned up) (emphasis added); *accord Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976) (citing *Trbovich*, 404 U.S. at 538 n.10, and stating that the "burden of showing an inadequacy of representation is minimal"). "A would-be intervenor," therefore, is "not required to show that the current representation will in fact be inadequate." *Blackwell*, 467 F.3d. at 1008. For example, "it may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997).

9

Once more, state constitutional law proves to be the driving force on this factor. As the State has stressed several times now, the Attorney General has a unique and "central role in ensuring" that the "legal policy and positions" asserted "before tribunals" reflect "the full range of State entities and interests[.]" *Burton*, 569 S.E.2d at 101-02. Although the Secretary of State has important and valuable insights on electoral processes, the Attorney General's role and perspective is necessarily broader than the Secretary of State's. *See Burton*, 569 S.E.2d at 109 (recognizing that "[u]nlike the federal government" where all executive power is vested in the President, the State constitution "apportions executive power among several elected officers" who may have "differing policy views and perspectives"). The Court must not "displace [the] State's prerogative to select which agents may . . . protect its interests[,]" *Berger*, 142 S. Ct. at 2204-05, and the State's intervention "will create little or no interference with or complication of the litigation[,]" *Maxum Indem. Co. v. Biddle L. Firm, PA*, 329 F.R.D. 550, 556 (D.S.C. 2019) (quoting *N.H. Ins. Co. v. Greaves*, 110 F.R.D. 549, 552 (D.R.I. 1986)). And because "the Attorney General is the proper representative of the state's interest in defending the validity of its [election-related actions]," *Daggett v. Webster*, 190 F.R.D. 12, 14 (D. Me. 1999), the State's representation should not hinge on the choices of another constitutional officer.

The State, represented by the Attorney General, should be thus granted intervention by right.

**II.     Alternatively, the Court should grant the State of West Virginia permissive intervention.**

Federal Rule of Civil Procedure 24(b) provides that, on timely motion, the court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The rule further explains that "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the

10

original parties' rights." Fed. R. Civ. P. 24(b)(3). Under these standards, the Court should permit the State of West Virginia to intervene.

*First*, this motion is timely. As explained, no party has filed a responsive pleading or motion. Although Castro filed an early motion for injunctive relief, the magistrate judge has already recommended how to resolve that motion—and the State's involvement would not delay the outcome on that request in any way.

*Second*, the State of West Virginia's defenses share common questions of law and fact with both Castro's and the Intervenor-Plaintiff's claims. Both raise arguments that consider how Amendment XIV, Section 3 of the United States Constitution applies to West Virginia's primary and general elections and, in particular, to President Trump's anticipated attempt to appear on the 2024 ballot in those elections. Common questions like Castro's standing to raise these claims, the political and non-justiciable nature of this proceeding generally, and the merits (or lack thereof) of Castro's constitutional arguments will almost certainly be addressed in all the parties' filings.

*Third*, and finally, granting the State of West Virginia the opportunity to intervene at this early stage will not unduly delay, nor will it prejudice, any other party's rights. The State's requested deadline to respond to Castro's Verified Complaint matches the date already set for the existing Defendants to respond. And the State's requested date to respond to Intervenor-Plaintiff's Complaint in Intervention matches the existing Defendants' date to respond under Federal Rule of Civil Procedure 12. The State will otherwise abide by any deadlines that the Court might set. Thus, the State's requested deadlines will not affect the broader timeframe of the matter. Instead, the State's intervention will facilitate a prompt and equitable resolution of this case while ensuring that the full voice of the State's legal interests is heard.

## CONCLUSION

For all these reasons, the State of West Virginia, by its Attorney General, should be permitted to intervene.[2]

Respectfully submitted,

**THE STATE OF WEST VIRGINIA**

PATRICK MORRISEY
ATTORNEY GENERAL

*/s/ Michael R. Williams*
Michael R. Williams (WV Bar # 14148)
 *Principal Deputy Solicitor General*
David E. Gilbert (WV Bar # 12157)
 *Deputy Attorney General*
State Capitol Complex
Building 1, Room E-26
michael.r.williams@wvago.gov
dgilbert@wvago.gov
Telephone: (304) 558-2021
Dated: October 2, 2023    Facsimile: (304) 558-0140

---

[2] If the Court decides not to allow the State to intervene, then the State moves for leave to participate as amicus curiae throughout these proceedings for the same reasons.

12