IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

JOHN ANTHONY CASTRO,

    *Plaintiff*,　　　　　　　　　　　　　　　　Civil Action No. 2:23-cv-00598

    v.　　　　　　　　　　　　　　　　　　　　Honorable Irene C. Berger

SECRETARY OF STATE
ANDREW WARNER, and
DONALD JOHN TRUMP,

    *Defendants*.

WEST VIRGINIA REPUBLICAN PARTY,

    *Intervenor-Plaintiff*.

**PROPOSED INTERVENOR STATE OF WEST VIRGINIA'S
RESPONSE TO THE OCTOBER 4, 2023, ORDER CONCERNING SUBSTITUTION**

Earlier this month, the State of West Virginia moved to intervene here. In response, the Court proposed that "the interests of the [Secretary] would be subsumed by the State of West Virginia," so the Court should instead substitute the State for the Secretary as defendant "for the sake of judicial economy." ECF No. 27, at 1. But this Court should permit the State and the Secretary of State to participate here as separate parties represented by separate counsel. That approach would be consistent with state law on the respective roles of the Attorney General and the Secretary of State. It would be consistent with federal law on intervention. And it would be consistent with the Eleventh Amendment. What's more, the State will take care not to complicate these proceedings or frustrate judicial economy. So for all these reasons, rather than substitute the State for the Secretary, the Court should instead grant the State's motion to intervene and permit all three defendants—the Secretary, the State, and President Trump—to move forward independently.

1

*First*, consider how the Secretary of State and the Attorney General (representing the State) play complementary but distinct roles under West Virginia law.

The Secretary of State is a constitutional officer, W. VA. CONST. art. VII, § 1, who serves an important role as "the chief election official of the state," W. VA. CODE § 3-1A-6(a). West Virginia law thus "give[s] him some position or standing in the election law field." *State ex rel. Manchin v. Lively*, 295 S.E.2d 912, 914 (W. Va. 1982). Most relevant here, "with regard to an office embracing more than one county, the Secretary of State is a proper party respondent to test the eligibility of a candidate for such office." *State ex rel. Cohen v. Manchin*, 336 S.E.2d 171, 177 (W. Va. 1984). But the Secretary is "intimately involved in the administration and enforcement" of West Virginia's election and campaign-related laws. *Rogers v. Hechler*, 348 S.E.2d 299, 308 (W. Va. 1986). So he might feel compelled to take extra care to remain neutral and dispassionate when it comes to disputes (like this one) implicating candidates to avoid even the appearance of inappropriate favoritism. *Cf.* Ann Shorstein, *Politicizing the Election Process: "The Katherine Harris Effect,"* 2 FLA. COASTAL L.J. 373, 375 (2001) (contemplating that a secretary of state in another state will act in an "apolitical, non-partisan manner").

The Attorney General is also a constitutional officer, W. VA. CONST. art. VII, § 1, who acts as "the State's chief legal officer," *State ex rel. McGraw v. Burton*, 569 S.E.2d 99, 107 (W. Va. 2002). Drawing on powers found in the Constitution, statutes, and the common law, *id.* at 115, he is charged with ensuring that "tribunals" can consider "the full range of State entities and interests," *id.* at 115-16. In other words, the Attorney General is expected to "express his legal view on matters of State legal policy generally," *id.* at 116, separate from whatever individual interests a particular state agency or entity might have in a suit, *id.* at 115. And those views might lead him to make arguments that—while supporting the same result—might differ from the Secretary's

2

(especially because he is not directly involved in elections in the way the Secretary is). But the Attorney General's broader role still does not displace the roles of other officers, like the Secretary of State. *Cf. State v. Ehrlick*, 64 S.E. 935, 936 (W. Va. 1909) (explaining that the Attorney General's powers do not "displace" those of a prosecuting attorney).

