# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

JOHN ANTHONY CASTRO,

     *Plaintiff*,                          Civil Action No. 2:23-cv-00598

     v.                              Honorable Irene C. Berger

SECRETARY OF STATE
ANDREW WARNER, and
DONALD JOHN TRUMP,

     *Defendants*.

WEST VIRGINIA REPUBLICAN PARTY,

     *Intervenor-Plaintiff.*

### STATE OF WEST VIRGINIA'S [PROPOSED] MOTION TO DISMISS

Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the State of West Virginia moves to dismiss Plaintiff's Verified Complaint. *See* ECF No. 1.[1]

Plaintiff's claims fail for several reasons. At the outset, the Court lacks jurisdiction to consider them. Castro does not have standing to pursue the claims he raises. His claims also are not ripe. And Castro's claims present a non-justiciable political question, going to the core political matter of whether a person may serve as President of the United States. These threshold issues aside, none of Castro's claims have merit, as he misapplies the Fourteenth Amendment's Disqualification Clause in multiple, independent ways in trying to apply it against President Trump.

---

[1] The State intends for this motion to satisfy Federal Rule of Civil Procedure 24(c), which requires intervenors to provide a proposed pleading. *See, e.g.*, *Ctr. for Biological Diversity v. Jewell*, No. CV-15-00019, 2015 WL 13037049, at *1 (D. Ariz. May 12, 2015) (holding that a State's proposed motion to dismiss satisfied Rule 24(c)'s pleading requirement); *accord New Century Bank v. Open Sols., Inc.,* No. CIV.A. 10-6537, 2011 WL 1666926, at *3 (E.D. Pa. May 2, 2011).

The Court should grant this motion for the reasons found in the State's accompanying memorandum of law, which it incorporates by reference.

Respectfully submitted,

**THE STATE OF WEST VIRGINIA**

PATRICK MORRISEY
ATTORNEY GENERAL

*/s/ Michael R. Williams*
Michael R. Williams (WV Bar # 14148)
  *Principal Deputy Solicitor General*
David E. Gilbert (WV Bar # 12157)
  *Deputy Attorney General*
State Capitol Complex
Building 1, Room E-26
michael.r.williams@wvago.gov
david.e.gilbert@wvago.gov
Telephone: (304) 558-2021
Dated: October 10, 2023          Facsimile: (304) 558-0140

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

JOHN ANTHONY CASTRO,

     *Plaintiff*,                        Civil Action No. 2:23-cv-00598

     v.                             Honorable Irene C. Berger

SECRETARY OF STATE
ANDREW WARNER, and
DONALD JOHN TRUMP,

     *Defendants*.

WEST VIRGINIA REPUBLICAN PARTY,

     *Intervenor-Plaintiff.*

**STATE OF WEST VIRGINIA'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS [PROPOSED] MOTION TO DISMISS**

PATRICK MORRISEY
ATTORNEY GENERAL

Michael R. Williams (WV Bar # 14148)
 *Principal Deputy Solicitor General*
David E. Gilbert (WV Bar # 12157)
 *Deputy Attorney General*
State Capitol Complex
Building 1, Room E-26
michael.r.williams@wvago.gov
david.e.gilbert@wvago.gov
Telephone: (304) 558-2021
Facsimile: (304) 558-0140

*Attorneys for the State of West Virginia*

## INTRODUCTION

Plaintiff John Anthony Castro filed this lawsuit as part of a multi-state litigation effort that he dubs "Operation Deadlock."  John Anthony Castro (@realJohnACastro), X (Sept. 20, 2023, 2:17 PM), https://bit.ly/48GyE9y.  Castro's supposed operation involves filing suit after suit— roughly two dozen so far—seeking to disqualify President Donald Trump from running for election again.  *See* ECF No. 37.  Castro will then "sidelin[e] and neutraliz[e] the influence of conservative judges" by "nonsuit[ing] those cases" that are not assigned to "Obama-appointed or Clinton-appointed judges."  Katherine Fung, *Donald Trump's Lawyers Get Stretched Even Thinner*, NEWSWEEK (Sept. 19, 2023, 11:22 AM), https://bit.ly/3S2a25B; *see, e.g.*, Notice of Dismissal, *Castro v. Henderson*, No. 2:23-cv-00617 (D. Utah Sept. 27, 2023), ECF No. 14 (Castro dismissing his suit after it was reassigned to a judge appointed by President Trump); *but see, e.g.*, *In re Fieger*, No. 97-1359, 1999 WL 717991 (6th Cir. Sept. 10, 1999) (affirming sanctions against attorney who had "dismissed [his] cases so that he could select the judge").  Castro evidently hopes these efforts will "completely bankrupt [President Trump] by next summer."  John Anthony Castro (@realJohnACastro), X (Sept. 27, 2023, 8:40 PM), https://bit.ly/45gxpLq.

