THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| JOHN ANTHONY CASTRO, )<br>)<br>    Plaintiff, )<br>)<br>       v. )<br>)<br>ANDREW WARNER, in his official capacity as )<br>West Virginia Secretary of State, and )<br>DONALD J. TRUMP, )<br>)<br>    Defendants, )<br>And )<br>)<br>WEST VIRGINIA REPUBLICAN PARTY, )<br>)<br>    Intervenor. ) | Case No. 2:2023-cv-00598 |

WEST VIRGINIA REPUBLICAN PARTY'S MOTION TO DISMISS PURSUANT
TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)
AND MEMORANDUM OF LAW IN SUPPORT

COMES NOW, Intervenor West Virginia Republican Party (or the "State Party"), and, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectfully moves to dismiss Plaintiff John Anthony Castro's Complaint for his want of standing and for his failure to state a claim upon which relief can be granted.

Dated:  October 5, 2023.                    Respectfully submitted,

/S/ELGINE HECETA MCARDLE
Elgine Heceta McArdle, WVID 6249         THE AMERICAN CENTER FOR LAW AND JUSTICE
MCARDLE LAW OFFICE                       JAY ALAN SEKULOW*
2139 Market Street                          (D.C. Bar No. 496335)
Wheeling, West Virginia 26003            JORDAN SEKULOW*
Phone: 304-232-0700                         (D.C. Bar No. 991680)
Fax: 304-214-1703                        STUART J. ROTH*
elgine@mcardlelawoffice.com                 (D.C. Bar No. 475937)

1

ANDREW J. EKONOMOU*
  (GA Bar No. 242750)
BENJAMIN P. SISNEY*
  (D.C. Bar No. 1044721)
NATHAN MOELKER*
  (VA Bar No. 98313)
201 Maryland Avenue, NE
Washington, D.C.  20002
Telephone: (202) 546-8890
Facsimile: (202) 546-9309
Email: bsisney@aclj.org

*Counsel for Intervenor*

*Admitted pro hac vice.

## MEMORANDUM OF LAW

### I.     ARGUMENT

Taking the well-pleaded facts as true for purposes of this motion, the Plaintiff's Complaint fails:  Legal conclusions and bare assertions are not entitled to any presumption of truth. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."). According to the Complaint, Plaintiff John Anthony Castro is a United States citizen and Texas resident that seeks the Republican nomination for president in the 2024 election. He has filed this action seeking to disqualify former President Donald Trump from running for office. The purported legal basis for this action is Section Three of the Fourteenth Amendment. To sum up Plaintiff Castro's argument: "section Three of the Fourteenth Amendment created an implied cause of action for a fellow candidate to obtain relief for a political competitive injury by challenging another candidate's constitutional eligibility."

2

*See* Verified Compl. 5, ¶ 8, ECF No. 1. This assertion is false.

    The relevant portions of the Fourteenth Amendment provide,

    Sec. 3. No person shall be a Senator or Representative in Congress, or elector of President and Vice-President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.
. . .
    Sec. 5. The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article.

U.S. Const. amend. XIV, §§ 3, 5. As will be discussed below, Congress has the power to enforce this provision, and has in fact done so. This reality is fatal, as a matter of law, to Plaintiff Castro's Complaint.

    A. **PURSUANT TO RULE 12(B)(1), THIS COURT LACKS JURISDICTION TO REVIEW PLAINTIFF CASTRO'S ATTEMPT TO DISQUALIFY FROM THE BALLOT A POLITICAL RIVAL BECAUSE CASTRO LACKS STANDING.**

    Plaintiff Castro's lawsuit fails because he lacks standing to bring his novel constitutional claim. This Court has an initial "independent obligation to determine whether subject-matter jurisdiction exists." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). A central component of Article III's "case or controversy" requirement is that the litigant must have standing to invoke the power of the federal court. *Allen v. Wright*, 468 U.S. 737, 750 (1984)). Inquiry into standing "is an essential and unchanging part of the case-or-controversy requirement of Article III."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Because Plaintiff Castro lacks standing to bring this action, this Court lacks jurisdiction and should dismiss his Complaint. His suit is not ripe, and even if it were, Plaintiff Castro has failed to identify a non-speculative basis for his purported injury.

