# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

| | |
|---|---|
| JOHN ANTHONY CASTRO, | |
|     *Plaintiff,* | Civil Action No. 2:23-cv-00598 |
|     v. | |
| SECRETARY OF STATE ANDREW WARNER and DONALD JOHN TRUMP, | Honorable Irene C. Berger |
|     *Defendants.* | |
| WEST VIRGINIA REPUBLICAN PARTY and STATE OF WEST VIRGINIA, | |
|     *Intervenors.* | |

## SECRETARY OF STATE'S MEMORANDUM OF LAW
## IN SUPPORT OF HIS MOTION TO DISMISS

Douglas P. Buffington, II (WVSB # 8157)
 *Chief Deputy Attorney General*
Curtis R. A. Capehart (WVSB # 9876)
 *Deputy Attorney General*
Chanin W. Krivonyak (WVSB # 7247)
 *Deputy Attorney General*
West Virginia Attorney General's Office
1900 Kanawha Boulevard, East
Building 1, Room 26E
Charleston, WV 25305
Email: curtis.r.a.capehart@wvago.gov

*Counsel for Mac Warner, in his official capacity as Secretary of State of the State of West Virginia*

## INTRODUCTION

Comes now, Defendant, Mac Warner, in his official capacity as Secretary of State of the State of West Virginia, (hereinafter "the Secretary" or "Secretary Warner") and files this *Memorandum of Law in Support of His Motion to Dismiss* in response to the Plaintiff's Verified Complaint for Declaratory and Injunctive Relief (the "Complaint") filed by John Anthony Castro (hereinafter "Plaintiff") on September 7, 2023. *See* ECF No. 1. For the reasons set forth herein, the Secretary, by and through his undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6), hereby requests that the Court grant his motion to dismiss the Complaint with prejudice.

## BACKGROUND

The nature of this case cleaves to the core of the Secretary's role as chief election officer, and it invites significant scrutiny as a potential vehicle for obstruction—rather than preservation, as alleged—of the electoral process. Plaintiff's pending Complaint asks this Honorable Court to enjoin Secretary Warner from "accepting or processing Defendant Donald John Trump's ballot access documentation, including, but not limited to, nominating petitions." ECF No. 2 ¶ 16. Notably, this action is one of at least twenty-four (24) similar lawsuits that Plaintiff has filed in federal district courts around the country since early 2023,[1] as enumerated by Defendant Trump in a recent filing. *See* ECF No. 37. In these suits, Plaintiff appears to be seeking the same thing: declaratory judgments and injunctive relief to prevent Defendant Donald John Trump's (hereinafter "Defendant Trump") name from being printed on the primary presidential candidate ballot. *See* ECF No. 1 ¶ 16.

---

[1] Specifically in Alaska, Arizona, California, Connecticut, Colorado, Delaware, Florida, Idaho, Kansas, Maine, Massachusetts, Montana, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Texas, Vermont, and Utah.

Plaintiff founds this action on allegations that, among other things, Defendant Trump engaged in insurrection and "is disqualified under Section 3 of the 14th Amendment" to the United States Constitution to hold the office of President of the United States.  ECF No. 1 ¶ 18.  Plaintiff states that he has registered with the FEC to run as a candidate for President of the United States and that he and Defendant Trump are both Republican primary presidential candidates. ECF No. 1 ¶¶ 2, 15, 22, 35, 45.  Plaintiff also claims that he is "suffering irreparable competitive injuries" because Defendant Trump is "siphoning off votes and contributions," and therefore putting Plaintiff "at both a voter and donor disadvantage."  ECF No. 1 ¶¶ 27, 103.  Plaintiff argues that Section 3 of the Fourteenth Amendment "create[s] an implied cause of action for a fellow candidate to obtain relief for a political competitive injury by challenging another candidate's constitutional eligibility on the grounds that they engaged in or provided 'aid or comfort' to an insurrection."  ECF No. 1 ¶¶ 8, 18, 98.  Plaintiff seeks declaratory judgment relative to this argument and asserts that he is entitled to injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure preventing, among other things, Secretary Warner from accepting Defendant Trump's documentation to be a candidate for President of the United States on the primary ballot in West Virginia.

## LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(1), a complaint must be dismissed when the court lacks subject-matter jurisdiction.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  Plaintiff bears the burden of proving jurisdiction.  *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Under Fed. R. Civ. P. 12(b)(6), a complaint fails to state a claim when it does not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  The factual allegations must "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  A "court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth."  *Ashcroft v. Iqbal,* 556 U.S. at 664, 679.  The Court need not "accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555.

## ARGUMENT

Plaintiff's pleadings are insufficient in establishing his standing to bring this lawsuit, or any basis for federal jurisdiction, and is unripe for review.  The Court lacks jurisdiction over this matter and it should be dismissed, as has been done by other federal district courts presented with similar claims by Plaintiff against Defendant Trump.  *See* Order, *Castro v. Trump*, No. 23-80015 (S.D. Fl. June 25, 2023), ECF No. 33; *Castro v. FEC*, No. CV 22-2176, 2022 WL 17976630, at *2 (D.D.C. Dec. 6, 2022).

