IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

JOHN ANTHONY CASTRO,

    *Plaintiff*,

    v.

SECRETARY OF STATE
ANDREW WARNER and
DONALD JOHN TRUMP,

    *Defendants*.

WEST VIRGINIA REPUBLICAN PARTY
and STATE OF WEST VIRGINIA,

    *Intervenors*.

Civil Action No. 2:23-cv-00598

Honorable Irene C. Berger

**STATE OF WEST VIRGINIA'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE 9.28 REPORT AND RECOMMENDATIONS ON PLAINTIFF'S EMERGENCY APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

Plaintiff John Anthony Castro objects to the magistrate judge's report and recommendation denying his request for a temporary restraining order. ECF No. 16. As best the State can discern, Castro believes that the magistrate judge erred in finding that Castro had not shown imminent, irreparable harm that would justify relief. Castro also thinks that the magistrate judge acted inconsistently in allowing the West Virginia Republican Party to intervene while denying Castro extraordinary relief.

Castro's objection—such as it is—is a narrow one. "The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendations to which no objections are addressed." *Proctor v. Colvin*, 229 F. Supp. 3d 494, 496–97 (S.D.W. Va. 2017). What's more, "a party's objection to a magistrate judge's report [must] be specific and particularized." *United States v.*

1

*Midgette*, 478 F.3d 616, 621 (4th Cir. 2007).  Although Castro purports to incorporate his prior filings, "[a]n objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific." *J.B. v. Frisco Indep. Sch. Dist.*, 528 F. Supp. 3d 614, 647 (E.D. Tex. 2021); *see also, e.g.*, *United States v. Middleton*, 595 F. Supp. 3d 1277, 1283 (N.D. Ga. 2022) ("[A] party does not state a valid objection to an R&R by merely incorporating by reference previous filings.").

Castro carried a heavy burden in seeking a temporary restraining order.  "The standard for granting either a TRO or a preliminary injunction is the same." *Williams v. Rigg*, 458 F. Supp. 3d 468, 474 (S.D.W. Va. 2020).  "A preliminary injunction is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Roe v. Dep't of Def.*, 947 F.3d 207, 219 (4th Cir. 2020) (cleaned up).  Castro must show that he is likely to succeed on the merits, he will suffer irreparable harm if the Court does not issue the temporary restraining order, the balance of the equities favors him, and the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 19, (2008).  "[A]ll four factors must be met in order to justify this extraordinary relief." *Pendleton v. W. Va. Div. of Corr.*, No. CV 2:15-01903, 2016 WL 3945702, at *2 (S.D.W. Va. July 19, 2016).  And even "satisfying these factors will not automatically guarantee an injunction." *Int'l Union v. Consol Energy, Inc.*, 243 F. Supp. 3d 755, 763 n.1 (S.D.W. Va. 2017).

The magistrate judge correctly concluded that Castro had failed as to the second factor—imminent, irreparable harm.  The magistrate judge was right for at least two independent reasons.

*First*, Castro has offered only speculation that he might be harmed if President Trump is not effectively barred from the Secretary of State's office.  Offering self-serving statements that President Trump is stealing supporters from him, Castro assumes that an injunction barring

President Trump from filing as a West Virginia candidate for the time being will somehow shift those supporters back to Castro. Yet he does not identify any supporter who is waiting for President Trump's (temporary) disqualification to cast his lot in with Castro. At most, his verified complaint offers vague references to hearsay and self-serving statements resting on his own expectations. But "the weight to be accorded affidavit testimony is within the discretion of the court, and statements based on belief rather than personal knowledge may be discounted." *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 862, 869 (S.D.W. Va. 2014); *see also Atari Games Corp. v. Nintendo of Am., Inc.*, 897 F.2d 1572, 1575 (Fed. Cir. 1990) ("[A] district court should be wary of issuing an injunction based solely upon allegations and conclusory affidavits submitted by plaintiff."). And ultimately, Castro asks this Court to issue an injunction based on how he *imagines* campaign dynamics might play out if President Trump is temporarily barred. Again, Castro's theory seems to be that temporary relief will somehow end President Trump's status as a candidate, which will in turn strengthen Castro's status as a candidate. But temporary relief will not disqualify President Trump as a candidate for election—that's what "temporary" means, after all. President Trump will continue running, and even Castro maintains that President Trump would "still have time to file his ballot access documentation" by the time this case finishes. ECF No. 9, at 8. Thus, any harm is illusory and speculative at best. The Fourth Circuit has warned against awarding relief in circumstances like these, cautioning that "a possibility of irreparable harm" is not enough. *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017).

*Second*, Castro has not shown any imminent harm that a temporary restraining order would address. Castro wants this Court to enjoin the Secretary of State "from accepting or scheduling an appointment for the acceptance of [President] … Trump's declaration of candidacy, ballot access fee, petitions in support thereof, and any other ballot access documentation." ECF No. 9, at 1. But

as the Secretary has explained at greater length, ECF No. 29, at 6, the relevant filing period for these documents does not even begin for several more months. *See also* W. VA. SEC'Y OF STATE'S OFF., 2024 ELECTIONS CALENDAR 3 (2023), https://bit.ly/3LZEuJt. So Castro's request does not address any "actual and imminent" harm, as it must. *Nat'l Med. Care, Inc. v. Espiritu*, 284 F. Supp. 2d 424, 431 (S.D.W. Va. 2003).

