IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

JOHN ANTHONY CASTRO,

    Plaintiff,

v.

SECRETARY OF STATE ANDREW WARNER, and DONALD JOHN TRUMP,

    Defendants,

WEST VIRGINIA REPUBLICAN PARTY,

    Intervenor-Plaintiff.

Civil Action No. 2:23-cv-00598
The Honorable Irene C. Berger

## REPLY IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT DONALD JOHN TRUMP

Defendant Donald John Trump ("President Trump"), by counsel, hereby submits the following reply in further support of his Motion to Dismiss, [CM/ECF No. 33].

## Introduction

Relying on distinctions that lead nowhere, Plaintiff's response brief doubles down on standing and justiciability arguments that are widely rejected, badly mis-reads Section Three and its history, and ignores dispositive issues raised in President Trump's dismissal briefing. The Complaint ultimately reflects a meritless claim that this Court lacks jurisdiction to adjudicate. President Trump therefore requests that it be dismissed for lack of jurisdiction and/or for failure to state a claim.[1]

---

[1] Plaintiff represents that President Trump's "motion is titled as being solely with regard for lack of subject matter jurisdiction," [CM/ECF No. 38 at 1], but President Trump's motion to dismiss [CM/ECF No. 33] and memorandum in support [CM/ECF No. 34] both make clear that Plaintiff's Complaint fails both for lack of subject matter jurisdiction Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

**Discussion**

**I.   Plaintiff lacks standing to bring these claims, and his conclusory claims to the contrary lack any factual or legal support whatsoever.**

Plaintiff's standing argument rests upon a chain of speculation that remains untethered to any plausible factual allegation or legal support. [*See* CM/ECF No. 34 at 3-8.] In this past week, a similar action brought by an individual voter was dismissed for lack of standing. *See Schaefer v. Trump, et al.*, Case No. 23-cv-1451, CM/ECF No. 6 (S.D. Ca. Oct. 13, 2023). And as two federal district courts have held in cases brought by this same Plaintiff, these allegations are insufficient to confer Article III standing. *See Castro v. Trump*, Case No. 23-80014-CIV-CANNON (S.D. Fl. June 26, 2023), *cert. denied* Case No. 23-117, __ S. Ct. __, 2023 WL 6379034 (Oct. 2, 2023); *Castro v. F.E.C.*, No. 1:22-cv-02176, 2022 WL 17976630 (D.D.C. Dec. 6, 2022).

Plaintiff fails to allege facts sufficient to establish any of the required showings for Article III standing. The Complaint's highly attenuated injury—President Trump's presence on the 2024 ballot deprives Plaintiff of the political support he needs to win the Republican Party's nomination for the next President of the United States—strains way too far. *See, e.g., Wild Va. v. Council on Env't Quality*, 56 F.4th 281, 293 n.4 (4th Cir. 2022) (a claim of future injury may not "rely on a highly attenuated chain of possibilities"). That a vote may change in the future is insufficient to establish an injury-in-fact for purposes of standing.

Plaintiff's response identifies no authority in support of his alleged competitive injury. An intangible injury might conceivably confer standing if it is "traditionally recognized as providing a basis for lawsuits in American Courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992). And history may support standing when

"an alleged intangible harm has a close relationship to a harm that has been traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 341. But Plaintiff does not, and cannot, identify any congressional or historical support for his effort to challenge the qualifications of a presidential candidate via civil action—much less historical or congressional support for a "competitive injury" alleged by a "candidate" with no political base to speak of. Even in jurisdictions where competitive injury standing is recognized, there is no standing when the injury is attributed to "merely one in a chain of independent causal factors." *Fulani v. Brady*, 935 F.2d 1324, 1329 (D.C. Cir. 1991). Plaintiff has failed to establish a concrete injury-in-fact.

On traceability, Plaintiff merely states that "the injury is due to Defendant Donald John Trump's unconstitutional pursuit of holding office," and that his allegation "must be accepted as true for purposes of a motion to dismiss." [CM/ECF No. 38 at 2.] To the contrary, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements . . . required by mere conclusory statements, do not suffice."). Plaintiff's failure to plausibly allege that his political obscurity is traceable to President Trump's planned 2024 candidacy is fatal. In fact, the little notoriety that Plaintiff alleges that he has garnered is *because* of President Trump—not in spite of him. [*See* CM/ECF No. 1 at ¶¶ 34-35 (identifying media attention in connection with Plaintiff's current legal strategy).]