Facing separate roles and responsibilities like these, West Virginia courts have distinguished between the Attorney General *acting as counsel for an agency or officer* and the Attorney General *acting as counsel for the State*. Because he is the State's chief legal officer, the Attorney General bears a "constitutional responsibility for providing legal counsel to State officials and State entities." *Burton*, 569 S.E.2d at 108. When fulfilling that responsibility to his agency or officer clients, the Attorney General is "required … to represent the entity's position." *Id.* at 117 n.27. "The Attorney General's role *in this capacity* is not to make public policy in his own right on behalf of the state," *Manchin v. Browning*, 296 S.E.2d 909, 920 (W. Va. 1982) (emphasis added),[1] and he "must defer to the decisions of the officer whom he represents," *id.* at 921 (discussing the Attorney General's relationship with the Secretary of State). But the Attorney also must be empowered to voice the State's broader interests. So "[t]he Attorney General additionally has the right to appear as an intervenor as Attorney General on behalf of the State in all proceedings where the interest of the State or a State entity is at issue, to assert the Attorney General's view of the law on behalf of the State." *Burton*, 569 S.E.2d at 117; *see also* W. VA. CODE § 5-3-2 (separately delineating the Attorney General's power to "appear as counsel for the State in all causes pending … in any federal court … in which the state is interested" and his duty to "defend all actions and proceedings against any state officer in his official capacity in … any of the federal

---

[1] *Manchin* incorrectly held that the Attorney General enjoyed no common-law powers. The Supreme Court of Appeals has since rectified that mistake, *State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 744 S.E.2d 625, 645 (W. Va. 2013), but that flawed line of thinking has no effect on *Manchin*'s discussion of the roles of the Attorney General.

courts"). In other words, in this latter role, the Attorney General is exercising his "undoubted authority to pursue litigation that advances or vindicates public interests." *Pennsylvania v. Mid-Atl. Toyota Distribs.*, 704 F.2d 125, 131 (4th Cir. 1983). Merging these two distinct roles into one—and assuming that the Secretary's interests are subsumed into the State's—could either give insufficient respect to the Secretary's "decisions" as a co-equal constitutional officer or force the Attorney General to inappropriately ignore his own perspective of the State's interests. *Manchin*, 296 S.E.2d at 920.

*Second*, federal law governing intervention respects a State's choice to separate its functions as West Virginia has. Whether because of "the pressures of divided government[,] … the strategic allocation of resources," *Boot Barn, Inc. v. Bonta*, No. 2:22-CV-02105, 2023 WL 5155878, at *3 (E.D. Cal. Aug. 10, 2023), or other reasons entirely, "States may organize themselves in a variety of ways," *Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191, 2201 (2022). *See also id.* at 2197 (explaining that States might divide responsibilities in this way because "[s]ometimes leaders in different branches of government may see the State's interests at stake in litigation differently" and [s]ome States may judge that important public perspectives would be lost without a mechanism allowing multiple officials to respond"). So in the intervention context, "federal courts should rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law." *Id.* at 2201. Intervention should instead be granted.

As the Supreme Court stressed just last year, "[t]o hold otherwise would not … evince disrespect for a State's chosen means of diffusing its sovereign powers among various branches and officials" and cause many other practical harms to both state and federal interests. *Berger*, 142 S. Ct. at 2201. When it comes to who gets to speak on its behalf in federal court, "the choice

4

belongs to [West] Virginia." *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1952 (2019); *see also Berger*, 142 S. Ct. at 2202 (collecting authorities). And no case has suggested that a State loses that choice merely because the separate entities happen to share interests and lawyers. After all, defendants in federal litigation have common interests and common counsel all the time. No wonder, then, that the Sixth Circuit *reversed* a district court that refused to allow the Attorney General to intervene on behalf of the State of Ohio in nearly identical circumstances—that is, an election-related lawsuit in which the Secretary of State was already a defendant and already represented by the Attorney General. *See Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1008 (6th Cir. 2006) ("[T]he Secretary's primary interest is in ensuring the smooth administration of the election, while the State … ha[s] an independent interest in defending the validity of Ohio laws and ensuring that those laws are enforced."); *cf. Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2336 (2021) (noting how the Attorney General had standing to pursue an election-related appeal when he had earlier intervened on behalf of the State despite the Secretary's preexisting involvement).