Trouble is, the claims that Castro brings as part of his "operation" have no basis in either law or fact.  For one thing, he lacks standing to bring them, seeing as how he has not plausibly alleged that he will be injured as a competitor.  (No wonder that at least two courts have already dismissed similar claims from Castro because of similar standing problems.)  For another, Castro's claims are not ripe, as his West Virginia candidacy remains speculative.  The claims also present a quintessentially nonjusticiable political question; issues of this sort would belong to Congress, not the federal courts.  And if the Court is still inclined to reach the merits, then Castro loses there, too.  President Trump is not an "officer" subject to disqualification under the Fourteenth

Amendment, and the complaint does not allege facts establishing that President Trump either engaged in insurrection or gave aid or comfort to our country's enemies. And all this assumes that Section 3 of the Fourteenth Amendment is self-executing. Castro has not shown that it is.

Lawsuits—especially those asking federal courts to intervene directly in national elections—are serious business. They should not be used as tools to bankrupt someone or harass a politician that a plaintiff might disfavor. "[J]udicial action must be governed by standard, by rule, and must be principled, rational, and based upon reasoned distinctions found in the Constitution or laws." *Rucho v. Common Cause*, 139 S. Ct. 2484, 2507 (2019) (cleaned up). Seeing as how the complaint lacks much of anything that can be called "principled" or "rational," the Court should dismiss it with prejudice.

## FACTUAL BACKGROUND

In his Verified Complaint, Castro asks this Court to declare that President Donald John Trump is disqualified from holding civil or military office—including the presidency—under Amendment XIV, Section 3 of the United States Constitution. ECF No. 1 ¶ 16. He also asks the Court to enjoin West Virginia Secretary of State Mac Warner from "accept[ing] and/or processing" President Trump's "ballot access documentation" for the 2024 presidential primary and general elections. *Id.* ¶ 18. Castro brings these claims as a "U.S. citizen and Republican primary presidential candidate … for the 2024 Presidential Election." *Id.* ¶ 2.

The complaint alleges that President Trump should be disqualified from future office because of certain of Trump's supposed acts and statements in late September 2020 and early 2021. In particular, Castro alleges that President Trump "issued an executive military order to a paramilitary organization" in September 2020. ECF No. 1 ¶ 9. A leader of that same organization was "convicted of Seditious Conspiracy" almost two years later. *Id.* ¶ 12. Later, President Trump

allegedly provided "words of sympathy" to persons entering the Capitol on January 6, 2021. *Id.* ¶ 10. A few days after that, President Trump allegedly said that he would "treat [the same] people fairly" if reelected, and he explained that he would "give them pardons" if necessary. *Id.* ¶ 11. And in June 2021, President Trump allegedly "hosted a fundraiser" for the January 6 participants. *Id.* ¶ 13. Castro maintains that these acts and statements (along with other unspecified "acts of ratification of and sympathy with the convicted criminals of the January 6th Insurrection"), amounted to "'aid or comfort' to an insurrection," *id.* ¶ 14; *see also id.* ¶¶ 18, 73. Beyond these bare factual allegations, Castro offers pages of legal arguments and insists that "[t]he entire nation knows that [President] Trump—along with, among others, a wife of a Supreme Court Justice, *id.* ¶ 71—provided aid and comfort to the January 6th Insurrection." *Id.* ¶ 111.

Castro says he should be granted relief because he is allegedly Trump's political opponent. According to the complaint, Castro "intends to either appear on the 2024 Republican primary ballot in this state or to file documentation to be a formally recognized write-in candidate in both the primary and general elections." ECF No. 1 ¶ 19. He notes that he is an "FEC-registered" candidate, *id.* ¶ 22, and "has an active campaign website," *id.* ¶ 30. *See also id.* ¶ 36. He also lists various media sources that have published articles about him, *id.* ¶ 34, although most of these articles appear to be about his various lawsuits, *see, e.g.*, Nick Corasaniti & Jonathan Weisman, *Is Trump Disqualified? Republicans Prepare to Fight Long-Shot Legal Theory*, N.Y. TIMES (Sept. 1, 2023), https://bit.ly/46ymvSu. According to Castro, President Trump is "siphoning off votes and contributions" from him. ECF No. 1 ¶ 103. And while not clear, Castro seems to allege that President Trump intends to kill "every American citizen that disagree[d] with [him]." *Id.* ¶ 109. He therefore asks the Court to "preserv[e] our Republic" by preventing President Trump from running for elected office. *Id.* ¶ 112.

**LEGAL STANDARD**

Castro's complaint implicates several doctrines going to this Court's subject-matter jurisdiction, including standing, ripeness, and the political-question doctrine. *See Indus. Servs. Grp., Inc. v. Dobson*, 68 F.4th 155, 167 (4th Cir. 2023) (explaining that standing is jurisdictional); *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019) (same as to ripeness); *Taylor v. Kellogg Brown & Root Servs., Inc.*, 658 F.3d 402, 407 (4th Cir. 2011) (same as to political-question doctrine). "[A] lack of subject-matter jurisdiction will lead to dismissal under [Federal] Rule [of Civil Procedure] 12(b)(1)." *Abbott v. Pastides*, 900 F.3d 160, 175 n.8 (4th Cir. 2018). And when evaluating a Rule 12(b)(1) motion premised on a "facial challenge to a complaint," the Court must accept "as true all *factual* allegations set forth in the complaint." *Willner v. Dimon*, 849 F.3d 93, 99 (4th Cir. 2017) (emphasis added).