    **i.   This Court Lacks Jurisdiction Because Plaintiff Castro's Presidential-Qualification Lawsuit is not Ripe.**

Standing begins the Court's inquiry because of its duty not to "use the judicial power of the United States in a case to which the Constitution and laws of the United States have not extended that power." *Mansfield, C. & L.M. R. Co. v. Swan*, 111 U.S. 379, 384 (1884). "The rules of standing . . . are threshold determinants of the propriety of judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 517-18 (1975). The party asserting standing bears the burden of proving standing. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, this Court has jurisdiction over a case only if the plaintiff has standing to sue. *See Kerchner v. Obama*, 612 F.3d 204, 207 (3d Cir. 2010).[1]

Courts have regularly rejected attempts by voters or citizens as a whole to challenge

---

[1] Repeatedly throughout his Complaint, Plaintiff Castro argues that the standing requirements should be lessened in this matter because it is purportedly a declaratory action. *See* Verified Compl., 31, ¶ 98, ECF No. 1 (arguing that "28 U.S.C. § 2201(a) was specifically designed to circumvent the redressability requirement in a standing analysis"). That assertion is simply false. *WTGD 105.1 FM v. Sound Exchange, Inc.*, 88 F. Supp. 3d 580, 583-84 (W.D. Va.) ("The Declaratory Judgment Act is not an independent source of jurisdiction and requires an actual case or controversy."); *Bishop v. Smith*, 760 F.3d 1070, 1091 n.13 (10th Cir. 2014) ("That the plaintiffs' action was in part for a declaratory judgment does not affect the standing analysis. Like any lawsuit, a declaratory-judgment action must meet Article III's standing criteria . . ..").

election qualifications. "A generalized interest of all citizens in constitutional governance does not suffice to confer standing on one such citizen." *Sibley v. Obama*, 866 F. Supp. 2d 17, 20 (D.D.C. 2012); *Berg v. Obama*, 574 F. Supp 2d 509, 517 (E.D. Pa. 2008), *affirmed Berg v. Obama*, 574 F. Supp 2d 509, 517 (E.D. Pa. 2008) ("Standing has been a consistent barrier to lower courts hearing generalized, undifferentiated claims by voters and citizens.") (noting various cases in which citizens attempted to challenge a presidential candidate's eligibility for office or other governmental actions but lacked standing); *Jones v. Bush*, 122 F. Supp. 2d 713, 716-18 (N.D. Tex. 2000) (Voters did not have standing to assert a Twelfth Amendment violation that allegedly infringed on their right to cast meaningful votes, and court explained that "plaintiffs conspicuously fail to demonstrate how they, as opposed to the general voting population, will feel its effects."); *Hollander v. McCain*, 566 F. Supp. 2d 63, 69 (D.N.H. 2008) (Voters lacked standing to challenge Senator John McCain's eligibility for President and to exclude him from the presidential primaries, and court stated that "voters have no standing to complain about the participation of an ineligible candidate in an election."); *Drake v. Obama*, 664 F.3d 774, 778, 780-84 (9th Cir. 2011) (group of military personnel, state representatives, political candidates, and individual citizens did not have standing to challenge President Obama's eligibility to hold office); *Chapman v. Obama*, 719 F. App'x 13 (D.C. Cir. 2018) (per curiam) ("The district court correctly concluded that appellant lacked standing to challenge President Barack Obama's qualifications for holding office."); *Const. Ass'n Inc. by Rombach v. Harris*, No. 20-cv-2379, 2021 WL 4442870, at *2-3 (S.D. Cal. Sept. 28, 2021) (finding plaintiffs lacked standing to challenge Vice President Kamala Harris' eligibility for office and dismissing

case); *Christie v. President of the United States*, 532 F. App'x 88, 89 (3d Cir. 2013) (plaintiff lacked standing to assert claims that President committed treason).