### I.   STANDING

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of subject-matter jurisdiction, and without standing, there is no subject matter jurisdiction.  "In analyzing standing, the Supreme Court reiterated that "no principle is more fundamental to the judiciary's proper role in the United States's system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *John and Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.,* 78 F.4th 622, 630 (4th Cir. 2023) (quoting *Clapper v. Amnesty Int'l. USA,* 568 U.S. 398, 408 (2013)).  The "irreducible constitutional minimum of standing," *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992), consists of three elements designed to ensure that Plaintiff "has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of

the court's remedial powers on his behalf." *White Tail Park, Inc. v. Stroube,* 413 F.3d 451, 458 (4th Cir. 2005) (quoting *Planned Parenthood of South Carolina Inc. v. Rose,* 361 F.3d 786, 789 (4th Cir. 2004)).  Plaintiff bears the burden of establishing the three elements of standing as follows: (1) he suffered from an "injury in fact," that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) there is a "causal connection" between his alleged "injury and the conduct complained of," and not "[t]he result [of] the independent action of some third party not before the court;" and (3) that it's "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan,* 504 U.S. at 560-561.

A.   <u>No actual imminent harm here.</u>

As for the first factor, the Complaint's allegations are not actual or imminent, let alone concrete.  Rather, they exhibit more of a conjectural nature.  Plaintiff asserts that he is "suffering irreparable competitive injuries" due to the "siphoning off votes and contributions" by Defendant Trump.  ECF No. 1 ¶¶ 27, 103.  Beyond such bare allegations, the Complaint is notably lacking in any specific allegations bearing up these "harms" as anything other than conjecture and hollow.

In truth, there are precious few allegations regarding the Plaintiff's candidacy beyond the bare statement and the provision of an FEC candidate identification number.  There are no allegations, for example, informing on campaign efforts and organization or seeking contributions in West Virginia, which fundraising can be and typically is taking place regardless of this early phase of the electoral process.  Considered on the whole, the Complaint is lacking in sufficient pleading to support the Plaintiff as a true active candidate.

Further, it is simply inaccurate to contend that votes are being "siphon[ed] off" at present. West Virginia's basic candidate filing requirements for members of a recognized political party, such as Republican or Democrat candidates for President of the United States, are established by W. Va. Code § 3-5-7. Specifically, this section requires that "[a]ny person who is eligible and seeks to hold an office or political party position to be filled by election in any primary or general election held under the provisions of this chapter shall file a certificate of announcement declaring his or her candidacy for the nomination or election to the office." W. Va. Code § 3-5-7(a). More importantly, that statute establishes the time period when potential candidates are permitted to file their certificates of announcement. In pertinent part, that statute establishes that "[t]he certificate of announcement shall be filed with the proper officer not earlier than the second Monday in January before the primary election day and not later than the last Saturday in January before the primary election day . . . ." W. Va. Code § 3-5-7(c). The period for candidates to file their certificates of announcement with the Secretary's office (January 8-January 27, 2024) does not even open for almost three (3) months—let alone the process for preparing ballots—thus, there is no "immediate" harm present as required by Article III.

B.      No traceability as any alleged injury results from third party actions.

Plaintiff alleges he will be "suffering irreparable competitive injuries" because Defendant Trump is "siphoning off votes and contributions," and therefore putting Plaintiff "at both a voter and donor disadvantage" if Secretary Warner accepts Defendant Trump's certificate of announcement in January 2024 and allows his name to be printed on West Virginia's presidential primary ballot. *See* ECF No. 1 ¶¶ 27, 103. The Complaint even states Plaintiff is "presently being irreparably injured every day that Defendant Donald John Trump is permitted to continue his

6

unconstitutional candidacy." ECF No. 1 ¶ 105. However, whether the Secretary receives a presidential primary certificate of announcement does not influence a separate primary candidate's ability to file his/her certificate. If Defendant Trump files a presidential primary certificate of announcement, campaigns for election, and/or fundraises for a campaign in West Virginia, Plaintiff is in no way prevented from also filing, campaigning, and/or fundraising for his own presidential primary candidacy in accordance with West Virginia law. The actions of filing required documentation, campaigning, and fundraising by a candidate do not force individual citizens to make contributions or vote for that candidate; those are ultimately the decisions of *voters*. Candidates may hope to influence those decisions, but the third-party voters make those decisions for themselves. It is evident that Plaintiff's allegations are overly attenuated and entirely contingent on the actions of unknowable numbers of third parties. *See, generally, Lujan,* 504 U.S. at 560 (1992); *Beck v. McDonald,* 848 F.3d 262, 268 (4th Cir. 2017).