Nor was the magistrate judge's decision on the restraining order somehow inconsistent with its decision to allow the West Virginia Republican Party to intervene (even if that notion were an appropriate consideration for a temporary restraining order). One way or another, the West Virginia Republican Party will be involved in this election. It therefore has an indisputable interest in deciding who might stand for election on its behalf. But given his total absence from West Virginia to date, Castro may or may not be involved in this election. So the harms that rest on damage to his purported campaign are less obvious. (And contrary to what Castro says in his objection, the magistrate judge did *not* hold that Castro was a genuine candidate.) Regardless, Castro's reasoning ultimately seeks to vindicate an interest that the Fourth Circuit has said simply does not exist. The First Amendment might protect a person's right "to run for office," but it does "not also include entitlement to success in those endeavors." *Washington v. Finlay*, 664 F.2d 913, 927-28 (4th Cir. 1981). "The carefully guarded right to expression does not carry with it any right to be listened to, believed or supported in one's views." *Id.* at 928. So the magistrate judge was right to respect the interests of a major political party while rejecting the minimal interests of a merely theoretical candidate.

The other factors in the injunction test support the magistrate judge's decision, too.

Take the balance of harms. As explained above, Castro's present harms are non-existent. But an injunction would impose very real injuries on President Trump—"most significantly in the

4

form of reputational injuries." *Regions Bank v. Raymond James & Assocs., Inc.*, No. 6:20-CV-658-ORL-40EJK, 2020 WL 6870815, at \*5 (M.D. Fla. May 15, 2020). Castro asks this Court to smear President Trump as an insurrectionist based on an undeveloped record during a heated political campaign. "The Court [should] hesitate[] to brand [President Trump] with an insinuation of wrongdoing without more definitive evidence to that effect." *Id.*; *see also, e.g.*, *Allora, LLC v. Brownstone, Inc.*, No. 1:07CV87, 2007 WL 1246448, at \*7 (W.D.N.C. Apr. 27, 2007) (holding that the "massive damage to Defendants' reputations and financial stability" was "much more obvious and immediate than the harm detailed by Plaintiff"). The requested relief also threatens to complicate West Virginia election processes and impair West Virginia residents' right to vote for the candidate of their choice. *See Nader 2000 Primary Comm., Inc. v. Hechler*, 112 F. Supp. 2d 575, 579 (S.D.W. Va. 2000) (explaining that West Virginians have a First Amendment right to support the political candidate of their choice).

Likelihood of success is no better for Castro. To secure an injunction, Castro *must* show that his claims are likely to succeed. *See Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346-47 (4th Cir. 2009). The State has explained at length why Castro's claims cannot even survive a motion to dismiss. *See generally* ECF No. 44. Among other things, Castro lacks standing, brought unripe claims, asks the Court to decide political questions, and misapplies Section 3 of the Fourteenth Amendment. Even if the Court thinks these problems don't warrant dismissal, "[f]actual allegations that are sufficient to survive a motion to dismiss do not … necessarily entitle a party to injunctive relief." *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 862, 871 (S.D.W. Va. 2014). And based on the conclusory and ill-defined facts that Castro has summoned up to show that this anti-Confederate law should apply to President Trump, his prospects for success here are light years away from "likely."

Finally, the public interest counsels against an injunction. To be sure, "[t]he public has an interest in ensuring that the State's primary election is conducted pursuant to state [and federal] law and that only qualified candidates appear on the ballot." *De La Fuente v. S.C. Democratic Party*, 164 F. Supp. 3d 794, 806 (D.S.C. 2016). But the Court will have plenty of time before any election to decide whether Castro is entitled to a declaration that President Trump is an unqualified candidate. (To be clear: Castro hasn't offered anything to suggest President Trump is unqualified.) At the same time, "[t]he public benefits from free interchange in the marketplace of ideas, especially where a candidate has demonstrated a sufficient modicum of public support." *Nader 2000*, 112 F. Supp. 2d at 580. And granting Castro relief here would threaten to seize up that exchange. Meanwhile, the confusion likely to result from any injunction could undermine the public's "interest in … [the] stability of the election process." *Bennink v. City of Coopersville*, No. 5:06-CV-82, 2006 WL 1547279, at *3 (W.D. Mich. June 5, 2006). No need for that. The Court should let democracy and political discourse play out as usual.

For all these reasons, then, the Court should adopt the magistrate judge's report and recommendation and deny Castro's motion for a temporary restraining order.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | **THE STATE OF WEST VIRGINIA** |
|  | PATRICK MORRISEY<br>ATTORNEY GENERAL |
|  | */s/ Michael R. Williams*<br>Michael R. Williams (WV Bar # 14148)<br>  *Principal Deputy Solicitor General*<br>David E. Gilbert (WV Bar # 12157)<br>  *Deputy Attorney General*<br>State Capitol Complex<br>Building 1, Room E-26<br>michael.r.williams@wvago.gov<br>david.e.gilbert@wvago.gov<br>Telephone: (304) 558-2021 |
| Dated: October 13, 2023 | Facsimile: (304) 558-0140 |