Plaintiff lets the mask slip when he argues that his alleged injury is redressable. [*See* CM/ECF No. 38 at 2.] In his response brief, Plaintiff does not attempt to tie his sought-after redress to his alleged competitive injury. Instead, according to Plaintiff, stopping President Trump's candidacy is redress in it its own right. [*See* CM/ECF No. 38 at 2.] Plaintiff plainly seeks to

3

prosecute a general grievance rather than redress any concrete, *de facto* injury. President Trump therefore requests that the Complaint be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing.

## II. The Complaint presents a nonjusticiable political question and Plaintiff's thin distinctions lead nowhere.

As federal courts have widely concluded, challenging a candidate's qualifications for office poses a quintessential political question. [*See* CM/ECF No. 34 at 9-12 (gathering cases).] These courts were not fooled, as Plaintiff implies, by a "play on semantics" or "sanctionable frivolity" regarding the political question doctrine. [CM/ECF No. 38 at 2-3, 8.] Rather, these decisions acknowledge the clear constitutional commitment of a candidate's qualifications to Congress, not the federal courts. President Trump's Memorandum in Support identifies (i) the constitutional text committing the issue to Congress, [CM/ECF No. 34 at 9-12]; (ii) how Congress historically acted (or not acted) on that commitment, [*id.* at 12-14]; and (iii) caselaw recognizing that this gives rise to a textbook application of the political question doctrine. [*Id.* at 9-12].

In his response brief, Plaintiff identifies no authority whatsoever supporting the exercise of subject matter jurisdiction here. Instead, Plaintiff offers a series of distinctions to the cases cited in President Trump's briefing. These distinctions are ultimately meaningless.

First, Plaintiff asserts that this issue has not been committed to a political branch because "the Electoral College Act no longer allow[s] for objections based on qualifications." [CM/ECF No. 38 at 6.] Plaintiff conflates *the Constitution's commitment of the issue to Congress* (which triggers the political question doctrine) with *how Congress chooses to act on it* (which is the political question itself). Moreover, Plaintiff ignores the other constitutional provisions that commit the issue of qualification to Congress. For example, Section 3 of the Fourteenth Amendment gives *Congress* authority to remove any disability under that section. The Twentieth

Amendment contemplates procedures and *congressional* action in the event that an unqualified President-elect takes office. See U.S. Const. amend. XX, § 3. The Twenty-Fifth Amendment provides "*Congress shall decide the issue*" of Presidential incapacity. U.S. Const. amend. XXV (emphasis added). And the Constitution gives *Congress* (and Congress alone) the authority to remove the President from office. See U.S. Const. art. I, § 2, cl.5. Congress's amendments the Electoral College Act does not erase the political posed here question.

Second, Plaintiff emphasizes that the political question doctrine was an alternative, dicta holding in cases brought to disqualify then-candidates Barack Obama and John McCain. *See Kerchner v. Obama*, 669 F. Supp. 2d 477, 483 at n.5 (D.N.J. 2009), *aff'd*, 612 F.3d 204 (3d Cir. 2010); *Berg v. Obama*, 586 F.3d 234 (3d Cir. 2009); *Grinols v. Electoral College*, No. 2:12-cv-02997, 2013 WL 2294885, at *5-7 (E.D. Cal. May 23, 2013); *Robinson v. Bowen*, 567 F. Supp. 2d 1144 (N.D. Cal. 2008). "If these conclusions were dicta, it does not necessarily follow that they were wrong." *Fouts v. Maryland Cas. Co.*, 30 F.2d 357, 359 (4th Cir. 1929). The fact that similar lawsuits suffered *multiple* jurisdictional defects—the same defects presented here—does not support Plaintiff's position.

Third and finally, Plaintiff claims that the political question doctrine "applies only after the major political parties hold their conventions and submit their nomination paperwork to the state for placement on the general ballot." [CM/ECF No. 38 at 4.] There is no support for this distinction. Plaintiff claims "Courts have held" that this distinction applies, but he cites to none. [*Id.* at 3.] This is because Plaintiff's assertion is a figment of his own imagination. None of the political question cases cited above explicitly, or implicitly, tie the application of the doctrine to whether the action is filed before or after party conventions. Rather, these decisions recognize a candidate's qualifications of office are committed to Congress—and Congress alone—without temporal

limitation, up to, and even after, the election. *See, e.g., Grinols*, 2013 WL 2294885 ("[W]hether President Obama may legitimately run for office and serve as President[] is a political question that the Court may not answer"); *Robinson*, 567 F. Supp. 2d. at 1147 ("Judicial review—if any— should occur only after the electoral and Congressional processes have run their course.").