*Third*, substituting in the State for the Secretary presents some serious practical difficulties. For one, the Court has not yet noted how it intends to substitute the State as defendant without the plaintiff's consent. Remember that Castro has not sought to amend his complaint to add the State. Perhaps the Court plans to use Federal Rules of Civil Procedure 21 or 25, which might allow for substitution without anyone's consent. But it is not yet obvious whether the proposed substitution would meet the relevant standards under those rules. And maybe more importantly, a substitution could create complications under the Eleventh Amendment. To be sure, the Eleventh Amendment "permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not a suit against the state for

purposes of the Eleventh Amendment." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). But that exception does not apply to the State itself. *See, e.g.*, *Indus. Servs. Grp., Inc. v. Dobson*, 68 F.4th 155, 163 (4th Cir. 2023) (explaining that the Eleventh Amendment "precludes suits against states as named parties," among other things). So if the Court were to substitute the State as the sole defendant, Eleventh Amendment immunity would either bar or substantially complicate any potential award of relief. (Though, to be clear, Castro has no right to relief.) Better to avoid these thorny issues by leaving the existing parties in place while allowing the State to join.

*Fourth*, and finally, the State will take particular care not to create difficulties in managing this case and or otherwise undermine judicial economy by participating here. Experience is some of the best evidence on this point; the State has intervened in similar situations and not derailed those cases. *See, e.g.*, *Women's Health Ctr. of W. Va. v. Sheth*, No. 2:23-CV-00079, 2023 WL 2146255, at *1 (S.D.W. Va. Feb. 21, 2023) (permitting the State to intervene even though other state officials were already defendants); Order, *B.P.J. v. W. Va. State Bd. of Educ.*, No. 2:21-CV-00316 (S.D.W. Va. June 18, 2021), ECF No. 44 (same). And the State has no intention here other than to articulate the legal points that defeat Castro's claims. It has no plans to file extra long filings or needlessly repeat points that others might make. Indeed, the attached proposed motion to dismiss shows how the State plans to pursue its defenses efficiently—no page-limit extension required. *See* Ex. 1. In any event, the State has already explained why it believes it may intervene as a matter of right. *See* ECF No. 25, at 6-12. And Federal Rule of Civil Procedure 24(a) gives "concerns of judicial economy … no weight" when it comes to whether a party may intervene as a matter of right. *In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991). If the Court remains concerned about efficiency, it could impose conditions on intervention to prevent things from

6

slowing down. *See* FED. R. CIV. P. 24 advisory committee's note to 1966 amendment ("An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.").

In this circuit, having *more* parties involved is not a bad thing. Quite the opposite: "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (cleaned up). The Court should therefore allow the State to intervene and allow the Secretary to argue separately on his own behalf.[2]

                            Respectfully submitted,

                            **THE STATE OF WEST VIRGINIA**

                            PATRICK MORRISEY
                            ATTORNEY GENERAL

                            */s/ Michael R. Williams*
                            Michael R. Williams (WV Bar # 14148)
                              *Principal Deputy Solicitor General*
                            David E. Gilbert (WV Bar # 12157)
                              *Deputy Attorney General*
                            State Capitol Complex
                            Building 1, Room E-26
                            michael.r.williams@wvago.gov
                            david.e.gilbert@wvago.gov
                            Telephone: (304) 558-2021
Dated: October 10, 2023          Facsimile: (304) 558-0140

---

[2] If the Court still decides to deny the State leave to intervene, then the State renews its request to file its proposed motion to intervene as an amicus brief. *See, e.g., Ohio Valley Env't Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 32 (S.D.W. Va. 2015).