Castro's complaint also needs to state an actionable claim. "Dismissal is proper if the well-pleaded facts of the complaint, taken in the light most favorable to the plaintiff and excluding unwarranted inferences, unreasonable conclusions, or arguments, fail to state a plausible claim for relief." *Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 885 (4th Cir. 2023) (cleaned up). "The [C]ourt need not accept legal conclusions." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023) (cleaned up). And "the test" under Rule 12(b)(6) "is not legally myopic." *Tabb v. Bd. of Educ. of Durham Pub. Sch.*, 29 F.4th 148, 155 (4th Cir. 2022). "Rather, it must be applied with common sense to determine whether a complaint contains" a *plausible* claim, "not merely [a] conceivable" one. *Id.*

**ARGUMENT**

The Court should dismiss Castro's complaint for lack of jurisdiction. He lacks standing to bring his constitutional claim, as he has not specifically established how he has been injured, how

that injury would be traceable to the defendants here, and how a favorable decision would redress that injury. Relatedly, his claim is not ripe. His own allegations show that Castro is not a candidate for office in West Virginia. Because he relies on a potential *future* candidacy to establish standing, he cannot jump out of the gate now. Lastly, this case presents a quintessential political question: whether a candidate should stand for office or be disqualified for actions taken while he was previously in office.

If the Court decides to reach the merits, then it should dismiss the complaint with prejudice for failure to state a claim. Multiple failings lurk in Castro's "Disqualification Clause" claim. Most obviously, President Trump is not an officer of the United States, and the allegations in the complaint establish nothing approaching insurrection, comfort, or aid. Castro cannot state a federal constitutional claim merely because he disagrees with how President Trump comported himself in the days around January 6, 2021.

## I.    Castro lacks standing to bring these claims.

"The irreducible constitutional minimum of standing contains three elements that a plaintiff must plead and—ultimately—prove." *Dep't of Educ. v. Brown*, 143 S. Ct. 2343, 2351 (2023) (cleaned up). *First*, a plaintiff must show an "injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* (cleaned up). *Second*, a plaintiff's claimed injury must be "fairly traceable to the challenged action of the defendant"—that is, "there must be a causal connection between the injury and the conduct complained of." *Id.* (cleaned up). And *third*, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (cleaned up). A plaintiff must strictly comply with each of these elements. After all, "Article III standing is not merely a troublesome hurdle to be overcome if possible so as to reach the 'merits' of a lawsuit which a party desires to have adjudicated; it is a part of the basic

charter promulgated by the Framers of the Constitution at Philadelphia in 1787." *United States v. Texas*, 143 S. Ct. 1964, 1969 (2023) (cleaned up).

Castro has not met any of these three basic elements of standing.  So his claims should be dismissed at the outset.

First, he fails on injury.  A claim of injury cannot be "too speculative" or "rely on a highly attenuated chain of possibilities." *Wild Va. v. Council on Env't Quality*, 56 F.4th 281, 293 n.4 (4th Cir. 2022).  And it must either be a tangible harm ("such as physical harms and monetary harms") or a type of intangible harm "traditionally recognized as providing a basis for lawsuits in American courts" (like "reputational harms, disclosure of private information, … intrusion upon seclusion," and harms "specified by the Constitution itself").  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021).  So a generalized allegation that votes might change in the future if the Court acts will not suffice to establish injury.  *See Buscemi v. Bell*, 964 F.3d 252, 261 (4th Cir. 2020); *compare with* ECF No. 13, at 7 (noting how Castro had not "provide[d] any specific facts in support of [his] allegation" that voters and donations were being siphoned off).

Here, Castro can summon up only speculative allegations of injury.  Castro imagines he might lose votes or donations if President Trump may run.  He reasons that Castro and President Trump are "appealing to the same voter base," ECF No. 1 ¶ 24.  Applying Castro's logic, every vote or dollar given to President Trump is one that would have gone to Castro if only President Trump were removed from the ballot.  But that logic requires the chain of reasoning that precedent says is just too weak; it assumes that Castro will in fact run in West Virginia and then secure the support of voters and donors automatically (over the many other choices currently in the field) if only President Trump steps aside.  He does not allege that any donor has made this choice in fact. (Note how Castro does not allege that he even has any potential donors.)  And the most he can do

when it comes to voters is a vague statement that he has talked to "thousands" of potential supporters. *Id.* ¶ 24.  That kind of hearsay-based political puffery is too implausible to consider on a motion to dismiss.  *See, e.g., Mukuna v. Gibson*, No. 1:11CV493, 2011 WL 3793336, at *4 (E.D. Va. Aug. 25, 2011) (finding that allegations did not meet plausibility requirement where, among other things, they were "based on hearsay").

Castro's claims also fail on traceability.  Remember that President Trump is alleged to be simply a "nominal" defendant, ECF No. 1 ¶ 5, so any injury must be traceable to the other defendant, Secretary Warner.  But Castro contradictorily alleges that his "injury-in-fact is traceable to [President] Trump." *Id.* ¶ 50.  Unsurprisingly, then, Castro never explains how any action that Secretary Warner intends to take or has taken will inflict the vote dilution or donor problems that Castro imagines might happen with President Trump in the race.  He does not even suggest, for instance, that Secretary Warner has some obligation or duty that he is failing to fulfill by allowing President Trump to run again.  *Cf. Doe v. Obama*, 631 F.3d 157, 161-62 (4th Cir. 2011) (explaining that an injury was not traceable to the government defendant where the government defendant merely permitted certain independent private conduct).  That disconnect is fatal.