At least three courts have concluded that citizens attempting to disqualify individuals from participating in elections or from holding office based on the January 6, 2021, events at the United States Capitol lacked standing. *See, e.g.*, *Stencil v. Johnson*, 605 F. Supp. 3d 1109 (E.D. Wis. 2022). In *Stencil*, the plaintiffs sought a declaratory judgment that three members of Wisconsin's Congressional delegation were ineligible to serve under the Fourteenth Amendment because their participation in the January 6 events constituted an insurrection against the United States. *Id.* at 1112-13. Among other things, the court determined that the plaintiffs lacked standing and explained that "[e]very citizen and voter could claim to have suffered the same injury as the plaintiffs here, which amounts to nothing more than engaging in political advocacy against candidates for office or issue advocacy against the views the candidates hold. The relief that the plaintiffs seek would no more directly and tangibly benefit them than it would the public at large." *Id.* at 1117. *See also Hill v. Mastriano*, No. 22-2464, 2022 WL 16707073, at *1 (3d Cir. Nov. 4, 2022) (same). Most recently, Plaintiff Castro has filed what is essentially this same purported case in United States District Court for the Southern District of Florida, where it was dismissed due to his lack of standing. *Castro v. Trump*, No. 9:23-cv-80015, ECF No. 33, at *1 (S.D. Fla. June 23, 2023) (ruling that "Plaintiff's Complaint is DISMISSED for lack of Article III standing and ripeness.") (Castro's attempt to appeal this decision is pending as of the filing of this motion.).

To be sure, Plaintiff Castro purports to rely on standing as a "political competitor"

to be able to bring a lawsuit. But even assuming for purposes of argument that a candidate or his political party might have standing in some circumstances to challenge the inclusion of an allegedly ineligible rival on the ballot [on the theory that doing so hurts the candidate's or party's own chances of prevailing in the election] that exception would still not apply in this case. Specifically, this exception would provide the ability to "challenge the inclusion of an allegedly ineligible rival *on the ballot*." *Hollander v. McCain*, 566 F. Supp. 2d 63, 68 (D.N.H. 2008) (emphasis added). As of the filing of this pleading, there are no official candidates on the primary ballot in West Virginia. As such, the case is not ripe for litigation. One cannot challenge a rival who is not yet on the ballot.

An individual does not become eligible to receive votes in the primary in West Virginia unless the person has filed a certificate of announcement with the Secretary of State. Only when such filing has occurred will an individual be placed on an official ballot in West Virginia. W. Va. Code § 3-5-7. Neither President Trump nor anyone else have filed their certificates of announcement to be on the West Virginia ballot; in fact, as of this date, there are no official candidates on the primary ballot. With no one on the primary ballot in West Virginia [including Plaintiff Castro], he has no one to challenge and his claim is clearly not ripe.

For a claim to be ripe, the claim must be "sufficiently mature" and the issues "defined and concrete." *Digit. Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997). Castro did not and cannot allege that he has taken any steps to qualify for any state presidential ballots. Castro therefore cannot allege that he is currently a bona fide presidential candidate. Because he is not a bona fide presidential candidate, Plaintiff Castro

occupies the same posture as any other citizen who seeks to challenge the constitutional qualifications of another individual. He has no more than a generalized interest in constitutional governance which cannot suffice to confer Article III standing. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). In other words, because this lawsuit was brought before the actual placement of candidates on the ballot, Plaintiff Castro is in the same position as any other citizen. And a citizen does not have standing to challenge the qualifications of another citizen. No ripe dispute exists in this case, no candidate filings have been made to even render a dispute possible. Plaintiff Castro seeks to remove President Trump from a ballot that he himself is not yet on.