    C. <u>Plaintiff's alleged injuries will not be redressed by the requested relief.</u>

In the case at hand, the relief sought by Plaintiff will not redress his alleged injuries. Plaintiff declares he and his purported campaign are suffering fundraising harm (and diminution of votes, though voting will not begin for many months) because he is competing with Defendant Trump for the same nomination. ECF No. 1 ¶¶ 27, 103. While an order giving the Plaintiff declaratory and injunctive relief here could prevent Defendant Trump from being a candidate, that would do nothing to correct for Plaintiff's alleged injuries in contributions and votes. In fact, no court can fashion such an order because those decisions—on making political contributions and voting—are entirely private decisions by citizens and voters. Because the Court cannot fashion an order that could correct for the Plaintiff's alleged but unspecified and unknowable injuries on these scores, the Complaint's claims cannot be redressed here.

## II. RIPENESS

The ripeness doctrine "prevents judicial consideration of issues until a controversy is presented in clean-cut and concrete form," *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013) (quoting *Miller v. Brown*, 462 F.3d 312, 318-19 (4th Cir. 2006)), and is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass 'n v. DOI*, 538 U.S. 803, 808 (2003) (quoting *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 57 n. 18 (1993)).  A claim is ripe for adjudication once "the action[s] in controversy [are] final and not dependent on future uncertainties.  Stated alternatively, '[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Scoggins*, 718 F.3d at 270 (quoting *Texas v. U.S.*, 523 U.S. 296,300 (1998)) (internal citations omitted).

Here, Plaintiff fails to plead sufficient facts to satisfy the requirements of standing, therefore, the Court does not need to reach the ripeness analysis.  Nevertheless, the Complaint's claims are not adequately mature nor are they "clean-cut and concrete."

As described above, the period for candidates to file certificates of announcement in West Virginia does not open until January 2024, and the preparation of ballots does not begin until March 2024.  Any number of potential future events could impact the claims here in myriad ways well before those time frames.  This is a clear example of being dependent on future uncertainties.

To be clear, the Secretary is responsible for overseeing elections in West Virginia, including presidential primary elections, *see* W. Va. Code, § 3-1A-6, *see generally* W. Va. Code, Ch. 3, Art. 5, and acknowledges the limit on his authority to administratively refuse to certify a candidate for an election.  This may be done when a disqualifying factor is evident on the

certificate of announcement form itself, which the Supreme Court of Appeals of West Virginia has addressed in some detail:

> The Court recognizes that the Secretary of State is not charged by W. Va. Code, 3-5-9 (1964) with judicial duties; however, he is charged with certifying only those persons who are 'entitled to have their names printed on any political party ballot.'  The Code provision does not set forth how the Secretary of State shall determine entitlement, but it may be reasonably inferred that the Secretary should refuse to place on the ballot any person whose certificate of candidacy shows ineligibility on its face.  Furthermore, we believe that **in the case of an open and notorious disqualification for office such as a filing certificate tendered by a seven year old child, the Secretary of State would similarly be entitled to decline to have the individual's name printed on the ballot.**  As the Secretary of State accepted the certificate of candidacy and filing fee of the Governor, the question of the extent to which the Secretary of State should go behind a certificate of candidacy is not fairly raised.

*State ex rel. Maloney v. McCartney,* 223 S.E.2d 607, 616 (W. Va. 1976).

Secretary Warner does not have discretion to decline printing a candidate's name on the ballot based on allegations that a candidate engaged in some conduct that *may* disqualify the candidate, even if that possible disqualification arises from a Constitutional amendment.  That would be contrary to West Virginia law, and the Secretary would not refuse to certify such candidate on mere opinion and possibility.  The Secretary notes that the alleged disqualification here—insurrection—is not simply mentioned as a disqualifier in the Fourteenth Amendment with nothing further in federal law to inform state election officials when this status may attach.  "Insurrection" has been codified as a federal crime, the language of which even reflects the electoral disqualification found in Section 3 of the Fourteenth Amendment.  *See* 18 U.S.C. § 2383 (titled "Rebellion or insurrection").  Yet, while an "insurrection" conviction might arguably provide a case of "open and notorious disqualification" as contemplated by relevant West Virginia jurisprudence, there clearly has been no such conviction regarding Defendant Trump.

## CONCLUSION

For the foregoing reasons, the Secretary respectfully requests that this Honorable Court grant his motion to dismiss Plaintiff's Verified Complaint for Declaratory and Injunctive Relief with prejudice.

Respectfully submitted,

**MAC WARNER, in his official capacity as SECRETARY OF STATE OF THE STATE OF WEST VIRGINIA**

*/s/ Curtis R. A. Capehart*
Douglas P. Buffington, II (WVSB # 8157)
  *Chief Deputy Attorney General*
Curtis R. A. Capehart (WVSB # 9876)
  *Deputy Attorney General*
Chanin W. Krivonyak (WVSB # 7247)
  *Deputy Attorney General*
OFFICE OF THE WEST VIRGINIA ATTORNEY GENERAL
1900 Kanawha Boulevard, East
Bldg 1, Rm 26E
Charleston, WV 25305
DATED: October 12, 2023                    Email: curtis.r.a.capehart@wvago.gov