Plaintiff's purported distinctions to the universe of caselaw dedicating candidate qualifications to Congress, rather than the federal courts, are unsupported and unavailing. President Trump therefore requests that the Complaint be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) under the political question doctrine.

**III.    Section Three is not self-executing and Plaintiff's claim to the contrary is ahistorical.**

As set forth in detail in President Trump's Memorandum in Support, Section Three is not self-executing; it requires an act of Congress to effectuate in federal court. [*See* CM/ECF No. 34 at 12-14.] So held Chief Justice Salmon P. Chase one year after the Fourteenth Amendment's ratification. *In re Griffin*, 11 F.Cas. 7 (C.C.Va. 1869). In response, Congress enacted (and later repealed) the Enforcement Act which allowed federal district attorneys to enforce Section Three in federal court. *See* Enforcement Act, Sections 14-15 (1870). Were individual plaintiffs, individual secretaries of state, or individual federal courts vested authority to enforce Section Three in the absence of Congressional authorization, a patchwork of 51 state and district election laws would cause an intractable crisis. [*See* CM/ECF No. 34 at 12-14.]

Plaintiff's rebuttal argument is flatly wrong. Plaintiff claims that the "1870 Enforcement Act was created to grant individuals (i.e., law enforcement) that otherwise did not have a direct injury . . . to remove public officials holding office in violation of Section Three." [CM/ECF No. 38 at 8.] In other words, according to Plaintiff, Section Three was *always* self-executing and

actionable by any aggrieved private party—but Congress enacted the Enforcement Act to give that same authority to district attorneys, too.

This is simply ahistorical. The Fourteenth Amendment itself provides that "*Congress* shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. amend. XIV § 5 (emphasis added). One year after the Fourteenth Amendment's ratification, the Chief Justice of the Supreme Court rejected an attempt to disqualify a sitting judge under Section Three by a petitioner who had recently been sentenced by that judge. *In re Griffin*, 11 F.Cas. 7 (C.C.Va. 1869). The Chief Justice denied the petition, holding that Section Three "clearly requires legislation in order to give effect to it," that it is "beyond reasonable question" that Section Three is "to be made operative . . . by legislation of congress in its ordinary course," and that to allow petitioner to enforce it himself would unleash "manifold evils." *Id.* One year later, Congress enacted the Enforcement Act, which reads, "it shall be the duty of the district attorney of the United States . . . to proceed against a [violator of Section Three] . . . and to prosecute the same to the removal of such person from office." The Enforcement Act was repealed in 1925, and more recent efforts to enact a cause of action under Section Three have died in Congress. *See* H.R. 1405, 117th Cong. 2021.

Plaintiff's revisionism is entitled no credence. Section Three is not self-executing and Plaintiff fails to state a plausible claim to the contrary. President Trump therefore requests that the Complaint be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

**IV.   Plaintiff fails to confront President Trump's remaining bases for dismissal, which each remain independently dispositive.**

President Trump also moved to dismiss the Complaint because (i) Section Three does not apply to the President of the United States and (ii) there is no plausible allegation that President

Trump engaged in any conduct proscribed by Section Three. [*See* CM/ECF No. 34 at 14-27]. The fact that Section Three applies neither to President Trump nor his alleged conduct is well-supported by the text and history of Section Three itself. Plaintiff offers *no* rebuttal to these arguments. His failure to do so constitutes a waiver that permits this Court to dismiss on the "uncontroverted bases asserted." *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004) (when a party fails to respond to a motion to dismiss, a district court is "entitled . . . to rule on the . . . motion and dismiss [the claims] on the uncontroverted bases asserted").