Lastly, Castro has not satisfied the redressability element.  He does not try to explain how an injunction against Secretary Warner and President Trump will cure the harms he alleges.  Instead, in a series of muddled allegations, Castro appears to allege that his request for *declaratory* relief somehow changes the redressability requirement.  *See, e.g.*, ECF No. 1 ¶ 59.  Castro is wrong.  "By itself, a declaratory judgment cannot be the redress that satisfies the third standing prong.  Rather, plaintiffs must identify some further concrete relief that will likely result from the declaratory judgment."  *Comite de Apoyo a los Trabajadores Agricolas (CATA) v. U.S. Dep't of*

*Lab.*, 995 F.2d 510, 513 (4th Cir. 1993) (rejecting argument that the Declaratory Judgment Act constituted an "upheaval in the traditional law of standing").

In his complaint, Castro leans on out-of-circuit authority to suggest his standing problems can be solved by "political competitor standing."  *See* ECF No. 1 ¶¶ 19-22; *but see, e.g.*, *Fulani v. Brady*, 935 F.2d 1324, 1329 (D.C. Cir. 1991) (finding that political competitor standing did not afford a plaintiff standing where the challenged action was "merely one in a chain of independent causal factors necessary to achieve [the claimed] injury").  The Fourth Circuit has never embraced this doctrine, at least not in the broad way that Castro seems to conceive it.  But anyway, Castro has never offered up factual allegations that might justify using the doctrine here, seeing as how he has not registered as a primary or write-in candidate in West Virginia (or, judging from the allegations of the complaint, not even campaigned here at all).  A website and an FEC registration should not license a plaintiff to invoke broad new conceptions of standing to stifle free elections.  And if the Court wishes to look to out-of-circuit authority for guidance, it would do better to consider the cases in which courts have dismissed Castro's similar claims against President Trump for lack of standing.  *See* Order, *Castro v. Trump*, No. 23-80015 (S.D. Fl. June 25, 2023), ECF No. 33; *Castro v. FEC*, No. CV 22-2176, 2022 WL 17976630, at *2 (D.D.C. Dec. 6, 2022).

This Court should dismiss for lack of standing, too.

## II.    Castro's claims are not ripe.

"While standing involves the question of who may sue, ripeness involves when they may sue."  *Wild Va.*, 56 F.4th at 293 (cleaned up).  A court must wait until a case has "taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them."  *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244 (1952).  Ripeness considers fitness and hardship.  "A

controversy becomes 'fit' for review when it no longer is "dependent on future uncertainties." *Nat'l Ass'n For The Advancement of Colored People v. Bureau of the Census*, 945 F.3d 183, 192 (4th Cir. 2019). As to hardship, courts consider "the immediacy of the threat and the burden imposed on the petitioner." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 759 (4th Cir. 2013).

Castro has filed this suit too early. He does not allege that he has taken appropriate steps to run for President in West Virginia. For that matter, he does not even allege that President Trump has done so. From all appearances, this lawsuit is the sole campaign activity that Castro has undertaken in this State. And perhaps more importantly, the Fourteenth Amendment contemplates that any violation of Section 3 occurs when a person who has engaged in insurrection or other forbidden acts *takes office*, not when he or she merely runs. *See Smith v. Moore,* 90 Ind. 294, 303 (1883) (describing congressional practice indicating that Section 3 limits who can hold office, not who can run); *Privett v. Bickford*, 26 Kan. 52, 57 (1881) (explaining that an ineligible person can run for election, win, and take office as long as the "disabilities had been subsequently [to election] removed"); *Sublett v. Bedwell*, 47 Miss. 266, 274 (1872) (same). President Trump could assume office only as early as January 2025—and then only if he runs and wins the election. Perhaps Congress could decide before then to remove any disability imposed by the Fourteenth Amendment (if there were one). Perhaps not. But because all these events remain a long way off, it imposes no obvious burden on Castro to at least ask him to wait. Even more so when bringing charged claims such as these.

The Court should hold that Plaintiff's claims are not ripe.

## III.   Castro's claims present nonjusticiable political questions.

"Article III[, Section 2] of the Constitution limits federal-court jurisdiction to 'Cases' and 'Controversies.'" *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007) (cleaned up). "[N]o justiciable

'controversy' exists when parties seek adjudication of a political question[.]" *Id.* Of course, not every assertion "of a political right . . . presents a political question." *Baker v. Carr*, 369 U.S. 186, 209 (1962). But courts have not infrequently applied the doctrine, viewing it as "primarily a function of the separation of powers." *Id.* at 210.