      The question of whether a claim is ripe for review bears on a Court's subject matter jurisdiction. *See, e.g.*, *Nat'l Park Hosp. Ass'n v. U.S. Dep't of Interior*, 538 U.S. 803, 804 (2003); *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 206 (4th Cir. 2022) ("The doctrine of ripeness arises from the case or controversy requirement of Article III."). It is the burden of the complainant to allege facts demonstrating ripeness, demonstrating the appropriateness of invoking judicial resolution of the dispute. *Renne v. Geary*, 501 U.S. 312, 317 (1991). Here, Plaintiff Castro has simply failed to satisfy the requirements for ripeness, and accordingly failed to satisfy standing as well. *Keyes v. Sch. Dist. No. 1,* 119 F.3d 1437, 1445 (10th Cir. 1997) ("The impediments to ripeness are equally impediments to standing."). Until President Trump is on the ballot, a dispute as to whether he should be taken off that ballot is not ripe. Until Plaintiff Castro is on a ballot, he lacks any standing to attempt to disqualify someone else from that ballot.

      **ii.    This Court Lacks Jurisdiction due to Castro's Lack of Standing Because the Harm Castro Asserts is Highly Speculative and Will not Be Redressed by Disqualifying Trump.**

Plaintiff Castro fails to satisfy Article III's requirement that a "threatened injury is 'certainly impending,' or [that] there is a 'substantial risk that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n. 5 (2013)). Plaintiff Castro speculates that if President Trump is not disqualified as a presidential candidate, Plaintiff Castro's prospects for success as a presidential candidate will be injured, notwithstanding that Castro has not alleged in his Complaint that he even received one dollar in financial support. Plaintiff Castro's allegation that "thousands" of voters would support him if President Trump were disqualified is similarly speculative. (Verified Compl., 10, ¶ 25, ECF No. 1.)  There is simply no substantial risk that President Trump's status as frontrunner for the Republican presidential nomination will imperil Castro's political ambitions. Disqualifying President Trump will accordingly not redress the unlikelihood of Castro's electoral success.

    **B.    UNDER RULE 12(B)(6), JOHN CASTRO FAILED TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.**

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is to test whether the complaint alleges sufficient facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint will survive such a motion only if it contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Critical here, while this Court "must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions

drawn from the facts . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). *Twombly* requires a two-prong analysis. First, the court accepts as true all well-pleaded factual allegations, while rejecting "naked assertions" or legal "conclusions." *Twombley*, 550 U.S. at 555, 557. Second, the claim must be plausible. Facial plausibility requires enough fact "to raise a right to relief above the speculative level." *Id.* at 555-56.

Plaintiff Castro has failed to state a claim that would entitle him to relief, regardless of the veracity of any of his actual factual allegations. The core of his entire action rests on his legal conclusion that Section Three of the Fourteenth Amendment creates a cause of action. However, Section Three of the Fourteenth Amendment is not self-executing through private litigation and the Fourteenth Amendment cannot and does not even apply to presidents.

Plaintiff Castro has failed to identify any legitimate basis for the cause of action he asserts. Not only does he argue that the Section Three of the Fourteenth Amendment is self-executing, a meritless proposition as discussed below, but he also argues that "section Three of the Fourteenth Amendment created an implied cause of action for a fellow candidate to obtain relief for a political competitive injury by challenging another candidate's constitutional eligibility." (*See* Verified Compl., 5, ¶ 8, ECF No. 1.) The claim Section Three of the Fourteenth Amendment creates a cause of action is even farther fetched than the claim that Section Three is self-executing. On its face, the Fourteenth Amendment has never been understood to create a cause of action for individual litigants.

10

For a cause of action to exist under federal law, Congress must specifically authorize it. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress."). Castro's complaint cites no legal basis for this purported "cause of action" as none exists.

The Fourteenth Amendment only disqualifies those who serve in specific roles, such as in "any office, civil or military, under the United States." U.S. Const. amend. XIV, § 3. A person is disqualified only if he "previously [took] an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State*." Id*. Because President Trump was never a Congressman, state legislator, or state officer, Section Three applies only if he was an "officer of the United States." *Id.* But as that term was used in Section Three, it does not include the President. The presidency is not any of the specific roles enumerated, nor is the President an officer under the United States. "The people do not vote for the 'Officers of the United States.' . . . They instead look to the President to guide the 'assistants or deputies . . . subject to his superintendence.'" *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 497-98 (2010) (internal citations omitted).