These unrebutted arguments doom Plaintiff's case. Even if this Court were to decline to enforce a waiver due to Plaintiff's *pro se* status, his failure to address these arguments shines a spotlight on his substantive failure to state a claim. Section Three applies to "officer[s] of the United States" who have "taken an oath . . . to support the Constitution." U.S. Const. amend. XIV § 3. Both the Constitution itself and judicial interpretations of it distinguish between "officers of the United States" and the President—and the former does not include the latter. [CM/ECF No. 34 at 14-18 (citing *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 497-98 (2010); *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, n.3 (2020)).] And while some officers of the United States take the oath described in Section Three, the President does not. [*See id.* at 17.] Section Three does not apply to President Trump, and Plaintiff's failure to establish that it does is fatal.

Nor does Section Three apply to his alleged conduct. Section Three proscribes those who "have engaged in insurrection or rebellion against [the United States], or given aid or comfort to the enemies thereof." U.S. Const. amend. XIV § 3. There is no plausible allegation that President Trump did either of those things. [CM/ECF No. 34 at 18-26.] The January 6 riot was not an "insurrection" or "rebellion" as understood by the drafters of the Fourteenth Amendment;

8

President Trump did not "engage" (or even "incite") the riot under any standard; and providing "aid or comfort to the enemy" refers to foreign powers at war with the United States, not alleged political dissidents. [*See id.*] Because Plaintiff cannot plausibly allege any conduct violative of Section Three, Plaintiff re-writes Section Three to say what it does not. [*Id.* at 18.] Plaintiff fails to address any of the several ways he misreads of Section Three in his response brief. Ignoring both the text, and the meaning, of the provision Plaintiff seeks to enforce here does not give rise to a plausible claim for relief. President Trump therefore requests that the Complaint be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## Conclusion

For the reasons stated above and in President Trump's Memorandum in Support, [CM/ECF No. 34], President Trump requests that the Complaint be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).

DONALD JOHN TRUMP,

By Counsel,

*/s/ J. Mark Adkins*
J. Mark Adkins (WVSB #7414)
Richard R. Heath, Jr. (WVSB #9067)
William M. Lorensen (WVSB #13223)
BOWLES RICE LLP
600 Quarrier St.
Charleston, West Virginia 25301
Tel: (304) 347-1100
Fax: (304) 347-1746
madkins@bowlesrice.com
rheath@bowlesrice.com
wlorensen@bowlesrice.com

**CERTIFICATE OF SERVICE**

The undersigned counsel does hereby certify that on the **16th** day of **October, 2023**, the foregoing ***Reply in Support of Motion to Dismiss of Donald John Trump*** was served upon all parties of record electronically via the Court's CM/EMF system as follows:

John Anthony Castro
12 Park Place
Mansfield, Texas 76063
J.Castro@CastroAndCo.com
*Pro Se Plaintiff*

Elgine Heceta McArdle
MCARDLE LAW OFFICE
2139 Market Street
Wheeling, West Virginia 26002
elgine@mcardlelawoffice.com

-and-

Jay Alan Sekulow
Jordan A. Sekulow
Stuart J. Roth
Andrew J. Economou
Benjamin P. Sisney
Nathan J. Moelker
THE AMERICAN CENTER FOR LAW AND JUSTICE
201 Maryland Avenue, NE
Washington, DC 20002
sekulow@aclj.org
jordansekulow@aclj.org
sroth@aclj.org
aekonomou@aclj.org
bsisney@aclj.org
nmoelker@aclj.org
*Counsel for Intervenor-Plaintiff West Virginia Republican Party*

Douglas P. Buffington, II
 Chief Deputy Attorney General
Curtis R. A. Capehart
 Deputy Attorney General
Chanin Wolfinbarger Krivonyak
 Deputy Attorney General
Office of the Attorney General
1900 Kanawha Blvd. E., Bldg 1, Rm 26E
Charleston, West Virginia 25305
Doug.P.Buffington@wvago.gov
Curtis.R.A.Capehart@wvago.gov
ckrivonyak@wvago.gov
*Counsel for Defendant Andrew Warner, West Virginia Secretary of State*

Michael R. Williams
 Principal Deputy Solicitor General
David E. Gilbert
 Deputy Attorney General
State Capitol Complex
Building 1, Room E-26
michael.r.williams@wvago.gov
dgilbert@wvago.gov
*Counsel for Intervenor The State of West Virginia – Patrick Morrisey, Attorney General*

　　　　　　　　　　　　　　　*/s/ J. Mark Adkins*
　　　　　　　　　　　　　　　J. Mark Adkins (WVSB #7414)