In deciding whether to apply the political-question doctrine, courts examine on a "case-by-case" basis "the particular question posed, … the history of its management by the political branches, … its susceptibility to judicial handling in the light of its nature and posture in the specific case, and … the possible consequences of judicial action." *Baker*, 369 U.S. at 211-12. Courts will ask whether (1) there is "a textually demonstrable constitutional commitment of the issue to a coordinate political department"; (2) there are "judicially discoverable and manageable standards for resolving [the question]"; (3) the court will be compelled to make "an initial policy determination of a kind clearly for nonjudicial discretion"; (4) the court may "undertak[e] independent resolution without expressing lack of the respect due coordinate branches of government"; (5) there is an unusual need for unquestioning adherence to the political decision in play; and (6) judicial action holds the "potentiality of embarrassment from multifarious pronouncements by various departments on one question." *Id.* at 217. In short, "[i]t is enough that plaintiff asks the courts to intrude in an area in which they have no rightful power and no compass." *Wu Tien Li-Shou v. United States*, 777 F.3d 175, 183 (4th Cir. 2015) (cleaned up).

Once more, every factor cuts against Castro's effort here.

Start with the Fourteenth Amendment's text, which places these questions firmly in Congress's hands. Section 3 of the Fourteenth Amendment authorizes only Congress to "remove such disability" imposed by the same amendment's Disqualification Clause. Later, the same amendment authorizes Congress "to enforce" the Amendment "by appropriate legislation[.]" *Id.*,

amend. XIV, § 5.  So the Fourteenth Amendment appears squarely focused on *Congress*'s power—and, at least until Congress speaks, no one else's.  As Chief Justice Salmon P. Chase explained just months after the Fourteenth Amendment was ratified (while riding circuit in Virginia), the Disqualification Clause contemplates proceedings for removal that "can only be provided for by congress."[1]  *In re Griffin*, 11 F. Cas. 7, 26 (C.C.D. Va. 1869); *cf. Cawthorn v. Amalfi*, 35 F.4th 245, 275-82 (4th Cir. 2022) (Richardson, J., concurring) (explaining why only Congress may decide whether its own members are disqualified under Section 3 of the Fourteenth Amendment).[2]

In requiring that "two-thirds of each House" agree to remove the disability, the Fourteenth Amendment echoes the standard for Congress to determine a President's legal qualifications under the Twenty-Fifth Amendment.  Under the latter amendment, after the Vice President and certain officers find that the President is unable to perform the duties of his office, "Congress shall decide the issue [of ability] … by two-thirds vote of both Houses."  *Id.* (emphasis added).  "[O]therwise, the President shall resume the powers and duties of his office."  *Id.*  An unable President is one who lacks either the ability or the legal qualifications to discharge his office.  *See Grinols v. Electoral Coll.*, No. 2:12-CV-02997, 2013 WL 2294885, at *6 (E.D. Cal. May 23, 2013), *aff'd*, 622 F. App'x 624 (9th Cir. 2015) (stating that "the Twenty–Fifth Amendment provides for removal of the President should he be unfit to serve").  So in the Twenty-Fifth Amendment—and by extension the Fourteenth—Congress is again given the ultimate power to decide whether an official is legally unqualified to serve.

---

[1] Many read this language to leave room for court involvement *if* Congress passes enabling legislation providing for that involvement.  But as explained below, even that gloss ultimately doesn't help Castro because no such legislation exists.

[2] In *Cawthorn*, the Fourth Circuit held that an 1872 Act of Congress did not prospectively remove any political disability imposed by the Fourteenth Amendment, but it did not address whether qualification under Section 3 of the Fourteenth Amendment would itself present a political question.  *See Cawthorn*, 35 F.4th at 257.

The voters will decide in the first instance whether President Trump is legally qualified to be re-elected as President. "Arguments concerning qualifications or lack thereof can be laid before the voting public before the election[.]" *Robinson v. Bowen*, 567 F. Supp. 2d 1144, 1147 (N.D. Cal. 2008). If the voters find President Trump qualified, and Congress concurs, then the Constitution does not contemplate a time for the judiciary to second-guess that call. Rather, the Constitution gives Congress the sole and final authority to determine whether the President can continue to serve.[3] *See Grinols*, 2013 WL 2294885, at *6 ("Nowhere does the Constitution empower the Judiciary . . . to enjoin [a] President-elect from taking office.").

The next two factors disfavor Castro, too: Judicially discernible standards are absent, while policy judgments are inherent in a claim like this one. In essence, Castro is asking the courts to second guess the President's personal actions and weigh whether they rise to a level of sufficient seriousness as to justify refusing him another chance to run. *See* ECF No. 1 ¶ 112. But that question plays on somewhat indeterminate notions of justice and morality, not the usual kind of textual interpretation or application of precedent or other legal authority. Evaluating whether an individual has given inappropriate and actionable aid to the enemy or whether an insurrection occurred is the kind of question most often answered in war and diplomacy. *Cf. Stinson v. N.Y. Life Ins.,* 167 F.2d 233, 236 (D.C. Cir. 1948) (explaining that whether the "this country became engaged in war" is a political question). "But [j]udges are not soldiers or diplomats." *Lin v. United States*, 539 F. Supp. 2d 173, 180 (D.D.C. 2008). So other than war and diplomacy, the answers must come through elections. *Cf. Luther v. Borden,* 48 U.S. 1, 45-46 (1849) (refusing to "question

---

[3] As explained further below, Section 3 of the Fourteenth Amendment does not actually apply to a former President. So truth be told, even Congress has no role to play when it comes to deciding whether a former president is a so-called insurrectionist or the like.