> [U]nder the Constitution of the United States, all its officers were appointed by the President, by and with the consent of the Senate, or by a court of law, or the head of a Department; and the heads of the Departments were defined in that opinion to be what are now called the members of the Cabinet. Unless a person in the service of the Government, therefore, holds his place by virtue of an appointment by the President, or of one of the courts of justice or heads of Departments authorized by law to make such an appointment, he is not, strictly speaking, an officer of the United States.

*United States v. Mouat*, 124 U.S. 303, 307 (1888); *see also* Josh Blackman & Seth Barrett

Tillman, *Is the President an "Officer of the United States" for Purposes of Section Three of the Fourteenth Amendment*, 15 N.Y.U. J. OF LAW AND LIB. 1 (2021); *see also* 2 Joseph Story, *Commentaries on the Constitution of the United States* § 791, at 260 (1833).

Less than a decade after the ratification of the Fourteenth Amendment, at least two Senators posited the same notion, explaining with further clarity that the President is not covered by this provision. Senator Newton Booth put it quite plainly: "the President is not an officer of the United States." *Congressional Record Containing the Proceedings of the Senate Sitting for the Trial of William W. Belknap* 145 (1876). Likewise, Senator Boutwell said that "according to the Constitution, as well as upon the judgment of eminent commentators, the President and Vice-President are not civil officers." *Id.* at 130. Around the same time, a leading treatise made clear that "[i]t is obvious that . . . the President is not regarded as 'an officer of, or under, the United States.'" David Mcknight, *The Electoral System of the United States* 346 (1878).

Recently at least one scholar, who was initially hopeful about the prospect of Section Three disqualification, came to the conclusion that it would not actually work because the President is not an "officer of the United States." *See* Steve Calabresi, *Donald Trump Should be on the Ballot and Should Lose*, VOLOKH CONSPIRACY (September 16, 2023), perma.cc/LP5Y-MJ97. Simply stated, the Supreme Court and a long history of scholarly consensus has made very clear that the President is not an officer of the United States. As he is not an officer, Section Three of the Fourteenth Amendment is inapplicable as a matter of law. Regardless of Plaintiff Castro's allegations, this provision simply does not apply to former President Trump. While well-pleaded allegations are to be assumed

true, this rule does not apply to legal conclusions or assertions of legal principles dressed up to look like factual allegations. *See Papasan*, 478 U.S. at 286.

Moreover, section Three of the Fourteenth Amendment is not self-executing, nor applicable on its own in a civil suit without congressional authorization. It must be enforced by legislation, which Congress has done through 18 U.S.C. § 2383. Interestingly, former President Trump has not been charged, let alone convicted under 18 U.S.C. § 2383. Beginning with the seminal decision of *Griffin's Case*, 11 F. Cas. 7, 22 (C.C.D. Va. 1869), federal courts have agreed that only Congress can provide the means of enforcing Section Three of the Fourteenth Amendment. In *Griffin*, Caesar Griffin was sentenced to two years' imprisonment for assault with intent to kill by Judge Sheffey, a former officer of Confederate Virginia. *Griffin's Case*, 11 F. Cas. 7, 22 (C.C.D. Va. 1869). Griffin filed a federal action, arguing that the Fourteenth Amendment automatically acted to remove Judge Sheffey from office, "operating directly, without any intermediate proceeding whatever, upon all persons within the category of prohibition, and as depriving them at once, and absolutely, of all official authority and power." *Id.* at 23; (*see* Verified Compl., 21, ¶ 61, ECF No. 1 (Plaintiff Castro making the same argument)). Chief Justice Chase, riding circuit, disagreed.

> "Now it is undoubted that those provisions of the constitution which deny to the legislature power to deprive any person of life, liberty, or property, without due process of law, or to pass a bill of attainder or an ex post facto, are inconsistent in their spirit and general purpose with a provision which, at once without trial, deprives a whole class of persons of offices held by them, for cause, however grave."