[the State's] authority" as to whether it was appropriate to determine that persons were "engaged in the insurrection" and accordingly use force to "overcome the unlawful opposition").

The last three factors—respect for co-equal branches, a need for adherence, and a potential for embarrassment—all work against Castro in the same way. A decision here would inappropriately reject the conclusions made by Congress on these very same events.

Congress's conclusions, of course, came by way of impeachment. Recall that Congress has the authority to remove a President from office for "Treason, Bribery, or other high Crimes and Misdemeanors." U.S. CONST. art. II, § 4. The power to accuse a President of an impeachable offense resides solely in the House of Representatives, *id.* art. I, § 2, cl. 5, while the power to remove a President resides solely in the United States Senate, *id.* art. I, § 3, cl. 6. Congress knows of these powers. It vigorously applied them to President Trump, as the House impeached him twice. But the Senate acquitted him both times, even when political opponents accused him of fomenting insurrection much as Castro does here. *See* 166 CONG. REC. S938 (daily ed. Feb. 5, 2020); 167 CONG. REC. S733 (daily ed. Feb. 13, 2021). Congress, then, has rendered its judgment—and it disagrees with Castro's assessment. Castro wants this Court to try again, but "[f]ailure of political will does not justify unconstitutional remedies." *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018). Worse still, Castro wants to forcibly enlist a state officer in his plan, even though state-imposed restrictions on a candidate's qualifications to serve are forbidden. *See U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 783 (1995); *see also Greene v. Sec'y of State for Ga.*, 52 F.4th 907, 915 (11th Cir. 2022) (Branch, J., concurring) ("[I]n purporting to assess Rep. Greene's eligibility under the rubric of § 3 of the Fourteenth Amendment to the U.S. Constitution, Georgia imposed a substantive qualification on her.").

Thus, all the requisite factors confirm that the Court should decline to decide any of Castro's claims because they amount to non-justiciable political questions.

**IV.    Castro has failed to state a cognizable claim under Section 3 of the Fourteenth Amendment.**

Even if the Court were inclined to reach the merits of Castro's claims, it should dismiss all of them with prejudice.  At least four reasons explain why.

*First*, Section 3 of the Fourteenth Amendment is not self-executing and does not provide for a private right of action.  *See, e.g., Rosberg v. Johnson*, No. 8:22CV384, 2023 WL 3600895, at *3 (D. Neb. May 23, 2023); *Secor v. Oklahoma*, No. 16-CV-85-JED-PJC, 2016 WL 6156316, at *4 (N.D. Okla. Oct. 21, 2016).  The Fourteenth Amendment expressly says that "Congress shall have the power to enforce, by appropriate legislation, the provisions of this article."  U.S. CONST. amend. XIV, § 5; *see Hansen v. Finchem,* No. CV-22-0099-AP/EL, 2022 WL 1468157, at *1 (Ariz. May 9, 2022) ("Section 5 of the Fourteenth Amendment appears to expressly delegate to Congress the authority to devise the method to enforce the Disqualification Clause."); *see also, e.g.*, *Ownbey v. Morgan*, 256 U.S. 94, 112 (1921) ("[I]t cannot rightly be said that the Fourteenth Amendment furnishes a universal and self-executing remedy.").  Building from that basic concept, scholars and courts alike have concluded that "Section 1 is not self-executing in court as *a set of causes of action providing affirmative relief* unless Congress provides for its enforcement."  Josh Blackman & Seth Barrett Tillman, *Sweeping and Forcing the President Into Section 3*, 28 TEX. REV. L. & POL. 1, 25 (forthcoming 2024) (emphasis in original), *available at* https://bit.ly/3F6J9FQ.  The answer might be different when a party wields the Fourteenth Amendment defensively (and it is different when Congress has, in fact, provided for enabling legislation like 42 U.S.C. § 1983).  But like Blackman, Tillman, and others, the Fourth Circuit has observed how "Congress and Supreme Court of the time [when the Fourteenth Amendment was

enacted] were in agreement that affirmative relief under the amendment should come from Congress." *Cale v. City of Covington*, 586 F.2d 311, 316 (4th Cir. 1978).  So Castro's Fourteenth-Amendment-based offensive claims fail because he cites no congressional legislation that greenlights them.

*Second*, Section 3 of the Fourteenth Amendment does not apply to a former President.  The section applies to President Trump only if he was an "officer of the United States" and then swore to support the Constitution of the United States.  U.S. CONST. amend. XIV, § 3.  (The amendment applies to other categories, but none even arguably apply to President Trump.)   But the Constitution also says that the President himself commissions "*all* the Officers of the United States," U.S. CONST. art. II, § 3 (emphasis added), and a President does not commission himself. Another part of Article II says that the President "shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States." *Id.* § 2.  Here again, the Constitution distinguishes between elected officials and persons appointed by the President.  And Article II, Section 4 provides that the "President, Vice President and all civil Officers of the United States, shall be removed from Office on Impeachment for, and Conviction of, Treason, Bribery, or other high Crimes and Misdemeanors."  Note here how the provision does not say *other* civil Officers—rather, it again separates the elected persons (President and Vice President) from the unelected ones (anyone else).  *Id.* § 4.