*Griffin's Case*, 11 F. Cas. 7, 26 (C.C.D. Va. 1869). In other words, Chief Justice Chase

explained that it would be inconsistent with the Due Process Clause to conclude that Section Three automatically disqualifies someone without trial and full constitutional protections and due process.

Further, Chief Justice Chase held that the provisions of Section Three may only be enforced by Congress. "To accomplish this ascertainment and ensure effective results, proceedings, evidence, decisions, and enforcements of decisions, more or less formal, are indispensable; and these can only be provided for by Congress." *Id.* He held,

> the intention of the people of the United States, in adopting the fourteenth amendment, was to create a disability, to be removed in proper cases by a two-thirds vote, and to be made operative in other cases by the legislations of congress in its ordinary course. This construction gives certain effect to the undoubted intent of the amendment to ensure the exclusion from office of the designated class of persons, if not relieved from their disabilities, and avoids the manifold evils which must attend the construction insisted upon by the counsel for the petitioner.

*Id.* (emphasis added); *see Rothermel v. Meyerle*, 136 Pa. 250, 254 (1890) (citing *Griffin's Case*, 11 F. Cas. at 26) ("[I]t has also been held that the fourteenth amendment, as indeed is shown by the provision made in its fifth section, did not execute itself."). *Griffin's Case* clearly rejects all arguments that Section Three is self-executing; it can only be executed through congressional legislation.

Many cases since have cited *Griffin*, agreeing with its conclusion that Section Three is not self-executing. *Hansen v. Finchem*, 2022 Ariz. Super. LEXIS 5 (Apr. 21, 2022) (holding that there is no private cause of action in Section Three of the Fourteenth Amendment); *Cale v. Covington*, 586 F.2d 311 (4th Cir. 1978) (Widener, J.) (citing *Griffin's Case* for its sword-&-shield reasoning); *In re Brosnahan*, 18 F. 62, 81 n.73

(C.C.W.D. Mo. 1883) (McCrary, J., concurring) (same); *State v. Buckley*, 54 Ala. 599, 616 (1875) (Stone, J.) (same); *see also* Va. Atty Gen. Op. No. 21-003, 2021 Va. AG Lexis 1, 2 n. 11 (January 22, 2021) ("[T]he weight of authority appears to be that Section Three of the Fourteenth Amendment is not 'self-executing'—put another way, it is possible that Congress may need to pass implementing legislation to make this provision operative." (citing *Griffin's Case*)); *see Oliver v. Donovan*, 293 F. Supp. 958, 970-71 (E.D.N.Y. 1968) ("Plaintiffs do not point to a federal statute that defines and protects the rights they claim in the context presented here. Basically, they rely on the 13th and 14th Amendments themselves. This claims too much. These Amendments are self-executing in fundamental but limited areas only. . .. Unaided by the statute it would appear impossible for the Court to have based relief on the 13th Amendment alone. By the same token, in the present case there is no statute to give plaintiffs the rights they claim. When viewed in light of the facts pleaded and presented at the trial neither the 13th nor 14th Amendment affords a basis for jurisdiction.").

The *Hansen v. Finchem* Court succinctly summarized other compelling reasons supporting the conclusion that Section Three is not self-executing. 2022 Ariz. Super. LEXIS 8-9. Most important among those reasons is that Section Five of the Fourteenth Amendment expressly reserves to Congress the power of enforcement. Section Five provides that "Congress shall have the power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. amend. XIV, § 5. When Congress wished to create a private right of action to enforce other provisions of the Fourteenth Amendment, it knew how to do so. *See, e.g.*, 42 U.S.C. § 1983; *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)

("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress.").