The Supreme Court and the Fourth Circuit have also described "officers of the United States" as appointed officials—not elected ones, the President included.  *See, e.g.*, *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1979 (2021); *Seila L. LLC v. CFPB*, 140 S. Ct. 2183, 2197-98 (2020); *accord Brooks v. Kijakazi*, 60 F.4th 735, 740 (4th Cir. 2023); *United States v. Smith*, 962 F.3d 755, 763-64 (4th Cir. 2020).  And scholars have often said the same.  *See, e.g.*, Seth Barrett

Tillman, *Why Our Next President May Keep His or Her Senate Seat: A Conjecture on the Constitution's Incompatibility Clause*, 4 Duke J. Const. L. & Pub. Pol'y 1, 13 (2008); *see also* Roy E. Brownell II, *A Constitutional Chameleon: The Vice President's Place Within the American System of Separation of Powers*, 24 Kan. J.L. & Pub. Pol'y, 294, 397 (2015) (same as to Vice President). Even certain statements from leading lights around the time of the Fourteenth Amendment's passage rejected the notion that the President was an "officer," too. *See* Josh Blackman & Seth Barrett Tillman, *Is the President an "Officer of the United States" for Purposes of Section 3 of the Fourteenth Amendment?*, 15 NYU J.L. & Liberty 1, 30 (2021) (describing such sources); *see also, e.g.*, *Worthy v. Barrett*, 63 N.C. 199, 201 (1869) ("But note! It is not every one who is of these [legislative, executive, or judicial] departments that is an officer."). So taking text, precedent, and history all together, "[i]t is plain that the President is not an 'officer of the United States' for Appointments Clause, Commission Clause, or Oath of Office Clause purposes." *Motions Sys. Corp. v. Bush*, 437 F.3d 1356, 1372 (Fed. Cir. 2006) (Gajarsa, J., concurring). Castro offers no reason why the result should be any different under the Disqualification Clause.

Some have appealed to self-defined notions of "common sense" in saying that it is impossible that the Disqualification Clause would omit the President from its scope. But it makes good sense that persons elected through the Electoral College for a nationwide position would be treated differently. When it comes to the appointed officials, only the President (exercising his removal authority) or perhaps Congress (exercising its impeachment authority) could act to bar or remove an insurrectionist from office. As to the elected officials listed in Section 3, they face only two accountability mechanisms: expulsion and the voters. But when it comes to the President and Vice President, *three* bodies provide protection: the public, the electors of the Electoral College, and Congress itself. A treasonous candidate wouldn't be expected to fare very well in an election.

The electors of the Electoral College—who *are* expressly covered by Section 3 and therefore will bear no sympathies for insurrectionists—would also need to vote for a purported insurrectionist before he or she could take office.  And Congress can always impeach.  So those who crafted Section 3 could have reasonably concluded that those other protections for the President and Vice President were enough to justify excluding them from Section 3, especially given that these positions represent that nation (and not any specific State).  And to the extent Section 3 is an artifact of history, that history might explain the President's exclusion, too.  After all, no insurrectionist President or Vice President existed during the Civil War.

*Third*, Castro's freewheeling approach to Section 3 conflicts with the First Amendment. Castro alleges that President Trump should be disqualified because he answered a debate question, offered a deescalating message during civil unrest, explained what his plans might be should he be reelected, and asked for funds for those who support him.  *See* ECF No. 1 ¶¶ 9-13.  These statements constitute core political speech, especially when it comes to President Trump's statements in his then-ongoing political campaign.  *See Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011) ("[T]he First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office." (cleaned up)).  And "[b]ecause our democracy relies on free debate as the vehicle of dispute and the engine of electoral change, political speech occupies a distinctive place in First Amendment law."  *Washington Post v. McManus*, 944 F.3d 506, 513 (4th Cir. 2019).  Although Castro disagrees with what President Trump said, that disagreement is beside the point.  "The arguably inappropriate or controversial character of a statement is irrelevant to the question" of whether a statement warrants First-Amendment protection.  *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (cleaned up).

The First Amendment will not protect speech if it constitutes actual incitement to violence, but Castro comes nowhere near alleging that here.  "[T]he First Amendment precludes punishment, whether civil or criminal, unless the speaker's words were 'intended' (not just likely) to produce imminent disorder."  *Counterman v. Colorado*, 600 U.S. 66, 76 (2023) (cleaned up); *see also Brandenburg v. Ohio*, 395 U.S. 444, 447-48 (1969).  Even speech constituting "mere advocacy of illegal acts" is not enough.  *Counterman*, 600 U.S. at 76 (cleaned up).  Nor would "encouraging" or even "promoting" a riot.  *United States v. Miselis*, 972 F.3d 518, 536 (4th Cir. 2020).  Yet even focusing on *just* the allegations of the complaint (and not looking to the broader context in which President's trumps statements were offered), Castro never alleges any facts that plausibly suggest that President Trump's words meet any of these standards.  President Trump did not instruct his supporters to violate the law or commit acts of violence.  *Compare with Hess v. Indiana*, 414 U.S. 105, 107 (1973) (holding that a speaker at a demonstration engaged in protected speech when he told the crowd that "[w]e'll take the f****** streets later").  His words and actions do not reflect an intent to produce mayhem.  And Castro did not show that President Trump wanted *imminent* disorder to result from his fundraising efforts, debate answers, suggestions of pardons, or speeches at the Ellipse.  *Compare with NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 928 (1982) (finding that "emotionally charged rhetoric" in speeches, including threats to break necks, did not satisfy *Brandenburg* test).