Significantly, when Congress adopted legislation enforcing Section Three, it chose *not* to create a private right of action. Its first legislation enforcing Section Three was the Ku Klux Klan Act, Ch. 114, 16 Stat. 140 (1870), which provided for Fourteenth Amendment enforcement through official actions filed by the Department of Justice. Congress later enacted 18 U.S.C. § 2383, a criminal provision prohibiting rebellion and insurrection with disqualification. And in 2021, *Congress considered but did not adopt* legislation authorizing the U.S. Attorney General to enforce the Disqualification Clause. Congress has never considered authorizing a private remedy.

For at least the past two decades, the Supreme Court has consistently declined to recognize a private cause of action that Congress did not expressly authorize to enforce federal laws. *See, e.g., Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002); *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015); *Comcast Corp. v. Nat'l Assn. of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1015 (2020). The Court firmly grounded these holdings on the principle that implying private rights of action which Congress has not expressly created trenches upon the separation of legislative and judicial power. *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020). This principle applies with even greater force to a constitutional amendment that expressly reserves enforcement power to Congress. No basis exists to confer the right to pursue a private cause of action to enforce the Fourteenth Amendment absent very explicit constitutional authorization.

Likewise, the Supreme Court has made clear that state officials lack authority to set the requirements for federal office. "In light of the Framers' evident concern that States would try to undermine the National Government, they could not have intended States to have the power to set qualifications." *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 810 (1995). Section Five of the Fourteenth Amendment gives Congress "the power to enforce, by appropriate legislation, the provisions of this article," including Section Three. U.S. Const., amend. XIV, § 5. That Congress has not exercised that power to authorize private plaintiffs to sue or state officials and courts to adjudicate Section Three means that this determination still belongs exclusively to Congress.

Congress has the authority to define the means whereby the Fourteenth Amendment is applied and enforced. And it has done so through the criminal code, by enacting 18 U.S.C. § 2383. This is the sole mechanism for someone to be disqualified from office. Congress has declined to create any other mechanism. Accordingly, regardless of Plaintiff Castro's allegations about President Trump's conduct, he simply does not possess a right to sue and attempt to bar President Trump from being placed on the ballot. The Fourteenth Amendment is enforced by Congress, not by individual plaintiffs.

For these reasons, this Court lacks jurisdiction to hear Plaintiff Castro's case and Plaintiff Castro fails to state a claim upon which relief may be granted. This Court should dismiss his Verified Complaint, in like accord with the Southern District of Florida, which reached the same conclusion regarding Castro's claims.

Dated:  October 10, 2023.                                          Respectfully submitted,

/S/ELGINE HECETA MCARDLE
Elgine Heceta McArdle, WVID 6249          THE AMERICAN CENTER FOR LAW AND JUSTICE
MCARDLE LAW OFFICE                                  JAY ALAN SEKULOW*
2139 Market Street                                              (D.C. Bar No. 496335)
Wheeling, West Virginia 26003                    JORDAN SEKULOW*
Phone: 304-232-0700                                        (D.C. Bar No. 991680)
Fax: 304-214-1703                                             STUART J. ROTH*
elgine@mcardlelawoffice.com                       (D.C. Bar No. 475937)
                                                                            ANDREW J. EKONOMOU*
                                                                             (GA Bar No. 242750)
                                                                            BENJAMIN P. SISNEY*
                                                                             (D.C. Bar No. 1044721)
                                                                            NATHAN MOELKER*
                                                                             (VA Bar No. 98313)
                                                                            201 Maryland Avenue, NE
                                                                            Washington, D.C.  20002
                                                                            Telephone: (202) 546-8890
                                                                            Facsimile: (202) 546-9309
                                                                            Email: bsisney@aclj.org

*Counsel for Intervenor*

*Admitted pro hac vice.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of October 2023, the foregoing document was electronically transmitted to the Clerk of Court using the ECF System for filing and was transmitted to those individuals receiving Notice of Electronic Filings in this matter.

/S/ELGINE HECETA MCARDLE
Elgine Heceta McArdle, WVID 6249
MCARDLE LAW OFFICE
2139 Market Street
Wheeling, West Virginia 26003
Phone: 304-232-0700
Fax: 304-214-1703
elgine@mcardlelawoffice.com

*Counsel for Intervenor*