Thus, Castro's spin on Section 3 would put it on a collision course with the First Amendment.  But "[t]he Constitution functions as a coherent whole, not as a series of isolated and unrelated clauses, such that [the Court] cannot interpret one of its provisions to enfeeble another."  *United States v. Traficant*, 368 F.3d 646, 651-52 (6th Cir. 2004).  The Court should give Section 3 an appropriately restrained reading to reconcile the conflict.

*Fourth*, and lastly, President Trump did not engage in any acts that would disqualify him under Section 3, even taking the facts alleged in the complaint to be true.  Plaintiff maintains President "Trump 'engaged' in insurrection … via direct military orders to 'stand back and stand by' and provided 'aid or comfort' to other insurrectionists in the form of financial fundraising, expressions of sympathy …, and promises of pardons."  ECF No. 1 ¶ 18.  He is wrong.

President Trump did not "engage" in insurrection when he told the Proud Boys to "stand back and stand by" during a presidential debate.  To "engage" means to "employ or involve oneself; to take part in; to embark on."  BLACK'S LAW DICTIONARY (11th ed. 2019).  The word connotes an active, affirmative, and direct involvement in the act of insurrection itself, as courts have confirmed across many contexts in many cases.  *See, e.g., Overstreet v. N. Shore Corp.*, 318 U.S. 125, 129 (1943) (explaining that persons are "engaged in" interstate commerce when they are actively and directly involved in that commerce); *Immediato v. Postmates, Inc.*, 54 F.4th 67, 74 (1st Cir. 2022) (holding that person must be "actively engaged in moving goods" to be "engaged" in relevant acts of commerce (cleaned up)); *United States v. Garfinkle*, 842 F. Supp. 1284, 1292 (D. Nev. 1993) (enterprise is "engaged in" racketeering activity" when "the "enterprise" is currently involved in the commission of an act of racketeering activity").  No plausible understanding of President Trump's remark can be taken as "active" involvement in an insurrection.  The statement is reasonably understood to say that the Proud Boys should *not* act in any way, let alone against the Government.

Nor do the allegations plausibly suggest that President Trump participated in "insurrection."  "[F]or there to be an 'insurrection' there must be an intent to overthrow a lawfully constituted regime."  *Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co.*, 505 F.2d 989, 1005 (2d Cir. 1974); *see also Luther*, 48 U.S. 1, 22 (1849) (explaining that an insurrection is an

"attempt[] to change a subsisting government by force"); *Home Ins. Co. of N.Y. v. Davila*, 212 F.2d 731, 738 (1st Cir. 1954) (explaining that a series of "civil commotions" to "dramatize that there were 'patriots'" and "embarrass and discredit the insular government" would not, standing alone, be an "insurrection").  President Trump's Proud Boys comment does not speak to concerted force, does not suggest any efforts should target the existing government, and does not contemplate an overthrow or other act of defiance to authority.  His very participation in the presidential debate at which he made the statement contemplated a peaceful transfer of power.

Finally, the facts alleged do not suggest that President Trump "aided" or "comforted" any "enemies" of the United States.  "Enemies" are those with whom the United States is at least actively at war.  *See Ex parte Kawato*, 317 U.S. 69, 71, (1942); *Miller v. United States*, 78 U.S. 268, 308-13 (1870); *see also United States v. Greathouse,* 26 F. Cas. 18, 22 (C.C.N.D. Cal. 1863) (Fields, C.J.) (enemies under the Treason Clause are "subjects of a foreign power in a state of open hostility").  President Trump is not alleged to have helped anyone like that.  Nor does any authority suggest that merely offering the slightest benevolence *after* the fact to individuals who had participated in civil unrest could amount to "aid or comfort"—and that is the most that might be found in Castro's allegations.  Even nominal support during an active conflict has not been found to rise to the level of "aid or "comfort."  *See Lynch v. United States*, 3 Ct. Cl. 392, 396 (1867) (holding that Georgians who donated to Confederate causes even *during* the Civil War did not provide "aid or comfort").

Castro's complaint has therefore failed to state any cognizable claim for relief.

## CONCLUSION

For all these reasons, the Court should dismiss this suit for lack of jurisdiction or for failure to state a claim.

Respectfully submitted,

**THE STATE OF WEST VIRGINIA**

PATRICK MORRISEY
ATTORNEY GENERAL

*/s/ Michael R. Williams*
Michael R. Williams (WV Bar # 14148)
 *Principal Deputy Solicitor General*
David E. Gilbert (WV Bar # 12157)
 *Deputy Attorney General*
State Capitol Complex
Building 1, Room E-26
michael.r.williams@wvago.gov
david.e.gilbert@wvago.gov
Telephone: (304) 558-2021
Dated: October 10, 2023          Facsimile: (304) 558-0140

21