# No. 23-1902

## In the United States Court of Appeals for the First Circuit

**JOHN ANTHONY CASTRO,**

*Plaintiff - Appellant,*

***v.***

**DAVID SCANLAN, NEW HAMPSHIRE SECRETARY OF STATE; DONALD J. TRUMP; NEW HAMPSHIRE REPUBLICAN STATE COMMITTEE,**

*Defendants - Appellees.*

APPEAL FORM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE, CONCORD
ORIGINATING CIVIL CASE NO.: 1:23-CV-00416
Honorable Joseph Normand LaPlante, U.S. District Judge

_____

## APPELLANT'S OPENING BRIEF

_____

Respectfully submitted:

John Anthony Castro
Appellant
12 Park Place
Mansfield, TX  76063
Tel. (202) 594 - 4344

*Pro Se*

**JOHN ANTHONY CASTRO, APPELLANT,**                    **NO. 23-1902**
**v.**
**NEW HAMPSHIRE SECRETARY OF STATE DAVID SCANLAN**
**and DONALD JOHN TRUMP, APPELLEES.**

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

The undersigned counsel of record hereby certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Castro, John Anthony, Appellant.

2. New Hampshire Secretary of State David Scanlan, Appellee.

3. Donald John Trump, Appellee.

4. Jonathan Mark Shaw, Counsel for Appellee Donald John Trump.

5. Mark Meuser, Counsel for Appellee Donald John Trump.

6. Morgan Tanafon, Counsel for Appellee Donald John Trump.

7. Richard J. Lehmann, Counsel for Appellee Donald John Trump.

8. David Warrington, Counsel for Appellee Donald John Trump.

9. Bryan K. Gould, Counsel for Appellee Donald John Trump.

10. Brendan Avery O'Donnell, Counsel for Appellee NH Secretary of State.

11. Joseph LaPlante, United States District Judge.

*/s/ John Anthony Castro*
John Anthony Castro

i

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ........................................................................ i

TABLE OF CITATIONS ......................................................................... iv

REASONS WHY ORAL ARGUMENT NEED NOT BE HEARD ..................... vii

STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION ... 1

STATEMENT OF THE ISSUES............................................................... 2

STATEMENT OF THE CASE.................................................................. 3

    *Restatement of Facts Relevant to Standing* ..................................... 10

    *Statement of the Facts Relevant to the Political Question Doctrine* ............... 11

SUMMARY OF THE ARGUMENT ....................................................... 13

STANDARD OF REVIEW .................................................................. 14

ARGUMENT .................................................................................. 15

I.   PLAINTIFF HAS POLITICAL COMPETITOR STANDING GRANTING THE DISTRICT COURT SUBJECT MATTER JURISDICTION OVER THIS CASE ................................................................................ 15

    A.  Castro's Injury-in-Fact ............................................................ 17

        1.  Diminution of Votes............................................................ 17

    B.  Traceability ........................................................................ 19

        1.  Appellant's Injury to Traceable to Conduct of Both Appellees........... 19

    C.  Redressability ..................................................................... 20

II.  THERE IS NO TEXTUALLY DEMONSTRABLE CONSTITUTIONAL COMMITMENT TO A POLITICAL BRANCH OF THE FEDERAL OR STATE GOVERNMENT ................................................................... 21

CONCLUSION ..................................................................... 23

CERTIFICATE OF COMPLIANCE ...................................... 24

CERTIFICATE OF SERVICE ............................................... 25

ADDENDUM

# TABLE OF CITATIONS

## Cases

*Caliste v. Cantrell*,
   No. CV 17-6197, 2017 WL 6344152 (E.D. La. Dec. 12, 2017)..........................22

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   No. CV 05-03459 GAF EX, 2014 WL 5510996 (C.D. Cal. Oct. 31, 2014) .......22

*Competitive Enter. Inst. v. NHTSA*,
   901 F.2d 107 (D.C. Cir. 1990) ................................................................................20

*Conforti v. Hanlon*,
   No. CV2008267ZNQTJB, 2022 WL 1744774 (D.N.J. May 31, 2022) ..............18

*Cooper v. Tokyo Elec. Power Co., Inc.*,
   860 F.3d 1193 (9th Cir. 2017) ...............................................................................14

*Fair Fight Action, Inc. v. Raffensperger*,
   634 F. Supp. 3d 1128 (N.D. Ga. 2022) .................................................................22

*Fed. Republic of Yugoslavia v. Park-71st Corp.*,
   913 F. Supp. 191 (S.D.N.Y. 1995) ........................................................................22

*Fulani v. Brady*,
   935 F.2d 1324 (D.C. Cir. 1991) .............................................................. 16, 18, 19

*Gottlieb v. FEC*,
   143 F.3d 618 (D.C. Cir. 1998) ...............................................................................16

*Grinols v. Electoral Coll.*,
   No. 2:12-CV-02997-MCE, 2013 WL 2294885
   (E.D. Cal. May 23, 2013), *aff'd*, 622 F. App'x 624 (9th Cir. 2015) .....................8

*Hassan v. FEC*,
   893 F. Supp. 2d 248 (D.D.C. 2012), *aff'd*,
   No. 12-5335, 2013 WL 1164506 (D.C. Cir. 2013)...............................................16

*In re 3M Combat Arms Earplug Prod. Liab. Litig.*,
  No. 3:19MD2885, 2021 WL 1600487 (N.D. Fla. Apr. 23, 2021)......................22

*Kerin v. Titeflex Corp.*,
  770 F.3d 978 (1st Cir. 2014).................................................................................14

*Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*,
  875 F. Supp. 2d 791 (W.D. Tenn. 2012) ...............................................................9

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..............................................................................................15

*New World Radio, Inc. v. FCC*,
  294 F.3d 164 (D.C. Cir. 2002)..............................................................................16

*Raines v. Byrd*,
  521 U.S. 811 (1997)..............................................................................................15

*Schroder v. Bush*,
  263 F.3d 1169 (10th Cir. 2001) ............................................................................14

*Seneca Nation of Indians v. State*,
  No. 93-CV-688A, 1994 WL 688262 (W.D.N.Y. Oct. 28, 1994) ........................22

*Shays v. FEC*,
  414 F.3d 76 (D.C. Cir. 2005) ......................................................................... 16, 17

*Simon v. Republic of Hungary*,
  No. CV 10-01770 (BAH), 2012 WL 13069771 (D.D.C. Sept. 30, 2012)...........22

*Spectrum Stores, Inc. v. Citgo Petroleum Corp.*,
  632 F.3d 938 (5th Cir. 2011) ................................................................................14

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)..............................................................................................15

*Starr Int'l Co., Inc. v. U.S.*,
  910 F.3d 527 (D.C. Cir. 2018)..............................................................................14

*U.S. Liab. Ins. Co. v. Selman*,
    70 F.3d 684 (1st Cir. 1995)..................................................................23

*U.S. v. Hempfling*,
    No. CVF05-594LJOSMS, 2007 WL 1299262 (E.D. Cal. May 1, 2007)............22

*U.S. v. Kellogg Brown & Root Servs., Inc.*,
    856 F. Supp. 2d 176 (D.D.C. 2012)......................................................22

*U.S. v. Washington*,
    19 F. Supp. 3d 1317 (W.D. Wash. 2000).................................................22

## Constitution

U.S. Const. amend XIV, § 3 ...................................................................19

U.S. Const. art. III, § 2 .......................................................................15

## Statutes

28 U.S.C. § 1291 ...............................................................................1

28 U.S.C. § 1294 ...............................................................................1

28 U.S.C. § 1331 ...............................................................................1

28 U.S.C. § 1746...............................................................................6, 7

## Other Authorities

https://www.doj.nh.gov/news/2023/documents/20230913-section-3-14th-
    amendment-guidance.pdf ..................................................................... 4

## REASONS WHY ORAL ARGUMENT NEED NOT BE HEARD

Pursuant to Fed. R. App. P. 34(a)(2)(C), oral argument need not be heard because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## STATEMENT OF SUBJECT-MATTER AND
## APPELLATE JURISDICTION

Jurisdiction for this civil action was proper in the United States District Court for the District of New Hampshire pursuant to 28 U.S.C. § 1331 because Appellant John Anthony Castro's claim arose under Section 3 of the 14th Amendment to the United States Constitution.

The district court entered final judgment against Appellant as to all claims on October 27, 2023, on the basis he lacked standing and that the issues presented a nonjusticiable political question.  On October 27, 2023, Appellant filed a timely notice of appeal.

Jurisdiction in this Honorable Court of Appeals is proper under 28 U.S.C. §§ 1291 and 1294.

## STATEMENT OF THE ISSUES

1.  Does a New Hampshire ballot-placed Republican Presidential candidate who filed before other candidates have Article III standing to challenge the constitutional qualifications and eligibility of another New Hampshire ballot-placed Republican Presidential candidate based on a political competitive injury in the form a diminution of votes and/or dilution of position due to the entrance of a new unlawful competitor?

2.  Can the *Political Question Doctrine* be applied to a primary election legal challenge to a candidate's constitutional qualifications, which is wholly unrelated to the general election's competition for electoral votes governed by the U.S. Constitution and the Electoral Count Act?

## STATEMENT OF THE CASE

On September 5, 2023, Appellant John Anthony Castro filed the civil action at issue in this case before the U.S. District Court for the District of New Hampshire[1] in an effort to disqualify Appellee Donald John Trump for having provided aid and comfort to the insurrectionists that attacked the United States Capitol on January 6, 2021.[2]

In his Verified Complaint, Appellant John Anthony Castro expressed his intent, subject to the penalty of perjury, to file his New Hampshire Declaration of Candidacy with the $1,000 filing fee.[3]  In doing so, Appellant John Anthony Castro would be in direct competition against Appellee Donald John Trump in

---

[1] See A9.

[2] On January 6, 2021, after witnessing a large group of Trump supporters violently attacking the United States Capitol to prevent the lawful certification of the 2020 election results, Appellee Donald John Trump stated on live television, "we love you, you're very special" to the insurrectionists.  Appellee Donald John Trump provided the insurrectionists with comfort in the form of words of sympathy. On January 29, 2022, Appellee Donald John Trump publicly stated, "If I run and if I win, we will treat those people from January 6 fairly. We will treat them fairly. And if it requires pardons, we will give them pardons."  Appellee Donald John Trump promised the insurrectionists aid in the form of executive pardons for their criminal attempt to unlawfully overturn the 2020 election results. On November 15, 2022, Appellee Donald John Trump publicly announced his candidacy for the Presidency of the United States. On January 30, 2022, Appellant John Anthony Castro filed his FEC Form 2, Statement of Candidacy, as a Republican candidate for the Presidency of the United States. On June 22, 2023, Appellee Donald John Trump hosted a fundraiser for the January 6 insurrectionists thereby assisting in the acquisition of financial aid for their legal bills.

[3] See A9.

New Hampshire for the Republican Nomination for the Presidency of the United States.

On September 13, 2023, New Hampshire Attorney General John Formella issued an advisory opinion to New Hampshire Secretary of State David Scanlan concluding that New Hampshire law "does not give the Secretary of State discretion to decline to place a presidential primary candidate's name on the ballot based on alleged Section Three [of the 14th Amendment] disqualification."[4]

On September 29, 2023, Appellee Donald John Trump filed a Motion to Dismiss wherein he argues that Section 3 of the 14th Amendment is not "self-executing" since that is part of the standing analysis with regard to redressability.[5]

On October 2, 2023, Appellant John Anthony Castro was the first Republican to file his Nevada Declaration of Candidacy in-person at the Reno, Nevada, office of the Secretary of State.[6]

On October 11, 2023, Appellant John Anthony Castro was the first Republican to file his New Hampshire Declaration of Candidacy in-person at the Concord, New Hampshire, office of the Secretary of State and paid the $1,000

---

[4]      https://www.doj.nh.gov/news/2023/documents/20230913-section-3-14th-amendment-guidance.pdf

[5] See A35.

[6] See A51.

filing fee, which he personally handed to New Hampshire Secretary of State David Scanlan.[7]

On October 20, 2023, the lower court held an evidentiary hearing to decide whether it had subject matter jurisdiction.[8]   At that hearing, Appellant John Anthony Castro testified that due to substantial global media coverage of his pursuit of the Republican nomination for the Presidency of the United States, his ground campaign in New Hampshire was set to begin in a matter of days.[9] Appellant only admitted that his current prospects were dim but that his novel campaign strategy of capitalizing on earned media coupled with a grassroots campaign set to begin was about to turn the tide.[10]   At the conclusion of the hearing, the lower court stated it would need two weeks to make a ruling, which indicated a decision would be rendered on or before Friday, November 3, 2023.[11]

---

[7] See A51.

[8] See A49.

[9] See ECF 58.

[10] Appellee Donald John Trump had previously argued in Florida that Appellant John Anthony Castro was unlikely to actually be on the ballot of any state to pursue the Republican Nomination.  Appellee Donald John Trump then argued in New Hampshire that Appellant was unlikely to follow-through with filing his New Hampshire Declaration of Candidacy. At the hearing, Appellee Donald John Trump then argued that although Appellant John Anthony Castro was now on the ballot in New Hampshire, he was unlikely to actually campaign. At some point, the federal judiciary needs to respect that Appellant John Anthony Castro is credible and follows through with his statements.

[11] See ECF 58.

At the close of business on that day, Appellee Donald John Trump had still not yet filed his New Hampshire Declaration of Candidacy.[12]  As such, the lower court still had time to prevent the entrance of a new unlawful competitor.

On October 23, 2023, Appellee Donald John Trump filed his Declaration of Candidacy in-person at the Concord, New Hampshire, office of the Secretary of State and paid the $1,000 filing fee.[13]  The lower court's inaction allowed for new unlawful competition against Appellant John Anthony Castro that, according to Appellant's Verified Complaint, was in violation of Section 3 of the 14th Amendment to the United States Constitution.  This crystallized the injury in the form of dilution of political market position that is mathematically certain to ultimately materialize in a diminution of votes that can still be prevented.  Moreover, the unconstitutional presence of Appellee Donald John Trump on the ballot chills Appellant's plans to incur campaign expenditures.

Nevertheless, on October 26, 2023, Appellant John Anthony Castro dispatched campaign staffers to New Hampshire to knock on doors and place

---

[12] This statement is verified pursuant to 28 U.S.C. § 1746.

[13] This statement is verified pursuant to 28 U.S.C. § 1746.

hundreds of campaign signs.[14]  In addition, thousands of postcards were purchased and scheduled to be delivered in November.[15]

On October 27, 2023, the lower court rushed the publication of its ruling in bad faith and found that Appellant was not engaged in any actual competition in New Hampshire despite paying $1,000 to be a ballot-placed candidate and incurring travel and lodging expenses to travel to the state, which generated significant national media coverage.[16]  Taking into account Appellant's testimony under oath that he was about to launch an aggressive ground campaign in New Hampshire, the lower court could have reserved ruling on jurisdiction to allow the facts that materialize.

Instead, in the ruling, the lower court mischaracterized Appellant's lack of current paid advertising prior to the hearing with a baseless assumption that Appellant would never engage in *any* campaign activity in New Hampshire.[17]

The lower court ignored the expert witness' admission that Appellant John Anthony Castro would lose some votes to Appellee Donald John Trump and

---

[14] This statement is verified pursuant to 28 U.S.C. § 1746.

[15] This statement is verified pursuant to 28 U.S.C. § 1746.

[16] See Add.1, Add.21.

[17] See Footnote 2 regarding Appellant's credibility in following through with statements.  Questions of fact are to be construed in favor of a plaintiff. Nevertheless, the lower court resolved all undeveloped questions of fact in favor of Appellee Donald John Trump.  This was contrary to law.

instead viewed the primary as a competition for delegates rather than votes and political support that could be leveraged.[18] Moreover, the lower court claimed that because Appellant admitted his primary goal was to challenge Appellee Donald John Trump's constitutional qualifications, standing was being manufactured.[19]

More importantly, the lower rested its standing ruling on two cases that involved post-primary third-party candidates that were not actually on the general election ballot; hence, they were not actual current competitors.[20]

---

[18] See ECF 58. All swing states in the 2020 General Election turned on less than 3%. Arizona turned on 0.4%. Georgia turned on 0.3%. Michigan turned on 2.8%. Pennsylvania turned on 1.2%. Wisconsin turned on 0.6%. Even without delegates, Appellant will have a significant impact on the general election. Nevertheless, it is not the province of the federal judiciary to compel a ballot-placed candidate to explain their strategy to determine their *bona fides*.

[19] See ECF 58. Appellant only admitted that challenging Appellee Donald John Trump's constitutional qualification was initially his primary goal. Appellant is now attempting to pursue delegates to have influence at the Republican National Convention as well as pursuing a loyal following to influence the general election. Nevertheless, it is not the province of the federal judiciary to judge the *bona fides* of a ballot-placed candidate's political goals. That would be what is truly a nonjusticiable political question. Many candidates launch campaigns with the intent of being a running mate, negotiating a cabinet-level position or ambassadorship. Courts should not compel ballot-placed candidates to reveal the details of the campaign and candidacy's political goals and strategy. Appellant urges this Court to consider the grave danger that the lower court ruling poses. Based on the judge's ruling, former New Jersey Governor Chris Christie is self-harming since his polling indicates he will not secure a single delegate and admitted his candidacy too was intended to challenge Appellee Donald John Trump.

[20] See ECF 58 (citing *Grinols v. Electoral Coll.*, No. 2:12-CV-02997-MCE, 2013 WL 2294885, at *9 (E.D. Cal. May 23, 2013), *aff'd*, 622 F. App'x 624 (9th Cir. 2015) ("There is no evidence that Noonan or MacLearan appeared on any state's

The lower rested its application of the *Political Question Doctrine* on the unanalyzed grounds that the adjudication of a candidate's constitutional qualifications was entrusted to Congress and the Electoral College, which the lower court shockingly admitted to in a footnote stating "It bears noting that courts dealing with this justiciability question have not undertaken a searching analysis of the text and history of, for example, the Electoral Count Act and the Twentieth Amendment, which potentially impacts the proper application of the political question doctrine." The lower court admitted that it could not identify a "textually demonstrable constitutional commitment" to a political branch. However, the lower court bizarrely argued that because Appellant John Anthony Castro failed to explain the absence of such non-existent text, the lower court would presume the doctrine applied based on the unanalyzed *dicta* from other courts.

Nine minutes after the lower court published its opinion, Appellant filed his Notice of Appeal.[21]

---

2012 general presidential election ballot."). *Also see Liberty Legal Found. v. Nat'l Democratic Party of the USA*, Inc., 875 F. Supp. 2d 791, 800–01 (W.D. Tenn. 2012) ("Neither Plaintiff has alleged that... his name will appear on the ballot")). Of course, the lower court conveniently ignored the actual substance of the cases it cited and cherry-picked *dicta* out-of-context to invent a new approach to the injury analysis. It was the lower court, not Appellant, engaged in manufacturing grounds to manipulate the federal judiciary.

[21] See A52.

On October 28, 2023, former Vice President Mike Pence announced the suspension of his Presidential campaign, which proved that Appellant John Anthony Castro's strategy of waiting to aggressively campaign until the final weeks before the election can prove to be an effective campaign strategy.

*Restatement of Facts Relevant to Standing*

Appellant John Anthony Castro is a New Hampshire ballot-placed Republican Presidential candidate actively campaigning and pursuing the nomination of the Republican Party to pursue the Office of the Presidency of the United States.

Appellee Donald John Trump is a New Hampshire ballot-placed Republican Presidential candidate actively campaigning and pursuing the nomination of the Republican Party to pursue the Office of the Presidency of the United States.

Appellee New Hampshire Secretary of State David Scanlan's acceptance and processing of Appellee Donald John Trump's Declaration of Candidacy and Filing Fee is state action in furtherance of aiding a violation of Section 3 of the 14th Amendment to the United States Constitution.

Appellee Donald John Trump's submission of his Declaration of Candidacy and the filing fee are acts in furtherance of his intent to violate Section 3 of the 14th Amendment.

10

As such, Appellant's political competitive injury is traceable to the direct actions of Appellee Donald John Trump as well as the supporting state acts of Appellee New Hampshire Secretary of State David Scanlan.

*Pro se* Appellant's inartful statement that Appellee Donald John Trump was a "nominal defendant" must be disregarded under the liberal *pro se* standard. Appellee Donald John Trump aggressively pursued dismissal, so this misclassification was harmless and non-prejudicial.

<u>Statement of the Facts Relevant to the Political Question Doctrine</u>

Appellant John Anthony Castro and Appellee Donald John Trump are both New Hampshire ballot-placed Republican Presidential candidates competing for votes in the state's 2024 primary election.

The outcome of the primary election dictates to whom delegates are awarded for the purpose of competing for the Republican nomination to be that party's official candidate to pursue the Office of the Presidency of the United States in the general election.  Appellant will capitalize on political support from voters to control the outcome of the general election as well as to achieve other political goals that is outside the concern of the federal judiciary.

Nevertheless, the outcome of the primary election is not related in any way to the outcome of the general election that results in the awarding of electors who

will ultimately convene as the Electoral College to select the next President of the United States.

The U.S. Constitution and Electoral Count Act have absolutely no bearing on the primary election.

## SUMMARY OF THE ARGUMENT

Because Appellant John Anthony Castro was a New Hampshire ballot-placed Republican Presidential candidate before Appellee Donald John Trump, Appellee New Hampshire Secretary of State David Scanlan's acceptance and processing of Appellee Donald John Trump's Declaration of Candidacy and filing fee created a new ballot-based competitor that diluted Appellant John Anthony Castro's political position thereby injuring Appellant John Anthony Castro.

Because Appellant John Anthony Castro's injury is mathematically certain to ultimately materialize in a diminution of votes as a direct result of Appellee Donald John Trump's unlawful candidacy, further injury is traceable to Appellee Donald John Trump and preventable with injunctive relief in the form of enjoining the state from printing ballots with Appellee Donald John Trump's name and not counting votes in favor of Appellee Donald John Trump since those acts would be in furtherance of a violation of Section 3 of the 14th Amendment to the U.S. Constitution.

Because Appellant John Anthony Castro's claim of injury is redressable with judicial relief, Appellant John Anthony Castro has stated a claim upon which relief can be granted.

Because the U.S. Constitution and the Electoral Count Act are unrelated to the process and functions of a primary election, there was no showing of a

textually demonstrable constitutional commitment to either the legislative or executive branches of the federal or state governments regarding the determination of whether Appellee Donald John Trump is constitutionally disqualified from holding office for having provided aid and comfort to an insurrection.

Because the Court had subject matter jurisdiction and Appellant John Anthony Castro stated a claim upon which relief could be granted, the case must be remanded back to the district court for a trial on the merits.

### STANDARD OF REVIEW

"The existence of standing is a legal question, which [Courts] review *de novo*."[22]

Appellate courts review *de novo* a district court's determination whether the political question doctrine applies since it is a question of law.[23]

---

[22] *See Kerin v. Titeflex Corp.*, 770 F.3d 978, 981 (1st Cir. 2014).

[23] *See Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938, 948 (5th Cir. 2011); *Cooper v. Tokyo Elec. Power Co., Inc.*, 860 F.3d 1193, 1212 (9th Cir. 2017); *Schroder v. Bush*, 263 F.3d 1169, 1173 (10th Cir. 2001); *Starr Int'l Co., Inc. v. U.S.*, 910 F.3d 527, 533 (D.C. Cir. 2018).

# ARGUMENT

## I. PLAINTIFF HAS POLITICAL COMPETITOR STANDING GRANTING THE DISTRICT COURT SUBJECT MATTER JURISDICTION OVER THIS CASE

The Constitution limits the jurisdiction of the federal courts to actual cases or controversies.[24] "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue."[25] The doctrine of standing, "rooted in the traditional understanding of a case or controversy… developed… to ensure that federal courts do not exceed their authority as it has been traditionally understood."[26] "[T]he 'irreducible constitutional minimum' of standing consists of three elements."[27] The "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[28]

The United States Court of Appeals for the D.C. Circuit has recognized the concept of *Political Competitor Standing* on the basis that an injury would logically be diminution of votes traceable to the political competitor and

---

[24] U.S. Const. art. III, § 2, cl. 1, *see also Raines v. Byrd*, 521 U.S. 811, 818 (1997).

[25] *Raines*, 521 U.S. at 818.

[26] *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016).

[27] *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

[28] *Id*.

redressable by a court.[29]  Political Competitor Standing, however, is only available to plaintiffs who can show that they "personally compete[] in the same arena with the same party."[30]  The D.C. Circuit has also held that if a plaintiff can show that he is a "direct and current competitor," then competitor standing must be recognized as a matter of law.[31]  The federal judiciary has recognized that a candidate, as opposed to "individual voters and political action groups" would have "standing based upon a 'competitive injury'" if, again, the candidate can show that he "personally competes in the same arena with the same party."[32]

Appellant John Anthony Castro is a New Hampshire ballot-placed Republican Presidential candidate and is currently directly competing against Appellee Donald John Trump for the Republican nomination for the Presidency of

---

[29] *See Shays v. FEC*, 414 F.3d 76, 87 (D.C. Cir. 2005).

[30] *Gottlieb v. FEC*, 143 F.3d 618, 621 (D.C. Cir. 1998) (internal quotation marks omitted); *see also Fulani v. Brady*, 935 F.2d 1324, 1327-28 (D.C. Cir. 1991) (holding that presidential candidate did not have "competitor standing" to challenge CPD's tax-exempt status where the candidate was not eligible for tax exempt status); *Hassan v. FEC*, 893 F. Supp. 2d 248, 255 (D.D.C. 2012), *aff'd*, No. 12-5335, 2013 WL 1164506 (D.C. Cir. 2013) ("Plaintiff cannot show that he personally competes in the same arena with candidates who receive funding under the Fund Act because he has not shown that he is or imminently will be eligible for that funding.").

[31] *New World Radio, Inc. v. FCC*, 294 F.3d 164, 170 (D.C. Cir. 2002)

[32] *Hassan*, 893 F. Supp. 2d at 255 n.6 (D.D.C. 2012) (emphases added) (quoting *Gottlieb*, 143 F.3d at 621)

the United States.   As such, Appellant John Anthony Castro has political competitor standing to bring this suit.  Period.

## A.  Castro's Injury-in-Fact

To establish standing, a plaintiff must show that the plaintiff has suffered an "injury in fact caused by the challenged conduct [of the defendant] and redressable through relief sought from the court."[33]

Despite Appellant John Anthony Castro's clear allegations contained in his Verified Complaint, the lower court concluded that he voluntarily incurred a self-inflicted injury to "manufacture" standing.   According to the lower court, the Reverend Dr. Martin Luther King would not have had standing to claim an injury since he voluntarily went into a "whites only" restaurant to effectively self-inflict injury to manufacture standing.   The lower court fails to understand that some Americans are brave enough to do the right thing while 300 million other Americans do nothing.   Some Americans are willing to put our lives, fortunes, and sacred honor on the line.

### 1.  Diminution of Votes

Appellant John Anthony Castro and Appellee Donald John Trump are not only competing for the same political position within the same political party but are also appealing to the same voter base.  Appellant John Anthony Castro has the

---

[33] *Shays*, 414 F.3d at 83 (internal citation omitted).

support of union members across the United States as the only Republican primary candidate who is a former certified union organizer that is appealing to working class Americans.

In fact, throughout his campaigning efforts to date, Appellant John Anthony Castro has spoken to thousands of voters who have expressed that they would vote for Castro *only if* Trump is not a presidential candidate as they maintain political loyalty to Trump.[34]

A primary candidate has judicial standing to bring a claim challenging the eligibility of a fellow primary candidate for competitive injury in the form of a diminution of votes if the primary candidate believes that the fellow primary candidate is ineligible to hold public office and to prevent actions irreconcilable with the U.S. Constitution.[35]

Appellant John Anthony Castro will *further* suffer *irreparable* competitive injuries if Appellee Donald John Trump, who is constitutionally ineligible to hold office, is able to attempt to secure votes in primary elections. Appellee Donald John Trump's constitutionally unauthorized undertaking will put Castro at both a voter and donor disadvantage.

---

[34] *See Conforti v. Hanlon*, No. CV2008267ZNQTJB, 2022 WL 1744774, at *12 (D.N.J. May 31, 2022).

[35] *See Fulani*, 882 F.2d at 628.

Appellee Donald John Trump, without judicial relief to Appellant John Anthony Castro, will siphon off votes in violation of Section 3 of the 14th Amendment to the U.S. Constitution.[36]   In fact, Trump conceded in his motion to dismiss that there are only "162 Republican Party candidates" for the Presidency of the United States thereby identifying the actual named individuals with particularity that his candidacy is injuring.[37]   By definition, this "particularizes" the injury.

### B.   Traceability

### 1.  Appellant's Injury to Traceable to Conduct of Both Appellees

It is undisputed that Appellant John Anthony Castro's injury-in-fact is traceable to Appellee Donalde John Trump.   However, the lower court made it a point to claim that the injury is not traceable to Appellee New Hampshire Secretary of State David Scanlan despite the fact that his actions created a new competitor diluting Appellant John Anthony Castro's political market position and further actions of printing ballots and counting votes in favor of a constitutionally

---

[36] U.S. Const., amend. XIV, § 3 "No person shall be a[n]…elector of President…or hold any office… under the United States,…who,…shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof."

[36] *See Fulani*, 882 F.2d at 628.

[37] *See* A33, MTD p.12.

disqualified individual would be in furtherance of a violation of the U.S. Constitution.

The lower court's claim that the injury is not traceable to the conduct of Appellee New Hampshire Secretary of State David Scanlan is patently frivolous.

### C.   Redressability

"Plaintiffs need not prove that granting the requested relief is certain to redress their injury, especially where some uncertainty is inevitable."[38] Nevertheless, Appellant John Anthony Castro has made it clear that injunctive relief would certainly redress his injuries.  More specifically, specific performance to refund Appellee Donald John Trump the filing fee, enjoining Appellee New Hampshire Secretary of State David Scanlan from printing ballots with Appellee Donald John Trump's name on it, and/or enjoining Appellee New Hampshire Secretary of State David Scanlan from counting ballot or write-in votes in favor of Appellee Donald John Trump.

There is no question injunctive relief and remedy Appellant John Anthony Castro's political competitive injury.

---

[38] *Competitive Enter. Inst. v. NHTSA*, 901 F.2d 107, 118 (D.C. Cir. 1990).

## II. THERE IS NO TEXTUALLY DEMONSTRABLE CONSTITUTIONAL COMMITMENT TO A POLITICAL BRANCH OF THE FEDERAL OR STATE GOVERNMENT

The lower rested its application of the *Political Question Doctrine* on the unanalyzed *dicta* of other courts that the adjudication of a candidate's constitutional qualifications in a primary election were somehow entrusted to Congress and the Electoral College by operation of the 12th, 20th, and 25th Amendment coupled with the Electoral Count Act without analysis or explanation. However, the lower court then shockingly admitted to in a footnote that it "bears noting that courts dealing with this justiciability question have not undertaken a searching analysis of the text and history of, for example, the Electoral Count Act and the Twentieth Amendment, which potentially impacts the proper application of the political question doctrine."

In other words, the lower court arbitrarily applied the political question doctrine based on unanalyzed dicta from other courts and its own unsubstantiated belief that it applied.

To make matters worse, the Court then stated that because "Castro has not referred to, much less argued for, the ***inapplicability*** of the doctrine on these grounds, this court deems these arguments waived." The lower court was under the mistaken belief that Appellant John Anthony Castro bore the burden of

21

dispelling every possible application of the *Political Question Doctrine* imaginable.

The Political Question Doctrine is an affirmative defense to jurisdiction.[39] The U.S. Court of Appeals for the First Circuit adopts the rule "to place the burden

---

[39] *See U.S. v. Kellogg Brown & Root Servs., Inc*., 856 F. Supp. 2d 176, 179 (D.D.C. 2012) ("The government asserts a number of independent barriers to KBR's counterclaim and affirmative defense, including judicial estoppel, the political question doctrine, failure to exhaust administrative remedies, and failure to state a claim."); *Fed. Republic of Yugoslavia v. Park-71st Corp*., 913 F. Supp. 191, 193 (S.D.N.Y. 1995) ("Defendant… asserts, as an affirmative defense, that Plaintiff lacks standing and that this matter presents a non-justiciable political question."); *Fair Fight Action, Inc. v. Raffensperger*, 634 F. Supp. 3d 1128, 1148 (N.D. Ga. 2022) ("Defendants presented the following affirmative defenses… Political Question Doctrine."); *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19MD2885, 2021 WL 1600487, at *2 (N.D. Fla. Apr. 23, 2021) ("the affirmative defense based on the political question doctrine"); *Cassirer v. Thyssen-Bornemisza Collection Found*., No. CV 05-03459 GAF EX, 2014 WL 5510996, at *6 (C.D. Cal. Oct. 31, 2014) ("Political Question Affirmative Defense"); *U.S. v. Washington*, 19 F. Supp. 3d 1317, 1338 (W.D. Wash. 2000) ("political question affirmative defense"); *Seneca Nation of Indians v. State*, No. 93-CV-688A, 1994 WL 688262, at *1 (W.D.N.Y. Oct. 28, 1994) ("The affirmative defenses raised by defendants' answers include... political question."); *U.S. v. Hempfling*, No. CVF05-594LJOSMS, 2007 WL 1299262, at *2 (E.D. Cal. May 1, 2007) ("Affirmative Defense: The political question doctrine"); *Caliste v. Cantrell*, No. CV 17-6197, 2017 WL 6344152, at *1 (E.D. La. Dec. 12, 2017) ("Defendant also alleges twenty-eight affirmative defenses including… non-justiciable political question."); *Simon v. Republic of Hungary*, No. CV 10-01770 (BAH), 2012 WL 13069771, at *6 (D.D.C. Sept. 30, 2012) ("The Court concludes that RCH has asserted meritorious defenses, insofar as it is has asserted six affirmative defenses… The claims against RCH constitute non-justiciable political questions.").  The lower court should take note that Appellant was not "quibbl[ing] without reason" as it rudely held in its Order; the lower court simply did not properly comprehend the law.

of proving affirmative defenses on the party asserting them."[40]   Appellee Donald John Trump bore the burden of proving its application.

Because the lower court, by its own admission, incorrectly applied the *Political Question Doctrine* on the basis that Appellant failed to argue for its inapplicability, Appellant need not further address it.   Nevertheless, since this matter goes to the jurisdiction of the lower court, this Honorable Court is free to explore it further *sua sponte*.   However, such an exercise is futile since any argument in favor of its application is patently frivolous.

## CONCLUSION

The judgment below should be vacated, and the case remanded for trial.


Respectfully submitted,

Dated: November 1, 2023.                       By: */s/ John Anthony Castro*

John Anthony Castro
12 Park Place
Mansfield, TX  76063
Tel. (202) 594 – 4344
J.Castro@JohnCastro.com
*Appellant Pro Se*

---

[40] *U.S. Liab. Ins. Co. v. Selman*, 70 F.3d 684, 691 (1st Cir. 1995).

## CERTIFICATE OF COMPLIANCE

1.      I certify that this filing complies with the type-volume limitations of the Fed. R. App. P. 32(a)(7)(B) because, excluding the parts exempted by the Fed. R. App. P. 32(f), the Brief contains 4,736 words.

2.      I also certify that this filing complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.


*/s/ John Anthony Castro*
John Anthony Castro

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2023, a true and accurate copy of the foregoing Appellant's Opening Brief with accompanying attachments (if any) was electronically filed.  It is further certified that all other parties are CM/ECF users and that service of this motion was made on Appellees via CM/ECF.


*/s/ John Anthony Castro*
John Anthony Castro

# ADDENDUM

## <u>TABLE OF CONTENTS</u>

| <u>Description of Item</u> | Record<br><u>Entry No.</u> | Addendum<br><u>Page No.</u> |
|---|---|---|
| Memorandum and Order (10/27/2023)............................................................. | R.59 | Add.1 |
| Judgment (10/30/2023)............................................................. | R.61 | Add.21 |

i

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

John Anthony Castro

      v.

New Hampshire Secretary of State,
David M. Scanlan, and Donald J. Trump

Civil No.  23-cv-416-JL
Opinion No. 2023 DNH 137

**<u>MEMORANDUM ORDER</u>**

This case presents jurisdictional issues of standing and justiciability that the court must resolve before addressing the merits of the plaintiff's claim.  Plaintiff John Anthony Castro seeks an injunction barring the New Hampshire Secretary of State from placing former President Donald J. Trump's name on the New Hampshire Republican Presidential primary ballot, on the ground that Trump is ineligible to serve as president under Section 3 of the Fourteenth Amendment of the U.S. Constitution.[1]  Castro named the Secretary as a defendant and Trump as a nominal defendant.[2]  The defendants argue that the case should be dismissed because Castro does not have standing to seek the requested relief, and his claim raises a nonjusticiable political question.

After reviewing the parties' filings and holding an evidentiary hearing and oral argument on October 20, 2023, the court finds that it lacks jurisdiction to consider Castro's request for injunctive relief.  Castro has not established that he has or will suffer

---

[1] While Castro is appearing pro se in this litigation, he represents that he has two law degrees. He also represents that he is not a member of the bar in any state or jurisdiction.

[2] For ease of reference, the court refers to both Trump and the Secretary as defendants throughout this Order.

a political competitive injury arising from Trump's participation in the New Hampshire

Republican Presidential primary. Thus, Castro has not carried his burden to show that he

has standing to bring his claim. Further, even if Castro had standing, the court is inclined

to find, consistent with the weight of authority, that Castro's claim raises a nonjusticiable

political question. The court accordingly denies Castro's motion for a preliminary

injunction and dismisses the case.

## I.     **Background**

Castro "asks this Court to issue an injunction preventing Defendant Secretary of

State from accepting and/or processing Defendant Donald John Trump's ballot access

documentation, including, but not limited to nominating papers and nominating

petitions."[3] As grounds for relief, Castro alleges that Trump "provided 'aid or comfort'

to an insurrection in violation of Section 3 of the [Fourteenth] Amendment to the U.S.

Constitution and is, therefore, constitutionally ineligible to pursue or hold <u>any</u> public

office in the United States."[4] Castro also alleges that Trump is a "nominal" defendant; he

brings no claim requesting relief against Trump.[5]

---

[3] Compl. (doc. no. 1) at ¶ 16. Because Trump has now filed his declaration as a candidate in the New Hampshire primary and paid the filing fee, Castro's claim for injunctive relief may have become moot. Assuming, without deciding, that an injunction could stop the Secretary from "accepting and/or processing" Trump's "ballot access documentation," the court proceeds to address the other jurisdictional issues, which are determinative.

[4] <u>Id.</u> at 5 (emphasis in original).

[5] <u>Id.</u> at ¶ 5.

2

**Add.2**

Shortly after filing a complaint in this court on September 5, 2023, Castro filed a motion for an expedited preliminary injunction, on September 17.[6]  A few weeks later, the court granted the New Hampshire Republican State Committee's motion to intervene in the case.  The court then held an evidentiary hearing and oral argument on October 20, to address jurisdictional issues prior to considering the merits of Castro's claim.[7]  Castro, counsel for the defendants, and counsel for the intervenor attended and participated in the hearing.  Castro, the Secretary, and Trump also filed witness lists, exhibit lists, and proposed findings of fact and rulings of law.

The following facts are agreed to or based on the evidence (testimony, exhibits, and stipulations) presented at the hearing, as noted.  Castro has declared his candidacy for the New Hampshire Republican Presidential primary and paid the filing fee.[8]  Castro has also declared his candidacy in the Nevada Republican Presidential primary.[9]  Trump has now (five days after the hearing) also declared his candidacy in the New Hampshire Republican Presidential primary and paid the filing fee.

Castro and the defendants stipulated to the following description of Castro's campaign in New Hampshire:

> Presently, Plaintiff's campaign has no serious prospect of getting any New Hampshire delegates to the Republican National Convention, nor any

---

[6] See Motion for Preliminary Injunction (doc. no. 6).

[7] Summary Order (doc. no. 20); Procedural Order (doc. no. 36).

[8] Pl. ex. 1.

[9] Pl. ex. 2.

significant number of votes that would otherwise have gone to Donald Trump, nor any appreciable share of donations that otherwise would have gone to Donald Trump; as of right now.[10]

Castro further acknowledges that he is, at best, a "longshot Republican Presidential candidate."[11] Trump introduced evidence of Castro's filings with the Federal Election Commission, which show that Castro's campaign has no contributions and no expenditures.[12] Further, Castro's campaign has not run or purchased any advertising in New Hampshire or any other state.[13]

During the hearing, Trump called Michael Dennehy to testify as an expert witness regarding Castro's campaign in New Hampshire and the effects, if any, of Trump's participation in the New Hampshire Presidential primary on Castro's prospects as a candidate. Dennehy has worked as a political consultant and strategist for over three decades and has a consulting firm in New Hampshire, Dennehy & Bouley.[14] He has served in a variety of positions in Republican politics, including as a committeeman on

---

[10] Stipulation (doc. no. 53) at ¶ 12.

[11] Id. at ¶ 4.

[12] Castro's FEC Filings (Trump Exs. 2, 4-6). Castro testified that he would correct and update the FEC filings to show expenditures for his filing fees and other litigation expenses, including his expenses incurred in this case.

[13] See Oct. 20, 2023 Hearing Tr. (doc. no. 58) at 54:19-24 (Castro Testimony) ("Q. So your campaign hasn't run any advertisements in New Hampshire; is that right? A. Not as of now, correct. Q. Okay. And it hasn't run any advertisements in any other state, correct? A. Correct. Yes."); Stipulation (doc. no. 53) at ¶ 10 ("Plaintiff's campaign is not yet running any advertisements in New Hampshire. Plaintiff's campaign strategy is to postpone advertising until the right moment.").

[14] See Oct. 20, 2023 Hearing Tr. (doc. no. 58) at 26:6-17 (Dennehy testimony).

the Republican National Committee, Executive Director of the New Hampshire Republican Party, and a political director and campaign manager in several Republican political campaigns.[15]  The parties agreed to the admissibility of Dennehy's opinion testimony under Federal Rule of Evidence 702, and Castro cross-examined Dennehy.

Dennehy opined that Castro has no chance of winning a delegate in the New Hampshire Presidential primary election.[16]  In explaining this opinion, Dennehy enumerated a number of observations regarding Castro's campaign.  He testified that "polling data" on Castro was "nonexistent"[17]; to his knowledge, and consistent with Castro's admissions, Castro has no advertisements, campaign office, or employees in New Hampshire[18]; and Castro's campaign website is "amateur" and "incomplete."[19]  Dennehy also testified that the presence or absence of Trump on the primary ballot in New Hampshire would not affect Castro's chances in that election "[b]ecause there is no activity to [Castro's] campaign."[20]

Castro testified at the hearing and was cross-examined by Trump's counsel as well.  In response to questions from Trump's counsel, Castro could not identify any New

---

[15] See id. at 27:10-28:1 (Dennehy testimony).

[16] See id. at 33:12-19, 37:3-13 (Dennehy testimony).

[17] Id. at 31:13 (Dennehy testimony).

[18] See id. at 35:15-36:23 (Dennehy testimony).

[19] Id. at 34:5-6 (Dennehy testimony).

[20] Id. at 38:1-6 (Dennehy testimony).

Hampshire voter to whom he has spoken for purposes of his campaign (although he testified that he had "[d]iscussions with voters").[21] He also confirmed that his FEC filings show that his campaign has no contributors, other than himself, and almost no money.[22] Castro also agreed that a primary goal of his candidacy is to establish the impermissibility of Trump's presidency, and that he has filed 27 lawsuits seeking to keep Trump's name off of the ballot in various states.[23]

## II. <u>Applicable legal standard</u>

"Federal courts, as courts of limited jurisdiction, may not presume the existence of subject matter jurisdiction, but rather, must appraise their own authority to hear and determine particular cases." Watchtower Bible & Tract Soc. of N.Y., Inc. v. Colombani, 712 F.3d 6, 10 (1st Cir. 2013); <u>accord</u> United States v. Rivera-Rodríguez, 75 F.4th 1, 13 (1st Cir. 2023). The party who asserts jurisdiction bears the burden of establishing that it exists by a preponderance of the evidence. Woo v. Spackman, 988 F.3d 47, 53 (1st Cir. 2021); U.S. ex rel. Ondis v. City of Woonsocket, 587 F.3d 49, 54 (1st Cir. 2009).

---

[21] <u>See</u> <u>id.</u> at 58:11-21 (Castro testimony).

[22] <u>See</u> <u>id.</u> at 61:2-63:15 (Castro testimony).

[23] <u>See</u> <u>id.</u> at 68:24-69:6, 71:14-21 (Castro testimony); <u>see also</u> Stipulation (doc. no. 53) at ¶ 16 ("One of many goals of this campaign is for Plaintiff to demonstrate his legal ingenuity, ability to effectuate a national litigation strategy with minimal resources (<u>i.e.</u> guerrilla lawfare), and demonstrate executive leadership capabilities.").

## III.   <u>Analysis</u>

The defendants challenge Castro's claim on two jurisdictional grounds—lack of standing and nonjusticiability under the political question doctrine. The court considers standing first and then turns to the issue of justiciability.

### A. Standing

"Under Article III of the Constitution, a plaintiff needs a 'personal stake' in the case." Biden v. Nebraska, 143 S. Ct. 2355, 2365 (2023) (quoting TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021)). More specifically, "the plaintiff must have suffered an injury in fact—a concrete and imminent harm to a legally protected interest, like property or money—that is fairly traceable to the challenged conduct and that is likely to be redressed by the lawsuit." Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). Also, "[a]n inquiry into standing must be based on the facts as they existed when the action was commenced." Ramírez v. Sánchez Ramos, 438 F.3d 92, 97 (1st Cir. 2006). Nevertheless, "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." Webb v. Injured Workers Pharm., LLC, 72 F.4th 365, 372 (1st Cir. 2023) (quoting TransUnion, 141 S. Ct. at 2210). The injury, however, must be "concrete and particularized" and "not conjectural or hypothetical." Lujan, 504 U.S. at 560.

The plaintiff bears the burden of establishing standing. TransUnion, 141 S. Ct. at 2207. To carry that burden, the plaintiff must satisfy the three-part standing test against each defendant "with the manner and degree of evidence required at the successive stages

7

of the litigation." Webb, 72 F.4th at 371-72 (quoting TransUnion, 141 S. Ct. at 2208);

see also Disability Rts. S.C. v. McMaster, 24 F.4th 893, 900 (4th Cir. 2022); Sierra Club,

Inc. v. Granite Shore Power LLC, No. 19-CV-216-JL, 2019 WL 8407255, at *4 (D.N.H.

Sept. 13, 2019). Here, where the court has held an evidentiary hearing on the

jurisdictional issues including standing, Castro bears the burden to establish by a

preponderance of the evidence that he has standing to litigate his claim. ForUsAll, Inc. v.

U.S. Dep't of Labor, --- F. Supp. 3d ---, 2023 WL 5559682, at *3 (D.D.C. Aug. 2, 2023)

(the plaintiff bears the burden of showing standing by a preponderance of the evidence

(citing Lujan, 504 U.S. at 561)).

     In attempting to satisfy his burden, Castro invokes the theory of competitor

standing. This theory arose in the context of the commercial marketplace, specifically

when government-imposed restrictions put certain market participants at a competitive

disadvantage.[24] Katin v. Nat'l Real Est. Info. Servs., Inc., No. 07-10882-DPW, 2009 WL

929554, at *4 (D. Mass. Mar. 31, 2009). "In discrete contexts, courts have extended

competitor standing to the political marketplace." AB PAC v. Fed. Election Comm'n,

No. 22-2139(TJK), 2023 WL 4560803, at *4 (D.D.C. July 17, 2023) (citing Shays v.

---

[24] During the hearing, Castro relied heavily on the decision in New World Radio, Inc. v. F.C.C.
to support his theory of competitor standing. 294 F.3d 164 (D.C. Cir. 2002). In that case, the
plaintiff challenged the Federal Communications Commission's decision to allow another
company to renew its license for a radio station. The plaintiff asserted that the FCC's action
brought that company "one step closer to competing with, and therefore economically injuring,"
the plaintiff's Washington, D.C. radio station. Id. at 170. The New World court concluded that
the plaintiff lacked competitor standing in part because the FCC's action was, "at most, the first
step in the direction of future competition." Id. at 172 (competitor standing is "premised on the
petitioner's status as a direct and current competitor whose bottom line may be adversely
affected by the challenged government action") (emphasis in original). Neither the facts, the
reasoning, nor the holding of New World support Castro's position.

FEC, 414 F.3d 76, 83-89, 92 (D.C. Cir. 2005) (candidates) and Natural Law Party of U.S. v. FEC, 111 F. Supp. 2d 33, 45-46 (D.D.C. 2000) (political parties)); see also Schulz v. Williams, 44 F.3d 48, 53 (2d Cir. 1994) (political parties); Fulani v. Hogsett, 917 F.2d 1028, 1030 (7th Cir. 1990) (same); Nelson v. Warner, 472 F. Supp. 3d 297, 303-04 (S.D. W.Va. 2020) (finding competitor standing because a statute that prescribed the ballot order of candidates harmed plaintiff's electoral prospects).

In particular, courts have found a competitive injury in the political context where the plaintiff is subjected to "the burden of being forced to compete under the weight of a state-imposed disadvantage." Mecinas v. Hobbs, 30 F.4th 890, 899 (9th Cir. 2022). For example, in Shays v. FEC, the District of Columbia Circuit Court of Appeals concluded that "when regulations illegally structure a competitive environment—whether an agency proceeding, a market, or a reelection race—parties defending concrete interests (e.g., retention of elected office) in that environment suffer legal harm under Article III." 414 F.3d at 87; see also Mecinas, 30 F.4th at 898 (holding that that a ballot-order statute created an illegally structured competitive environment that supported standing).

Outside of state-imposed disadvantages in elections, "courts have [also] held that a candidate or his political party has standing to challenge the inclusion of an allegedly ineligible rival on the ballot, on the theory that doing so hurts the candidate's or party's own chances of prevailing in the election." Hollander v. McCain, 566 F. Supp. 2d 63, 68 (D.N.H. 2008) (citing Tex. Dem. Party v. Benkiser, 459 F.3d 582, 586-87 & n.4 (5th Cir. 2006); Schulz, 44 F.3d at 53; and Fulani, 917 F.2d at 1030 and noting Gottlieb v. FEC, 143 F.3d 618, 622 (D.C.Cir.1998) (distinguishing voters who challenge candidate's

9

**Add.9**

eligibility)).  Having traced the general contours of the relevant standing theories, the court now assesses Castro's evidence as to each of the three elements of standing, beginning with his purported injury, and then turning to traceability and redressability, which are analyzed together.

**Injury.**  To demonstrate an injury as a political competitor, a plaintiff must show that he has "a chance of prevailing in the election." Grinols v. Electoral College, No. 12-cv-2997-MCE, 2013 WL 2294885, at *8 (E.D. Calif. May 23, 2013).  That is, the plaintiff must "truly [be] in competition" with the allegedly ineligible candidate. Liberty Legal Found. v. Nat'l Dem. Party of the USA, Inc., 875 F. Supp. 2d 791, 800-01 (W.D. Tenn. 2012) (finding no political competitor standing for plaintiffs challenging President Obama's eligibility to run for president, where neither plaintiff "alleged that he is a Tennessee political party's nominee for the office, that his name will appear on the ballot for Tennessee's general election in November, that he is campaigning in the state of Tennessee, that any registered voter in Tennessee intends to cast a vote for him, or that President Obama's presence on the ballot will in any way injure either candidate's campaign.").

Castro makes no attempt to demonstrate that he is actually competing with Trump for votes and contributions, as required under the operative competitor standing theory. The evidence shows that Castro has not campaigned in New Hampshire or elsewhere. Castro has not provided any evidence suggesting that he has voters or contributors in New Hampshire or elsewhere, or that he will benefit from voter or contributor defections

10

**Add.10**

from Trump to himself.[25]  To the contrary, he acknowledges that he will not win any

delegates in the primary.  Consistent with this, Dennehy opined (without serious

challenge) that Castro cannot win a single delegate in the New Hampshire primary, and

he has no campaign activity.

The weaknesses in Castro's theory of competitive injury do not stop there.  His

claimed injury is also speculative, as it depends on what voters and contributors—

independent, third parties—may do if Trump's name is not listed on the New Hampshire

primary ballot.  Castro provides no evidence that any Trump supporter would support

Castro under that circumstance.  By contrast, Trump provided Dennehy's opinion that no

Trump supporters would switch allegiance to Castro if Trump does not appear on the

ballot.  An injury based on speculation about the decisions of independent actors does not

confer standing.  See Donald J. Trump for President, Inc. v. Boockvar, 493 F. Supp. 3d

331, 379 (W.D. Pa. 2020) (holding that it would not "endorse standing theories that rest

on speculation about the decisions of independent actors" (quoting Clapper v. Amnesty

Int'l USA, 568 U.S. 398, 414 (2013)).

---

[25] Castro's testimony at the hearing about his media coverage, which is not supported by any substantiating evidence, is not persuasive.  The court has no way of knowing whether the purported media coverage focused on Castro as a candidate actually seeking the Republican nomination for president, or as a litigant seeking to disqualify Trump.  The evidence in this case suggests the latter, and not the former, and does not support standing.  Dennehy testified at length about the extent of media coverage that would be necessary to make Castro a viable candidate, and there is no dispute that Castro has not received that type of attention.  Further, even if Castro were able to attract substantial media attention in the future, standing depends on the circumstances that existed when Castro filed his complaint and cannot be based on subsequent events.

11

**Add.11**

Further, the evidence indicates that Castro is creating his own injury in order to manufacture standing to challenge Trump's eligibility to run for president. Indeed, by his own admission, Castro declared as a candidate and paid the filing fee to show the impermissibility of Trump's presidency. He asserts that one of his goals in the campaign is "to demonstrate his legal ingenuity, ability to effectuate a national litigation strategy with minimal resources (i.e. guerrilla lawfare), and demonstrate executive leadership capabilities."[26] This practice of manufacturing standing to pursue a cause through litigation is not supported by the law. See Equal Means Equal v. Ferriero, 3 F.4th 24, 30 (1st Cir. 2021); accord Elizabeth Cady Stanton Tr. v. Neronha, --- F. Supp. 3d ---, 2023 WL 6387874, at *5 (D.R.I. Sept. 8, 2023); see also Webb, 72 F.4th at 373 (holding that "plaintiff could not manufacture standing by incurring mitigation costs in the absence of an impending harm").

In sum, the evidence demonstrates that Castro is not competing and will not compete with Trump to win the New Hampshire primary, and for that reason, he is not a political competitor in the primary. Contrary to Castro's contention, he does not have a cognizable injury simply because his name is on the New Hampshire primary ballot, and he cannot manufacture standing by declaring his candidacy and paying the fee. For all of these reasons, Castro has not shown that he is suffering or would suffer an actual, competitive injury if Trump's name is listed on the New Hampshire Presidential primary ballot.

---

[26] Stipulation (doc. no. 53) at ¶ 16.

*Traceability and redressability.* The traceability element of standing, "essentially a causation element of Article III standing, requires the plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm." Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc., 958 F.3d 38, 47 (1st Cir. 2020) (cleaned up). While some indirect causation may be sufficient, "[t]he Supreme Court has cautioned against courts finding that a plaintiff's injury is fairly traceable to a defendant's conduct where the plaintiff alleges a causal chain dependent on actions of third parties." Id. at 48. The redressability element, in turn, requires proof that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 561 (1992); accord Dep't of Educ. v. Brown, 600 U.S. 551, 561 (2023). In many cases, traceability and redressability are addressed together as "two sides of a causation coin." Brookline Opportunities, LLC v. Town of Brookline, --- F. Supp. 3d ---, 2023 WL 4405659 at *5 n.8 (D.N.H. July 7, 2023) (quoting Dynalantic Corp. v. Dep't of Def., 115 F.3d 1012, 1017 (D.C. Cir. 1997)).

Because Castro has not shown a concrete and particularized injury, which is essential to carry his burden of establishing standing, the court need not address the traceability and redressability elements. Nevertheless, the court takes this opportunity to note that, even if Castro could establish an injury, he cannot meet the traceability and redressability requirements for standing.

Castro is seeking injunctive relief barring the Secretary from placing Trump's name on the New Hampshire Presidential primary ballot. This remedy would not redress Castro's purported injury because Dennehy testified, and Castro acknowledges, that

13

**Add.13**

Trump's absence from the primary ballot would not affect the number of votes or
contributions Castro would receive.  Further, even if the Secretary refused to accept
Trump's declaration of candidacy, as Castro requests, Trump could appear on completed
ballots as a write-in candidate and still compete for and receive votes.  Finally, the
Secretary is not causing Trump's campaign to be active in New Hampshire and cannot
stop its activities here.  In other words, Trump's campaign activities and presence on the
ballot are traceable to Trump, but not to the Secretary.

Finally, Castro seeks no relief from Trump in the complaint, and he seeks no
restraint against Trump in his motion for injunctive relief.  He simply names Trump as a
"nominal" defendant.  In the absence of any relief to redress his alleged injury, Castro
lacks standing to maintain this lawsuit, even if he can show a competitive injury.
Castro's motion for injunctive relief is thus denied, and his complaint dismissed, for lack
of standing.

## B. Political question doctrine

The defendants also argue that Castro's claim should be dismissed because it turns
on a nonjusticiable political question—Mr. Trump's eligibility to run for and serve as
president.  The political question doctrine bars courts from adjudicating issues that are
"entrusted to one of the political branches or involve[ ] no judicially enforceable rights."
Vieth v. Jubelirer, 541 U.S. 267, 277 (2004) (internal citations omitted).  The
nonjusticiability of political questions is "essentially a function of the separation of
powers" of the federal government.  Baker v. Carr, 369 U.S. 186, 217 (1962).

In Baker v. Carr, the Supreme Court described six circumstances that can give rise to a political question:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

Id. The Baker Court held that, "[u]nless one of these formulations is inextricable from the case at bar, there should be no dismissal for non-justiciability on the ground of a political question's presence." Id.

The defendants contend that Castro's claim triggers the first Baker formulation, and they cite a number of cases that support their position. Indeed, state and federal district courts have consistently found that the U.S. Constitution assigns to Congress and the electors, and not the courts, the role of determining if a presidential candidate or president is qualified and fit for office—at least in the first instance. Courts that have considered the issue have found this textual assignment in varying combinations of the Twelfth Amendment and the Electoral Count Act, 3 U.S.C. § 15, which prescribe the process for transmitting, objecting to, and counting electoral votes; the Twentieth Amendment, which authorizes Congress to fashion a response if the president elect and vice president elect are unqualified; and the Twenty-Fifth amendment and Article I impeachment clauses, which involve Congress in the removal of an unfit president from office.

15

**Add.15**

For example, in Robinson v. Bowen, the plaintiff moved for a preliminary injunction removing Senator McCain from the 2008 California general election ballot on the ground that he was not a "natural-born citizen," as required under Article II of the U.S. Constitution. 567 F. Supp. 2d 1144, 1145 (N.D. Cal. 2008). The Robinson Court denied the motion and dismissed the case upon finding, in part, that the plaintiff's challenge raised a nonjusticiable political question. The Robinson Court noted that the Twelfth Amendment and the Electoral Count Act provide that "Congress shall be in session on the appropriate day to count the electoral votes," and that Congress decides upon the outcome of any objections to the electoral votes.[27] Id. at 1147. The Robinson Court reasoned that

---

[27] Castro contends that the Robinson Court's reasoning is no longer valid insofar as it relied on the Electoral Count Act's objection process to support its conclusion. He claims, without elaboration, that the Act was revised in 2022 "to limit objections only on the basis that either electors were not lawfully certified or that the vote count was irregular[.]" Castro's Supp. Resp. to Defs.' Mot. to Dismiss (doc. no. 44) at 3. Castro is correct that the Electoral Count Act was revised in 2022, after the Robinson order was issued, but, to the extent that he is arguing that this amendment limited the grounds for objections, that does not appear to be the case.

Both versions of the statute use the same terms to describe two exclusive grounds for objections to electoral votes. The amended version of the Act states that "[t]he only grounds for objections shall be as follows: (I) [t]he electors of the State were not lawfully certified under a certificate of ascertainment of appointment of electors according to section 5(a)(1) [and] (II) [t]he vote of one or more electors has not been regularly given." 3 U.S.C. § 15(d)(2)(B)(ii). The Act further provides that objections may only be "sustained by separate concurring votes of each House." Id. § 15(d)(2)(C). Prior to the amendment, the Act provided that all objections must be submitted for consideration to the Senate and House of Representatives, and "no electoral vote or votes from any State which shall have been regularly given by electors whose appointment has been lawfully certified to . . . shall be rejected, but the two Houses concurrently may reject the vote or votes when they agree that such vote or votes have not been so regularly given by electors whose appointment has been so certified." 62 Stat. 675 (1948) (current version at 3 U.S.C. § 15). Castro does not argue, nor does it appear to the court, that the relevant terms—"lawfully certified" and "regularly given"—took on new meaning through the amendment process, thereby materially altering the grounds for objections to electoral votes.

16

Add.16

it is clear that mechanisms exist under the Twelfth Amendment and [the Electoral Count Act] for any challenge to any candidate to be ventilated when electoral votes are counted, and that the Twentieth Amendment provides guidance regarding how to proceed if a president elect shall have failed to qualify. Issues regarding qualifications for president are quintessentially suited to the foregoing process. . . . Therefore, this order holds that the challenge presented by plaintiff is committed under the Constitution to the electors and the legislative branch, at least in the first instance. Judicial review—if any—should occur only after the electoral and Congressional processes have run their course.

Id. (citing Texas v. United States, 523 U.S. 296, 300-02 (1998)).

Similarly, in Grinols v. Electoral Coll., the plaintiffs moved for a temporary restraining order halting the re-election of then-President Obama on the ground that he was ineligible for office because he was not a natural-born citizen. 2013 WL 211135, at *1. The Grinols Court denied the motion largely because it found the plaintiffs' claim "legally untenable." Id. at *2. It reasoned, in part, that "numerous articles and amendments of the Constitution," including the Twelfth Amendment, Twentieth Amendment, Twenty-Fifth Amendment, and the Article I impeachment clauses, "make it clear that the Constitution assigns to Congress, and not the Courts, the responsibility of determining whether a person is qualified to serve as President. As such, the question presented by Plaintiffs in this case—whether President Obama may legitimately run for office and serve as President—is a political question that the Court may not answer." Id. at *4.

Courts across the country have reached the same conclusion, based on similar reasoning. See, e.g., Kerchner v. Obama, 669 F. Supp. 2d 477, 483 n.5 (D.N.J. 2009) (referencing the Twelfth and Twentieth Amendments, as well as Congress's role in counting electoral votes, and concluding that "it appears that" the plaintiffs'

17

**Add.17**

constitutional claims premised on President Obama's purported ineligibility are "barred under the 'political question doctrine' as a question demonstrably committed to a coordinate political department"), aff'd 612 F.3d 204 (3d Cir. 2010); Taitz v. Democrat Party of Mississippi, No. 3:12-CV-280-HTW-LRA, 2015 WL 11017373, at *16 (S.D. Miss. Mar. 31, 2015) ("find[ing] no authority in the Constitution which would permit [the court] to determine that a sitting president is unqualified for office or a president-elect is unqualified to take office[,]" and concluding that "[t]hese prerogatives are firmly committed to the legislative branch of our government"); Jordan v. Secretary of State Sam Reed, No. 12-2-01763-5, 2012 WL 4739216, at *1 (Wash. Super. Aug. 29, 2012) ("The primacy of congress to resolve issues of a candidate's qualifications to serve as president is established in the U.S. Constitution.").

Critically, Castro does not present case law that contradicts the authority discussed above—nor has the court found any. To the contrary, Castro agrees that his claim may raise a political question that precludes jurisdiction, but he quibbles (without reason) about the timing of this jurisdictional effect. Castro asserts that the cases that the defendants cite were initiated or decided after the political parties held their national conventions to select presidential nominees. According to Castro, this circumstance alone "proves that the political question doctrine applies only after the major political parties hold their conventions and submit the nomination paperwork to the state for placement on the general election ballot."[28] Even if Castro's factual premise regarding

---

[28] Castro's Supp. Resp. to Defs.' Mot. to Dismiss (doc. no. 44) at 3-4 (emphasis in original).

18

**Add.18**

the timing of the cases and decisions is accurate—a conclusion that the court does not and need not draw—Castro's argument is wholly underdeveloped and unsubstantiated. Castro does not point to any factual or legal authority to support the notion that the political question doctrine, and the separation-of-powers principle at its core, simply lay dormant until after the national conventions, and the court finds no reasoned basis for such a conclusion.

In sum, the vast weight of authority has held that the Constitution commits to Congress and the electors the responsibility of determining matters of presidential candidates' qualifications.[29]  Castro provides no reason to deviate from this consistent authority.  Thus, it appears to the court that Castro's claim—which challenges Trump's eligibility as a presidential candidate under Section 3 of the Fourteenth Amendment— raises a nonjusticiable political question.  As such, even if Castro did have standing to assert his claim, the court would lack jurisdiction to hear it under the political question doctrine.

---

[29] It bears noting that courts dealing with this justiciability question have not undertaken a searching analysis of the text and history of, for example, the Electoral Count Act and the Twentieth Amendment, which potentially impact the proper application of the political question doctrine.  As Castro has not referred to, much less argued for, the inapplicability of the doctrine on these grounds, this court deems these arguments waived, and declines to engage them.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

## IV. **Conclusion**

For the reasons stated above, Castro's motion for a preliminary injunction[30] is

DENIED, Trump's motion to dismiss[31] is GRANTED, and the case is dismissed.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

October 27, 2023

cc:    John Anthony Castro, pro se
      Brendan Avery O'Donnell, Esq.
      Richard J. Lehmann, Esq.
      David Warrington, Esq.
      Jonathan Mark Shaw, Esq.
      Mark Meuser, Esq.
      Bryan K. Gould, Esq.
      Morgan Tanafon, Esq.

---

[30] Doc. no. 6.

[31] Doc. no. 31.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

John Anthony Castro

        v.

                                        Case No. 23-cv-416-JL

NH Secretary of State, et al.


                        JUDGMENT


    In accordance with the Order by District Judge Joseph N. Laplante

dated October 27, 2023, judgment is hereby entered.

    The prevailing party may recover costs consistent with Fed. R.

Civ. P. 54(d) and 28 U.S.C. § 1920.


                                By the Court:


                                /s/ Daniel J. Lynch
                                Daniel J. Lynch
                                Clerk of Court


Date: October 30, 2023

cc:   John Anthony Castro, pro se
      Brendan Avery O'Donnell, Esq.
      Richard J. Lehmann, Esq.
      David Warrington, Esq.
      Jonathan Mark Shaw, Esq.
      Mark Meuser, Esq.


**Add.21**

# No. 23-1902

## In the **United States Court of Appeals for the First Circuit**

**JOHN CASTRO,**

*Plaintiff - Appellant,*

***v.***

**DAVID SCANLAN, NEW HAMPSHIRE SECRETARY OF STATE; DONALD J. TRUMP; NEW HAMPSHIRE REPUBLICAN STATE COMMITTEE,**

*Defendants - Appellees.*

APPEAL FORM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE, CONCORD ORIGINATING CIVIL CASE NO.: 1:23-CV-00416 Honorable Joseph Normand LaPlante, U.S. District Judge

---

## APPELLANT'S APPENDIX

---

Respectfully submitted:

John Anthony Castro

Appellant

12 Park Place

Mansfield, TX  76063

Tel. (202) 594 - 4344

*Pro Se*

**CASE NO. 23-1902**

## TABLE OF CONTENTS

| Description of Item | Record Entry No. | Appendix Page No. |
|---|---|---|
| District Court Docket Sheet Case No. 1:23-cv-00416-JL | N/A | A1 |
| Complaint (09/05/2023) | R.1 | A9 |
|    Exhibit 1 Summons in a Civil Action to Secretary of State David Scanlan | | A28 |
|    Exhibit 2 Summons in a Civil Action to Donald John Trump | | A30 |
|    Exhibit 3 Civil Cover Sheet | | A32 |
| Objection and Opposition to Pro Hac Vice Admission of David Warrington (09/22/2023) | R.18 | A33 |
| Defendant's Rule 12(B)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction (09/29/2023) | R.31 | A35 |
| Procedural Order (10/05/2023) | R.36 | A49 |
| Exhibit List (10/20/2023) | R.56 | A51 |
| Plaintiff's Notice of Appeal (10/27/2023) | R.60 | A52 |
| Certificate of Service | | |

i

APPEAL,CLOSED

# U.S. District Court
## District of New Hampshire (Concord)
## CIVIL DOCKET FOR CASE #: 1:23-cv-00416-JL

Castro v. NH Secretary of State et al                                   Date Filed: 09/11/2023
Assigned to: Judge Joseph N. Laplante                                  Date Terminated: 10/30/2023
Case in other court: Court of Appeals, 23-00416                        Jury Demand: None
Cause: 28:1331 Fed. Question                                           Nature of Suit: 890 Other Statutory Actions
                                                                       Jurisdiction: Federal Question

**Plaintiff**

**John Anthony Castro**                              represented by    **John Anthony Castro**
                                                                       12 Park Place
                                                                       Mansfield, TX 76063
                                                                       202 594-4344
                                                                       Fax: 866-700-7595
                                                                       Email: j.castro@castroandco.com
                                                                       PRO SE

V.

**Defendant**

**NH Secretary of State**                           represented by    **Brendan Avery O'Donnell**
*TERMINATED: 10/27/2023*                                              NH Department of Justice (Concord)
*other*                                                               33 Capitol St
David Scanlan                                                         Concord, NH 03301
*TERMINATED: 10/27/2023*                                              603-271-3650
                                                                       Fax: 603-271-2110
                                                                       Email: brendan.a.odonnell@doj.nh.gov
                                                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**Donald John Trump**                               represented by    **Richard J. Lehmann**
*TERMINATED: 10/27/2023*                                              Lehmann Major List PLLC
                                                                       6 Garvins Falls Road
                                                                       Concord, NH 03301
                                                                       603-731-5435
                                                                       Fax: 720-995-9156
                                                                       Email: rick@nhlawyer.com
                                                                       *LEAD ATTORNEY*
                                                                       *ATTORNEY TO BE NOTICED*

                                                                       **David Warrington**
                                                                       Dhillon Law Group
                                                                       2121 Eisenhower Ave, Ste 608
                                                                       Alexandria, VA 22314
                                                                       240-383-8758
                                                                       Fax: 703-574-1206
                                                                       Email: dwarrington@dhillonlaw.com
                                                                       *ATTORNEY TO BE NOTICED*

                                                                       **Jonathan Mark Shaw**
                                                                       Dhillon Law Group
                                                                       2121 Eisenhower Ave, Ste 608
                                                                       Alexandria, VA 22314
                                                                       240-383-8758
                                                                       Email: jshaw@dhillonlaw.com
                                                                       *ATTORNEY TO BE NOTICED*

Mark Meuser
Dhillon Law Group
177 Post St, Ste 700
San Francisco, CA 94104
415-577-2850
Email: mmeuser@dhillonlaw.com
*ATTORNEY TO BE NOTICED*

**Intervenor**

**New Hampshire Republican State Committee**          represented by **Bryan K. Gould**
*TERMINATED: 10/27/2023*                                                    Cleveland Waters & Bass PA
                                                                           Two Capital Plaza
                                                                           PO Box 1137
                                                                           Concord, NH 03302-1137
                                                                           603 224-7761
                                                                           Email: gouldb@cwbpa.com
                                                                           *LEAD ATTORNEY*
                                                                           *ATTORNEY TO BE NOTICED*

                                                                           **Morgan Tanafon**
                                                                           Cleveland Waters & Bass PA
                                                                           Two Capital Plaza
                                                                           PO Box 1137
                                                                           Concord, NH 03302-1137
                                                                           603-224-7761
                                                                           Fax: 603-224-6457
                                                                           Email: tanafonm@cwbpa.com
                                                                           *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/05/2023 | 1 | COMPLAINT against NH Secretary of State, Donald John Trump filed by John Anthony Castro. (Attachments: # 1 Summons - Waiver Secretary of State, # 2 Summons - Waiver Donald John Trump, # 3 Civil Cover Sheet)(ed) (Entered: 09/06/2023) |
| 09/05/2023 | 2 | Motion to Participate in Electronic Filing filed by John Anthony Castro.(ed) (Entered: 09/06/2023) |
| 09/06/2023 | | NOTICE. This case has been designated for Electronic Case Filing. All further submissions shall be filed in compliance with the Administrative Procedures for Electronic Case Filing. Pro se litigants are not required to file electronically and may continue to file documents in paper format. Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click HERE. (ed) (Entered: 09/06/2023) |
| 09/06/2023 | 3 | NOTICE - Filing Fee Omitted. Either the filing fee or an application to proceed without fees or costs must be submitted within 60 days. Compliance Deadline set for 11/7/2023.(ed) (Entered: 09/06/2023) |
| 09/11/2023 | | Filing Fee paid - case converted to a civil case: $ 402 (Check), receipt number 935 Case assigned to Judge Joseph N. Laplante and US Magistrate Judge Talesha Leah Saint-Marc. New case number is 1:23-cv-416-JL-TSM. Please show this number with the judge designation on all future pleadings. (ed) (Entered: 09/12/2023) |
| 09/12/2023 | | **ENDORSED ORDER granting 2 Motion to Participate in Electronic Filing. *Text of Order: Granted.* So Ordered by US Magistrate Judge Talesha Leah Saint-Marc.(ed)** (Entered: 09/12/2023) |
| 09/15/2023 | 4 | Return of Service Executed as to NH Secretary of State *David Scanlan* by John Anthony Castro. (Castro, John) (Entered: 09/15/2023) |
| 09/15/2023 | 5 | Return of Service Executed as to Donald John Trump by John Anthony Castro. (Castro, John) (Entered: 09/15/2023) |
| 09/17/2023 | 6 | Expedited Preliminary Injunction Hearing Consolidated With A Preliminary Bench Trial On The Merits filed by John Anthony Castro. **HEARING REQUESTED.**Follow up on Objection on 10/2/2023. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Proposed Order Proposed Order (PDF))(Castro, John) Modified on 9/25/2023 to remove: Emergency MOTION for Temporary Restraining Order *docket text from the docket. TRO was withdrawn at the 9/25/23 conference. The court construes the motion as motion for preliminary injunction (ko).* (Entered: 09/17/2023) |
| 09/19/2023 | | NOTICE of Video In Chambers Conference re: 6 Emergency MOTION for Temporary Restraining Order *and Expedited Preliminary Injunction Hearing Consolidated With A Preliminary Bench Trial On The Merits.* |

| | | Conference set for 9/22/2023 at 11:00 AM before Judge Joseph N. Laplante.(ko) Modified on 9/19/2023 to add: Video In chambers to docket text (ko). (Entered: 09/19/2023) |
|---|---|---|
| 09/19/2023 | 7 | NOTICE of Attorney Appearance by Richard J. Lehmann on behalf of Donald John Trump Attorney Richard J. Lehmann added to party Donald John Trump(pty:dft).(Lehmann, Richard) (Entered: 09/19/2023) |
| 09/19/2023 | 8 | Partially Assented to MOTION to Intervene as Other filed by New Hampshire Republican State Committee. Attorney Bryan K. Gould added to party New Hampshire Republican State Committee(pty:intv).Follow up on Objection on 10/3/2023. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Gould, Bryan) (Entered: 09/19/2023) |
| 09/19/2023 | 9 | NOTICE of Attorney Appearance by Bryan K. Gould on behalf of New Hampshire Republican State Committee (Gould, Bryan) (Entered: 09/19/2023) |
| 09/19/2023 | 10 | OBJECTION to 6 Emergency MOTION for Temporary Restraining Order *and Expedited Preliminary Injunction Hearing Consolidated With A Preliminary Bench Trial On The Merits* filed by Donald John Trump. Follow up on Reply on 9/26/2023. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit Letter from Florida Bar Counsel to John Anthony Castro, # 2 Exhibit Email from John Anthony Castro, # 3 Exhibit Merr Cty Sup Ct Complaint Castro v. Trump et al, # 4 Exhibit (Affidavit) Affidavit of Counsel)(Lehmann, Richard) (Entered: 09/19/2023) |
| 09/20/2023 | 11 | NOTICE of Attorney Appearance by Morgan Tanafon on behalf of New Hampshire Republican State Committee Attorney Morgan Tanafon added to party New Hampshire Republican State Committee(pty:intv).(Tanafon, Morgan) (Entered: 09/20/2023) |
| 09/20/2023 | 12 | NOTICE of Attorney Appearance by Brendan Avery O'Donnell on behalf of NH Secretary of State Attorney Brendan Avery O'Donnell added to party NH Secretary of State(pty:dft).(O'Donnell, Brendan) (Entered: 09/20/2023) |
| 09/20/2023 | 13 | REPLY to Objection to Motion re 6 Emergency MOTION for Temporary Restraining Order *and Expedited Preliminary Injunction Hearing Consolidated With A Preliminary Bench Trial On The Merits* filed by John Anthony Castro. Surreply due by 9/25/2023. (Castro, John) (Entered: 09/20/2023) |
| 09/20/2023 | 14 | Assented to MOTION for Mark Meuser to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC-2423149.) filed by Donald John Trump. (Attachments: # 1 Exhibit (Affidavit) Affidavit of Mark Meuser, # 2 Attachment to Exhibit Attachment to Meuser Affidavit listing bar admissions)(Lehmann, Richard) (Entered: 09/20/2023) |
| 09/20/2023 | 15 | Assented to MOTION for Jonathan Shaw to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC-2423236.) filed by Donald John Trump. (Attachments: # 1 Exhibit (Affidavit) Affidavit of Attorney Jonathan Shaw)(Lehmann, Richard) (Entered: 09/20/2023) |
| 09/20/2023 | 16 | MOTION for David Warrington to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC-2423244.) filed by Donald John Trump.Follow up on Objection on 10/4/2023. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit (Affidavit) Declaration of Attorney David Warrington)(Lehmann, Richard) (Entered: 09/20/2023) |
| 09/21/2023 | 17 | Addendum/ to 16 MOTION for David Warrington to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC-2423244.) by Donald John Trump. (Attachments: # 1 Exhibit (Affidavit) Declaration of David Warrington, # 2 Exhibit Closing Letter - State Bar of Arizona)(Lehmann, Richard) (Entered: 09/21/2023) |
| 09/22/2023 | | **ENDORSED ORDER granting re 14 Assented to MOTION for Mark Meuser to Appear Pro Hac Vice; granting 15 Assented to MOTION for Jonathan Shaw to Appear Pro Hac Vice. *Text of Order: Granted.* So Ordered by Judge Joseph N. Laplante.** **The clerk's office will provide the admitted attorney with instructions on how to obtain access to electronic filing by separate email. The admitted attorney must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of New Hampshire. After obtaining e-filing access, the admitted attorney must file an appearance to begin receiving electronic notices.(ko)** (Entered: 09/22/2023) |
| 09/22/2023 | 18 | WITHDRAWN per 9/25/2023 Endorsed Order - OBJECTION to 16 MOTION for David Warrington to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC-2423244.) filed by John Anthony Castro. Follow up on Reply on 9/29/2023. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Castro, John) Modified on 9/25/2023 to add withdrawn text: (jb). (Entered: 09/22/2023) |
| 09/22/2023 | 19 | OBJECTION to 8 Partially Assented to MOTION to Intervene as Other filed by John Anthony Castro. Follow up on Reply on 9/29/2023. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Castro, John) (Entered: 09/22/2023) |
| 09/22/2023 | | Minute Entry for proceedings held before Judge Joseph N. Laplante. STATUS CONFERENCE held on 9/22/2023. (Court Reporter: Brenda K. Hancock) (Pltfs Atty: John Castro, pro se) (Defts Atty: Brendan O'Donnell, Richard Lehmann)(Total Hearing Time: 45 minutes) (ko) (Entered: 09/22/2023) |

| | | |
|---|---|---|
| 09/22/2023 | 20 | **SUMMARY ORDER re 6 Emergency MOTION for Temporary Restraining Order and Expedited Preliminary Injunction Hearing Consolidated With A Preliminary Bench Trial On The Merits, 16 MOTION for David Warrington to Appear Pro Hac Vice, 8 Partially Assented to MOTION to Intervene as Other filed by New Hampshire Republican State Committee.** <br><br> **Objections to PHV Admission of David Warrington (doc. no. 16 ) and Motion to Intervene (doc. no. 8 ) due 9/25/23. Counsel for Donald Trump to notify the court as outlined by 9/26/2023. Jurisdictional challenges by 9/29/2023 with responses by 10/2/2023. Objection to motion for preliminary injunction (doc. no. 6 ) on or before 10/2/2023. So Ordered by Judge Joseph N. Laplante.(jb) (Entered: 09/22/2023)** |
| 09/24/2023 | 21 | SUPPLEMENTAL AFFIDAVIT re 6 Emergency MOTION for Temporary Restraining Order *and Expedited Preliminary Injunction Hearing Consolidated With A Preliminary Bench Trial On The Merits Supplemental Affidavit in Support of Preliminary Injunctive Relief* filed by John Anthony Castro (Attachments: # 1 Exhibit A, Third Superseding Indictment of Enrique Tarrio, et al.)(Castro, John) Modified on 10/4/2023 to add: Supplemental to docket text (ko). (Entered: 09/24/2023) |
| 09/25/2023 | 22 | REPLY to Objection to Motion re 16 MOTION for David Warrington to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC-2423244.) filed by Donald John Trump. Surreply due by 10/2/2023. (Lehmann, Richard) (Entered: 09/25/2023) |
| 09/25/2023 | 23 | REPLY to Objection to Motion re 8 Partially Assented to MOTION to Intervene as Other filed by New Hampshire Republican State Committee. Surreply due by 10/2/2023. (Tanafon, Morgan) (Entered: 09/25/2023) |
| 09/25/2023 | | **ENDORSED ORDER re 6 Expedited Preliminary Injunction Hearing Consolidated With A Preliminary Bench Trial On The Merits.** *Text of Order: As discussed during the videoconference on September 22, 2023, counsel for defendant Donald J. Trump will be unavailable for two weeks beginning on October 9, 2023. Although the court would like to accommodate local counsel's plans in scheduling the hearing on the plaintiff's motion for a preliminary injunction (and potentially the merits of the case as well), there is not sufficient time to schedule the hearing before October 9, and the proximity of the ballot printing deadline prevents delaying the hearing until after he returns. The hearing will be scheduled for Friday, October 20, 2023. (Detailed procedural order to follow.) Local counsel is excused from attending the hearing. If the defendant would like to have other local counsel appear on his behalf, the court grants leave for alternative counsel to file an appearance on his behalf.* **So Ordered by Judge Joseph N. Laplante.(jb) (Entered: 09/25/2023)** |
| 09/25/2023 | | **ENDORSED ORDER granting 16 Motion for David Warrington to Appear Pro Hac Vice.** *Text of Order: Defendant Donald J. Trump moved to have Attorney David Warrington admitted pro hac vice to represent him in this case. Doc. no. 16 . The plaintiff objected to the motion on the ground that Warrington had not supported, with an affidavit or declaration, a statement made in support of admission, that he was only the lawyer for certain entities mentioned in a media publication and had no role in their operations. Doc. no. 18 , at 1-2. The plaintiff stated that he would withdraw the objection if such an affidavit or declaration were filed. As the defendant pointed out in his reply, the defendant submitted Warrington's declaration with the motion for pro hac vice admission, in which Warrington declared that the statement was true and correct under penalty of perjury. Doc. no. 16 -1, 5. For that reason, the court considers the plaintiff's objection withdrawn. The motion for pro hac vice admission (doc. no. 16 ) is granted.* **So Ordered by Judge Joseph N. Laplante.** <br><br> **The clerks office will provide the admitted attorney with instructions on how to obtain access to electronic filing by separate email. The admitted attorney must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of New Hampshire. After obtaining e-filing access, the admitted attorney must file an appearance to begin receiving electronic notices.(jb) (Entered: 09/25/2023)** |
| 09/25/2023 | | **ENDORSED ORDER re 8 Partially Assented to MOTION to Intervene as Other.** *Text of Order: In its motion to intervene, the New Hampshire Republican State Committee asserts that it has a direct interest in ensuring that the Republican voters it represents can vote for the candidates of their choice in the Republican presidential primary. Doc. no. 8 at 10. The Committee further contends that the relief that the plaintiff seeks in this case will prevent a cohort of Republican voters from selecting their preferred candidate. Id. at 11. The deadline for the Committee to file a Reply in support of its motion to intervene is September 29, 2023. To the extent that the Committee wishes to file a Reply, the court requests (but does not require) that the Committee detail, at least in part, how its stated interests are meaningfully and practically distinct from, and not adequately represented by, the interests of the other parties in this case particularly Donald J. Trump. Such explanation should identify, in brief, legal argument(s) that the Committee intends to propound with respect to Section 3 of the Fourteenth Amendment or otherwise, and why the argument(s) may not be asserted by other parties in the case.* **So Ordered by Judge Joseph N. Laplante.(jb) (Entered: 09/26/2023)** |
| 09/26/2023 | | NOTICE of Hearing. Evidentiary Hearing set for 10/20/2023 at 09:30 AM before Judge Joseph N. Laplante.(ko) (Entered: 09/26/2023) |
| 09/26/2023 | 24 | NOTICE of Assent to Consolidation by Donald John Trump.(Lehmann, Richard) (Entered: 09/26/2023) |

| 09/27/2023 | | **ENDORSED ORDER re** 24 Notice of Assent to Consolidation by Donald John Trump. *Text of Order: Reviewed.* So Ordered by Judge Joseph N. Laplante.(ko) (Entered: 09/27/2023) |
|---|---|---|
| 09/27/2023 | 25 | NOTICE of Attorney Appearance by Mark Meuser on behalf of Donald John Trump Attorney Mark Meuser added to party Donald John Trump(pty:dft).(Meuser, Mark) (Entered: 09/27/2023) |
| 09/28/2023 | 26 | **PROCEDURAL ORDER: PRELIMINARY INJUNCTION HEARING set for October 20, 2023 at 9:30 a.m. Single timeline, single Statement of Agreed Facts due as outlined on or before 4:00 p.m. October 13, 2023. Witness Lists, Exhibit Lists and Proposed Findings of Fact and Rulings of Law by October 17, 2023. Plaintiff to file proposed order as outlined on or before October 18, 2023. So Ordered by Judge Joseph N. Laplante. (jb)** (Entered: 09/28/2023) |
| 09/29/2023 | 27 | Objection to 6 Expedited Preliminary Injunction Hearing filed by NH Secretary of State. (Attachments: # 1 Exhibit A)(O'Donnell, Brendan) Modified on 9/29/2023 to correct link from doc. no. 1 to doc. no. 6. (ko). (Entered: 09/29/2023) |
| 09/29/2023 | 28 | NOTICE of Attorney Appearance by David Warrington on behalf of Donald John Trump Attorney David Warrington added to party Donald John Trump(pty:dft).(Warrington, David) (Entered: 09/29/2023) |
| 09/29/2023 | 29 | NOTICE of Attorney Appearance by Jonathan Mark Shaw on behalf of Donald John Trump Attorney Jonathan Mark Shaw added to party Donald John Trump(pty:dft).(Shaw, Jonathan) (Entered: 09/29/2023) |
| 09/29/2023 | 30 | Supplemental REPLY to Objection to Motion re 8 Partially Assented to MOTION to Intervene as Other filed by New Hampshire Republican State Committee. Surreply due by 10/4/2023. (Attachments: # 1 Exhibit 1 - FEC Letter to Castro for America (9-11-2023))(Tanafon, Morgan) Modified on 10/2/2023 to add: Supplemental to docket text(ko). (Entered: 09/29/2023) |
| 09/29/2023 | 31 | MOTION to Dismiss *for Lack of Standing* filed by Donald John Trump.Follow up on Objection on 10/13/2023. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit Plaintiff 11th Circuit Reply Brief)(Lehmann, Richard) (Entered: 09/29/2023) |
| 09/29/2023 | 32 | RESPONSE to Motion re 31 MOTION to Dismiss *for Lack of Standing* filed by John Anthony Castro. (Castro, John) (Entered: 09/29/2023) |
| 10/03/2023 | 33 | RESPONSE re 32 Response to Motion filed by NH Secretary of State. (O'Donnell, Brendan) (Entered: 10/03/2023) |
| 10/03/2023 | 34 | NOTICE of Related Cases by Donald John Trump.(Lehmann, Richard) (Entered: 10/03/2023) |
| 10/03/2023 | 35 | OBJECTION to 6 Emergency MOTION for Temporary Restraining Order *and Expedited Preliminary Injunction Hearing Consolidated With A Preliminary Bench Trial On The Merits* filed by Donald John Trump. Follow up on Reply on 10/10/2023. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Meuser, Mark) (Entered: 10/03/2023) |
| 10/05/2023 | 36 | **PROCEDURAL ORDER re October 20, 2023 evidentiary hearing. Filing requirements and deadlines set in court's procedural order (doc. no. 26 ) issued on September 28, 2023, are suspended. Filings by each party as outlined on or before October 17, 2023. So Ordered by Judge Joseph N. Laplante.(jb)** (Entered: 10/05/2023) |
| 10/05/2023 | 37 | MOTION for Reconsideration re 36 Order, filed by John Anthony Castro.Follow up on Objection on 10/19/2023. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Castro, John) (Entered: 10/05/2023) |
| 10/05/2023 | 38 | RESPONSE re 27 Objection to *State's Objection to Plaintiff's Request for Injunctive Relief* filed by John Anthony Castro. (Castro, John) (Entered: 10/05/2023) |
| 10/05/2023 | 39 | REFILED SEE DOC. NO. 40 . Plaintiff's Witness List, Exhibit List, and Proposed Findings of Fact and Law Re Jurisdiction by John Anthony Castro(Castro, John) Modified on 10/6/2023 to add: Refiled see doc. no. 40 re Plaintiff's Corrected Witness List to docket text(ko). (Entered: 10/05/2023) |
| 10/05/2023 | 40 | Plaintiff's Corrected Witness List, Exhibit List, and Proposed Findings of Fact and Law Re Jurisdiction by John Anthony Castro(Castro, John) (Entered: 10/05/2023) |
| 10/05/2023 | 41 | Exhibit *A, Nevada Declaration of Candidacy [FILED]* to 40 Miscellaneous Filing by John Anthony Castro.(Castro, John) (Entered: 10/05/2023) |
| 10/06/2023 | | RESCHEDULING NOTICE of Hearing. (Time change only) Evidentiary Hearing reset for 10/20/2023 at 11:00 AM (from 10:00 AM) before Judge Joseph N. Laplante.(ko) (Entered: 10/06/2023) |
| 10/06/2023 | | NOTICE of ECF Filing Error re: 41 Exhibit A filed by John Anthony Castro. Document should have been filed as an attachment to the main document (AP 2.5(a)). NO ACTION REQUIRED - FOR INFORMATIONAL PURPOSES ONLY AND MERELY INTENDED TO EDUCATE ALL PARTIES IN THE CASE. If the filing party has any questions concerning this notice, please contact the judge's case manager at 603-225-1423.(ko) (Entered: 10/06/2023) |

| 10/06/2023 | | **ENDORSED ORDER re 37 Motion for Reconsideration re 36 Order.** *Text of Order: The court intends to rule on the motion to reconsider (Doc. No. 37) expeditiously. Any objection to the motion should be filed on or before 12 noon on Tuesday, October 10.* **So Ordered by Judge Joseph N. Laplante. (Follow up on Objection on 10/10/2023. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).)(ko)** (Entered: 10/06/2023) |
|---|---|---|
| 10/06/2023 | 42 | OBJECTION to 37 MOTION for Reconsideration re 36 Order, filed by Donald John Trump. Follow up on Reply on 10/13/2023. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Lehmann, Richard) (Entered: 10/06/2023) |
| 10/06/2023 | 43 | REPLY to Objection to Motion re 37 MOTION for Reconsideration re 36 Order, *Reply to Defendant Trump's Objection to Plaintiff's Motion for Reconsideration* filed by John Anthony Castro. Surreply due by 10/11/2023. (Castro, John) (Entered: 10/06/2023) |
| 10/09/2023 | 44 | RESPONSE to Motion re 31 MOTION to Dismiss *for Lack of Standing [Supplemental Response]* filed by John Anthony Castro. (Castro, John) (Entered: 10/09/2023) |
| 10/10/2023 | | **ENDORSED ORDER denying re 37 Motion for Reconsideration re 36 Order.** *Text of Order: Denied.* **So Ordered by Judge Joseph N. Laplante. (ko)** (Entered: 10/10/2023) |
| 10/11/2023 | 45 | AFFIDAVIT of Plaintiff John Anthony Castro filed by John Anthony Castro. (Attachments: # 1 Filing Fee Receipt) (ko) (Entered: 10/12/2023) |
| 10/12/2023 | | NOTICE re: 45 Affidavit of Plaintiff John Anthony Castro. John Anthony Castro: Documents must be filed electronically pursuant to Administrative Procedures for Electronic Case Filing Section 2.3(h)(2). Note: Plaintiff should not refile this document electronically; the court has scanned and entered in CM/ECF.(ko) (Entered: 10/12/2023) |
| 10/16/2023 | 46 | Emergency MOTION to Compel Attendance of Defendants and Witness John Michael Formella at Jurisdictional Hearing *on Friday, October 20, 2023,* filed by John Anthony Castro.Follow up on Objection on 10/30/2023. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Proposed Order Proposed Order (PDF))(Castro, John) (Entered: 10/16/2023) |
| 10/17/2023 | | **ENDORSED ORDER re 46 Emergency MOTION to Compel Attendance of Defendants and Witness John Michael Formella at Jurisdictional Hearing on Friday, October 20, 2023.** *Text of Order: Any responses to the motion to compel (document 46) shall be filed on or before 2 PM, October 18, 2023.* **So Ordered by Judge Joseph N. Laplante. (Follow up on Objection on 10/18/2023. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).)(ko)** (Entered: 10/17/2023) |
| 10/17/2023 | 47 | Request for Findings of Fact and Rulings of Law by NH Secretary of State. (O'Donnell, Brendan) (Entered: 10/17/2023) |
| 10/17/2023 | 48 | NOTICE of of Full Briefing and Closure of Deadline for Defendant Secretary of State to Motion to Dismiss by John Anthony Castro.(Castro, John) (Entered: 10/17/2023) |
| 10/17/2023 | 49 | Final Witness List *Exhibit List, and Request For Findings Of Fact And Rulings Of Law* by Donald John Trump. (Attachments: # 1 Exhibit Dennehy Declaration, # 2 Attachment to Exhibit A, # 3 Attachment to Exhibit B, # 4 Exhibit Hearing Exhibit 1, # 5 Exhibit Hearing Exhibit 2, # 6 Exhibit Hearing Exhibit 3, # 7 Exhibit Hearing Exhibit 4, # 8 Exhibit Hearing Exhibit 5, # 9 Exhibit Hearing Exhibit 6)(Shaw, Jonathan) (Entered: 10/17/2023) |
| 10/18/2023 | | **ENDORSED ORDER granting 8 Partially Assented to MOTION to Intervene as Other filed by the New Hampshire Republican State Committee.** *Text of Order: Granted* **So Ordered by Judge Joseph N. Laplante. (jb)** (Entered: 10/18/2023) |
| 10/18/2023 | 50 | OBJECTION to 46 Emergency MOTION to Compel Attendance of Defendants and Witness John Michael Formella at Jurisdictional Hearing *on Friday, October 20, 2023,* filed by NH Secretary of State. Follow up on Reply on 10/25/2023. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit Exhibit A - Email)(O'Donnell, Brendan) (Entered: 10/18/2023) |
| 10/18/2023 | 51 | REPLY to Objection to Motion re 46 Emergency MOTION to Compel Attendance of Defendants and Witness John Michael Formella at Jurisdictional Hearing *on Friday, October 20, 2023,* filed by John Anthony Castro. Surreply due by 10/23/2023. (Castro, John) (Entered: 10/18/2023) |
| 10/18/2023 | 52 | OBJECTION to 46 Emergency MOTION to Compel Attendance of Defendants and Witness John Michael Formella at Jurisdictional Hearing *on Friday, October 20, 2023,* filed by Donald John Trump. Follow up on Reply on 10/25/2023. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit A)(Shaw, Jonathan) (Entered: 10/18/2023) |
| 10/18/2023 | 53 | STIPULATION re 49 Witness List, re: Stipulation to Certain Facts Defendant Donald John Trump Seeks to Establish by John Anthony Castro(Castro, John) (Entered: 10/18/2023) |

| 10/19/2023 | 54 | Amended Witness List *[Plaintiff's Second Amended Witness List, Exhibit List, and Proposed Findings of Fact and Law]* by John Anthony Castro. (Castro, John) (Entered: 10/19/2023) |
|---|---|---|
| 10/19/2023 | 55 | **ORDER denying 46 Emergency MOTION to Compel Attendance of Defendants and Witness John Michael Formella at Jurisdictional Hearing on Friday, October 20, 2023. So Ordered by Judge Joseph N. Laplante. (jb)** (Entered: 10/19/2023) |
| 10/20/2023 | | Minute Entry for proceedings held before Judge Joseph N. Laplante. EVIDENTIARY HEARING held on 10/20/2023. Witnesses Appearing: Michael Dennehy, John Castro. Order to issue. (Court Reporter: Susan Bateman) (Pltf: John Anthony Castro, pro se) (Defts Atty: Brendan Avery O'Donnell, Richard J. Lehmann, Jonathan Mark Shaw, Bryan K. Gould)(Total Hearing Time: 2 hrs., 5 minutes) (ko) (Entered: 10/20/2023) |
| 10/20/2023 | 56 | Exhibit List re 10/20/2023 Evidentiary Hearing by John Anthony Castro. (ko) (Entered: 10/20/2023) |
| 10/20/2023 | 57 | Exhibit List re 10/20/2023 Evidentiary Hearing by Donald John Trump.(ko) (Entered: 10/20/2023) |
| 10/25/2023 | 58 | TRANSCRIPT of Proceedings for Evidentiary Hearing held on 10/20/2023. Court Reporter: Susan Bateman, Telephone # 603-225-1453. Transcript is available for public inspection, but may not be copied or otherwise reproduced, at the Clerk's Office for a period of 90 days. Additionally, only attorneys of record and pro se parties with an ECF login and password who purchase a transcript from the court reporter will have access to the transcript through PACER during this 90-day period. If you would like to order a copy, please contact the court reporter at the above listed phone number.<br><br>**NOTICE: Any party who requests an original transcript has 21 days from service of this notice to determine whether it is necessary to redact any personal identifiers and, if so, to electronically file a Redaction Request.**<br><br>Redaction Request Follow Up 11/15/2023. Redacted Transcript Follow Up 11/27/2023. Release of Transcript Restriction set for 1/23/2024.(ko) (Entered: 10/25/2023) |
| 10/27/2023 | 59 | **///MEMORANDUM ORDER denying 6 Expedited Preliminary Injunction Hearing Consolidated With A Preliminary Bench Trial On The Merits; granting 31 MOTION to Dismiss for Lack of Standing. So Ordered by Judge Joseph N. Laplante.(jb)** (Entered: 10/27/2023) |
| 10/27/2023 | 60 | NOTICE OF APPEAL as to 59 Order on Motion to Dismiss,, Order on Motion for Temporary Restraining Order, by John Anthony Castro.( Filing fee $ 505, receipt number ANHDC-2437162.) [NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the Forms & Notices section of the First Circuit website at www.ca1.uscourts.gov, MUST be completed and submitted to the U.S. Court of Appeals for the First Circuit.]<br><br>**NOTICE TO COUNSEL: Counsel should register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf/. Counsel should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf** (Castro, John) (Entered: 10/27/2023) |
| 10/30/2023 | 61 | **JUDGMENT is hereby entered in accordance with re 59 Order on Motion to Dismiss, Order on Motion for Temporary Restraining Order. Signed by Daniel J. Lynch, Clerk of Court. *(Case Closed)* (ko)** (Entered: 10/30/2023) |
| 10/30/2023 | 62 | Appeal Cover Sheet as to 60 Notice of Appeal filed by John Anthony Castro. (Attachments: # 1 Appeal Transcript Order Form)(ko) (Entered: 10/30/2023) |
| 10/30/2023 | 63 | Clerk's Certificate transmitting Record on Appeal to US Court of Appeals, documents numbered 59-62 re 60 Notice of Appeal. (ko) (Entered: 10/30/2023) |
| 10/30/2023 | | Appellate Case Number: Court of Appeals #23-00416 re 60 Notice of Appeal filed by John Anthony Castro.(ko) (Entered: 10/30/2023) |
| 10/30/2023 | 64 | Transcript Order Form (Filing for Proof of Service Only) by John Anthony Castro(Castro, John) (Entered: 10/30/2023) |
| 10/30/2023 | 65 | Corrected Transcript Order Form (Fixed Appeals Case Number) by John Anthony Castro(Castro, John) (Entered: 10/30/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/31/2023 14:38:13 | | |
| **PACER Login:** | bg0034bg | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cv-00416-JL |
| **Billable Pages:** | 9 | **Cost:** | 0.90 |

**A7**

FILED - USDC -NH
2023 SEP 5 AM11:19

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| JOHN ANTHONY CASTRO <br> 12 Park Place, Mansfield, TX 76063 <br><br>     Plaintiff, <br><br> *v.* <br><br> SECRETARY OF STATE DAVID SCANLAN <br> 107 North Main Street, Room 204, Concord, NH 03301 <br><br> DONALD JOHN TRUMP <br> 1100 S. Ocean Blvd, Palm Beach, FL 33480 <br><br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. _____ <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF

# TABLE OF CONTENTS

I.   **CLAIM FOR RELIEF** ............................................................................... 3

II.  **MORE DEFINITIVE STATEMENTS AND ANALYSES** ........................................... 6

# TABLE OF AUTHORITIES

**Cases**

*aff'd*, No. 12-5335, 2013 WL 1164506 (D.C. Cir. Mar. 11, 2013) ........................................ 5

*Butler*, 2 Bart. El. Cas. 461 (1868) ............................................................................ 13

*Case of Davis*, 7 F. Cas. 63, 90, 92-94, (C.C.D. Va. 1867) (No. 3,621a) .............................. 15

*Citizens for Resp. & Ethics in Washington v. Trump*, 939 F.3d 131, 143 (2d Cir. 2019) ........ 7

*Citizens United v. FEC*, 558 U.S. 310 (2010) ................................................................. 6

*Fulani v. Brady*, 935 F.2d 1324, 1327-28 (D.C. Cir. 1991) ............................................... 5

*Fulani v. League*, 882 F.2d 621 (2d Cir. 1989) .............................................................. 6

*Gottlieb v. FEC*, 143 F.3d 618, 621 (D.C. Cir. 1998) ....................................................... 5

*Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869) ...................................................................... 14

*Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869) (No. 5,815) ...................................................... 15

*Hassan v. FEC*, 893 F. Supp. 2d 248, 255 (D.D.C. 2012) ................................................. 5

*In re Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869) ............................................................... 11

J.G. Randall, *The Civil War and Reconstruction 707* (1937) (first omission in original) ...... 11

*La. Energy and Power Auth. v. FERC*, 141 F.3d 364, 367 (D.C. Cir. 1998) ........................... 6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ......................... 7

*McConnell v. FEC*, 540 U.S. 93, 107 ........................................................................... 6

*McKee v. Young*, 2 Bart. El. Cas. 422 (1868) ............................................................... 11

*Mendoza v. Perez*, 754 F.3d 1002, 1011 (D.C. Cir. 2014) ................................................. 6

*New World Radio, Inc. v. FCC*, 294 F.3d 164, 170 (D.C. Cir. 2002) ..................................... 5

*Powell v. McCormack*, 395 U.S. 486 (1969) ................................................................ 16

*Public Citizen v. FEC*, 788 F.3d 312 (DC Cir. 2015). ....................................................... 7

*Shays v. FEC*, 414 F.3d 76, 83 (D.C. Cir. 2005) (citation omitted). ................................. 2, 5

*Shays v. FEC*, 414 F.3d 76, 87 (D.C. Cir. 2005) ......................................................... 4, 5

*Sherley v. Sebelius*, 610 F.3d 69, 72–73 (D.C. Cir. 2010) .................................................. 6

*Tanzin v. Tanvir*, 141 S. Ct. 486, 491 (2020) ................................................................ 9

*U.S. v. Powell*, 65 N.C. 709 (C.C.D.N.C. 1871) ........................................................ 9, 14

*U.S. v. Powell*, 65 N.C. 709 (C.C.D.N.C. 1871) ........................................................... 16

## <u>VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF</u>

TO THE HONORABLE COURT:

Plaintiff, JOHN ANTHONY CASTRO, appearing *pro se*, files this Complaint for Injunctive Relief against Defendants Secretary of State and Donald John Trump and alleges as follows:

### I. <u>CLAIM FOR RELIEF</u>

#### SHORT & PLAIN STATEMENT SHOWING JURISDICTION

1.     Because this cause of action arises under Section 3 of the 14th Amendment to the U.S. Constitution, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

#### PARTIES

2.     Plaintiff John Anthony Castro is a U.S. citizen and Republican primary presidential candidate (Candidate FEC ID Number P40007320) for the 2024 Presidential Election who currently resides at 12 Park Place in Mansfield, Texas.

3.     Defendant Secretary of State is a representative of the state being sued in official capacity.

4.     Defendant Donald John Trump is a U.S. citizen and Republican primary presidential candidate (Candidate FEC ID Number P80001571) for the 2024 Presidential Election who currently resides at 1100 South Ocean Boulevard in West Palm Beach, Florida.

5.     Defendant Donald John Trump is a nominal defendant.

#### VENUE

6.     Because Defendant Secretary of State operates in this district, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1).  Defendant Donald John Trump is a nominal defendant.

## SHORT & PLAIN STATEMENT SHOWING ENTITLEMENT TO RELIEF

7.     Because this state permits write-in candidates and their votes to be counted, ballot placement is not legally determinative of the legal inquiry as to whether an individual is a "candidate" under state law.  Moreover, the U.S. Constitution, Article 1, Section 4, Clause 1, also known as the Election Clause, does not apply to Presidential elections and Presidential candidate eligibility.  "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof." The unambiguous and plain language of the clause shows that it is limited to Congressional elections.  As such, it is the province of the federal judiciary to determine this federal question with zero involvement from the state.

8.     Section 3 of the 14th Amendment creates an implied cause of action for a fellow candidate to obtain relief for a political competitive injury by challenging another candidate's constitutional eligibility on the grounds that they engaged in or provided "aid or comfort" to an insurrection.

9.     On September 29, 2020, then Commander-in-Chief of the United States Armed Forces issued an executive military order to a paramilitary organization known as the Proud Boys that was led by Chairman Enrique Tarrio when he instructed them on live television to "stand back and standby."

10.     On January 6, 2021, after witnessing a large group of Trump supporters violently attacking the United States Capitol to prevent the lawful certification of the 2020 election results with the goal of unlawfully compelling Donald John Trump's inauguration on January 20, 2021 (hereafter referred to as the "January 6th Insurrection"), Defendant Donald John Trump stated on live television, "we love you, you're very special" to the

insurrectionists. Defendant Donald John Trump provided the insurrectionists with comfort in the form of words of sympathy.

11.     On January 29, 2022, Defendant Donald John Trump publicly stated, "If I run and if I win, we will treat those people from January 6 fairly. We will treat them fairly. And if it requires pardons, we will give them pardons." Defendant Donald John Trump promised the insurrectionists aid in the form of executive pardons for their criminal attempt to unlawfully overturn the 2020 election results.

12.     On May 4, 2023, Proud Boys Chairman Enrique Tarrio was convicted of Seditious Conspiracy. Sedition and Insurrection are synonymous terms. In effect, Enrique Tarrio, the individual to whom Defendant Donald John Trump issued an executive military order, was convicted of conspiracy to commit an insurrection.

13.     On June 22, 2023, Defendant Donald John Trump hosted a fundraiser for the January 6 insurrectionists thereby assisting in the acquisition of financial aid for their legal bills.

14.     Based on these instances and other acts of ratification of the acts of and sympathy with the convicted criminals of the January 6th Insurrection, Defendant Donald John Trump provided "aid or comfort" to an insurrection in violation of Section 3 of the 14th Amendment to the U.S. Constitution and is, therefore, constitutionally ineligible to pursue or hold any public office in the United States.

15.     Because Plaintiff is a fellow FEC-registered Republican primary candidate, Plaintiff will suffer an injury that may be redressed by the judiciary with injunctive relief.

### DEMAND FOR RELIEF

16.     Plaintiff John Anthony Castro asks this Court to issue an injunction preventing Defendant Secretary of State from accepting and/or processing Defendant Donald John Trump's

ballot access documentation, including, but not limited to, nominating papers and nominating petitions.

17.     Plaintiff requests any other relief he may be entitled to at law or equity.

## II.     MORE DEFINITIVE STATEMENTS AND ANALYSES

18.     The framers of Section 3 of the 14th Amendment intended the constitutional provision to be both self-executing and to provide a cause of action.  More specifically, the Union sought to punish the insurrectionary Confederacy by making their ability to hold public office unconstitutional.  The framers did this with the specific intent of removing the more politically popular insurrectionists from the ballot since they violated their oaths of allegiance to the U.S. Constitution and the use of peaceful political mechanisms to non-violently resolve disputes.

### PLAINTIFF'S STANDING TO BRING SUIT

19.     To establish standing, a plaintiff must show that it has suffered an "injury in fact caused by the challenged conduct and redressable through relief sought from the court."[1]

20.     The U.S. Court of Appeals for the D.C. Circuit has explained that political competitor standing is akin to economic competitor standing, whereby a plaintiff has standing to challenge a government action that benefits a plaintiff's competitor to the detriment of the plaintiff.[2]  Political competitor standing, however, is only available to plaintiffs who can show that they "personally compete[] in the same arena with the same party to whom the government has bestowed the assertedly illegal benefit."[3]  The D.C.

---

[1] *Shays v. FEC*, 414 F.3d 76, 83 (D.C. Cir. 2005) (citation omitted).
[2] *See Shays v. FEC*, 414 F.3d 76, 87 (D.C. Cir. 2005).
[3] *Gottlieb v. FEC*, 143 F.3d 618, 621 (D.C. Cir. 1998) (internal quotation marks omitted); *see also Fulani v. Brady*, 935 F.2d 1324, 1327-28 (D.C. Cir. 1991) (holding that presidential candidate did not have "competitor standing" to

Circuit has also held that if a plaintiff can show he is a "direct and current competitor," then competitor standing must be recognized as a matter of established case law.[4]  Courts have recognized that a "candidate—as opposed to individual voters and political action groups—would theoretically have standing based upon a 'competitive injury'" if he could show that "he personally competes in the same arena with the same party."[5]

21.     John Anthony Castro registered as a candidate with the Federal Election Commission and is directly and currently competing against Donald J. Trump for the Republican nomination for the Presidency of the United States.  As such, Plaintiff meets all of the criteria for standing.

22.     A fellow primary candidate, whose injury would be competitive injury in the form of a diminution of votes and/or fundraising, has judicial standing to sue a candidate he or she believes is ineligible to hold office.[6]

23.     Plaintiff will suffer a concrete competitive injury if the constitutionally ineligible Defendant Donald John Trump is permitted to appear on the ballot.[7]  If the judiciary permits Defendant Donald John Trump to appear on the ballot, this will siphon off millions of votes to a constitutionally ineligible candidate in violation of Section 3 of the 14th Amendment to the U.S. Constitution.  There is no question this political competitive injury is traceable to the actual competitor, Donald J. Trump.

24.     Plaintiff understands that the competitor standing doctrine recognizes "parties

---

challenge CPD's tax-exempt status where the candidate was not eligible for tax-exempt status); *Hassan v. FEC*, 893 F. Supp. 2d 248, 255 (D.D.C. 2012), *aff'd*, No. 12-5335, 2013 WL 1164506 (D.C. Cir. Mar. 11, 2013) ("Plaintiff cannot show that he personally competes in the same arena with candidates who receive funding under the Fund Act because he has not shown that he is or imminently will be eligible for that funding.").
[4] *New World Radio, Inc. v. FCC*, 294 F.3d 164, 170 (D.C. Cir. 2002)
[5] *Hassan v. FEC*, 893 F. Supp. 2d 248, 255 n.6 (D.D.C. 2012) (emphases added) (quoting *Gottlieb*, 143 F.3d at 621)
[6] *See Fulani v. League*, 882 F.2d 621 (2d Cir. 1989).
[7] *See McConnell v. FEC*, 540 U.S. 93, 107, *overruled on other grounds by Citizens United v. FEC*, 558 U.S. 310 (2010).

suffer constitutional injury in fact when agencies... otherwise allow increased competition."[8] In accordance with the D.C. Circuit's ruling in *Mendoza v. Perez*, Plaintiff will suffer a constitutional injury in fact sufficient to confer Article III standing.[9]

25.    When Section 3 of the 14th Amendment was adopted, it was specifically designed to ensure that non-insurrectionists did not have to politically compete with the more popular pro-insurrectionist politicians in the South.    It was specifically designed to remove overwhelming popular pro-insurrectionists from the ballot.    As such, Plaintiff is not simply within the zone of interests; Plaintiff is the precise type of person Section 3 of the 14th Amendment sought to protect.

26.    Although the U.S. Supreme Court arguably abolished the doctrine of prudential standing in *Lexmark*,[10] Plaintiff satisfies prudential standing in that his injury is particularized and concrete, he satisfies Article III standing, and he is within the zone of interests sought to be protected by Section 3 of the 14th Amendment to the U.S. Constitution.[11]

27.    Allowing Defendant Donald John Trump to appear on the ballot would constitute unlawful state action in violation of Section 3 of the 14th Amendment of the United States Constitution.[12]

### RELEVANT LAW & LEGAL ANALYSIS

28.    Defendant Donald John Trump is a declared candidate for the Republican nomination for the Presidency of the United States for the 2024 election season.

---

[8] *See Mendoza v. Perez*, 754 F.3d 1002, 1011 (D.C. Cir. 2014) (citing to *La. Energy and Power Auth. v. FERC*, 141 F.3d 364, 367 (D.C. Cir. 1998); *Sherley v. Sebelius*, 610 F.3d 69, 72–73 (D.C. Cir. 2010)).
[9] *Mendoza v. Perez*, 754 F.3d 1002 (D.C. Cir. 2014)
[10] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)
[11] *Public Citizen v. FEC*, 788 F.3d 312 (DC Cir. 2015).
[12] *See Citizens for Resp. & Ethics in Washington v. Trump*, 939 F.3d 131, 143 (2d Cir. 2019).

29.     Article II, Section 1 of the United States Constitution states that any person who enters the Office of the President of the United States of America shall take the following Oath or Affirmation: "I do solemnly swear (or affirm) that I will faithfully execute the Office of President of the United States, and will to the best of my ability, preserve, protect and defend the Constitution of the United States."

30.     Since the founding of our nation, those who assume civil or military positions under federal or state law are required to take an oath and thereby state that they will defend the Constitution of the United States against all enemies, foreign and *domestic.*

31.     Taking the side of a foreign enemy is covered by the Treason Clause in Article III, Section 3, Clause 1 of the United States Constitution. It states: "Treason against the United States, shall consist only in levying War against them, or in adhering to their Enemies, giving them Aid *and* Comfort."

32.     The Anti-Insurrection Qualification Clause in Section 3 of the 14th Amendment of the United States Constitution covers taking the side of a *domestic* enemy.

### Anti-Insurrection Qualification Clause

33.     Section 3 of the 14th Amendment of the United States Constitution is best described as the Anti-Insurrection Qualification Clause. It establishes that, in order to be eligible to hold any office in the United States, a person must have never violated an Oath of Office, which always includes a pledge to support the United States Constitution.

34.     The Anti-Insurrection Qualification Clause in Section 3 of the 14th Amendment of the United States Constitution states that "[n]o person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of

**A17**

Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have *engaged in* insurrection or rebellion against the same, or given *aid or comfort* to the enemies thereof. But Congress may by a vote of two-thirds of *each* House, remove such disability."

### Amendment XIV, Section 3, Clause 1

35.     Clause 1 of Section 3 of the 14th Amendment of the United States Constitution reads: "No person shall... hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath... to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof."

36.     The word "engaged" for the purpose of Section 3 of the 14th Amendment "implies, and was intended to imply, a voluntary effort to assist the Insurrection... And further, the... action must spring from [a] want of sympathy with the insurrectionary movement."[13]

37.     As the U.S. Supreme Court has articulated, "[w]ithout a statutory definition, [one must] turn to the phrase's plain meaning."[14]

38.     Merriam-Webster's Dictionary defines an "insurrection" to be "an act or instance of revolting against civil authority or an established government." An instance is "a step, stage, or situation viewed as part of a process or series of events." Participation in the early or late stages of an event still constitute "an instance." This would apply to the

---

[13] *See U.S. v. Powell*, 65 N.C. 709 (C.C.D.N.C. 1871).
[14] *See Tanzin v. Tanvir*, 141 S. Ct. 486, 491 (2020) (thereafter referencing Merriam-Webster's Collegiate Dictionary for the plain meaning of a term).

wife of United States Supreme Court Justice Clarence Thomas, Virginia Thomas, requiring Justice Thomas' mandatory recusal under 28 U.S.C. § 455, which Plaintiff asserts herein to preserve for appeal.

39.     Of the term "revolting," Merriam-Webster says "to renounce... subjection." Renounce is to "refuse to follow, obey, or recognize." Subjection is being "placed under authority." Thus, an insurrection include all stages of the event wherein at *at least one stage* there was a refusal to recognize the authority of an established governmental body, such as the United States Senate and its ceremonial reading of the certified election results and engaging in violence to undermine *both* that process and the United States Constitution.

40.     Defendant Donald John Trump summoned the mob to our nation's Capitol, organized and assembled the mob, allowed weapons in the crowd by ordering security to let them pass, radicalized the mob with incendiary rhetoric, ordered them to march to the Capitol, refused to make public statements to denounce the violence and call off the mob for 187 minutes, and when it became clear that the mob had failed to use violence to prevent the certification of the election results, then and only then, did former President Donald J. Trump order the mob to go home, but not before saying "we love you" and calling the violent mob "very special" after they had violently attacked the United States Capitol.  All of these instances were part of the overall January 6 Insurrection in which Donald J. Trump was directly and irrefutably involved.

41.     Clause 1 of Section 3 of the 14th Amendment to the United States Constitution declares that anyone deemed to have engaged in insurrection are "enemies." However, less focus is given to the fact that Section 3 similarly disqualifies those who have given "aid or comfort" to insurrectionists.

42.      "Aid or comfort may be given to an enemy by words of encouragement, or the

expression of an opinion, from one occupying an influential position."[15]

43.     There is a distinction between domestic "aid or comfort" to insurrectionists and foreign "aid and comfort" to invaders. This was highlighted by President Andrew Johnson's comments to a New Hampshire delegation that "Treason is a crime and must be punished as a crime… It must not be excused as an unsuccessful rebellion."[16]  It was later reasoned that if "insurrection and levying war was accepted as treason, hundreds of thousands of men, most of them youths, were guilty of the offense that carried a mandatory sentence of death by hanging."[17]  "To the Congress, the old law was unworkable for the [Civil War]… [thus, on] July 31, 1861, Congress passed a law which provided that anyone found guilty of conspiracy to overthrow the United States Government or to interfere with the operation of its laws shall be guilty of a high crime."[18]

44.     "The offenses for which exclusion from office is denounced are not merely engaging in insurrection… but the giving of aid or comfort to their enemies."[19]  In that case, Judge Chase, whom himself was balancing his need for impartiality with his desire to pursue the Presidency, insinuated that the inclusion of the "aid or comfort" disqualifier in Section 3 of the 14th Amendment applied only in the context of a foreign invasion or war.  Judge Chase was an abolitionist but still an ambitious and aspiring politician who considered campaigning for the Presidency and did not want to upset the South by declaring that the reference in Section 3 to "enemies" applied to the insurrectionists and rebels that fought for the Confederacy.  Giving "aid and comfort" to foreign enemies was

---

[15] *McKee v. Young*, 2 Bart. El. Cas. 422 (1868).

[16] *See* J.G. Randall, *The Civil War and Reconstruction 707* (1937) (first omission in original).

[17] *See* Jonathan Truman Dorris, *Pardon and Amnesty Under Lincoln and Johnson – The Restoration of the Confederates to Their Rights and Privileges 1861-1898*, at 4 (1953).

[18] *See* C. Ellen Connally, *The Use of the Fourteenth Amendment by Salmon P. Chase in the Trial of Jefferson Davis*, 42 Akron L. Rev. 1165, 1165 (2009).

[19] *In re Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869).

already covered by the Treason Clause in Article III, Section 3, Clause 1 of the United States Constitution. Section 3 of the 14th Amendment, being a post-civil war amendment, was referring solely to *domestic* enemies that engaged in insurrection or rebellion against the United States and had previously given an oath to support the Constitution; thereby only targeting higher-level officials that are required to take oaths.

45.     This is supported by the fact that the "final version of Section 3 reflected a refinement of the radicals' philosophy of formal equality. Opposition to the broader House proposal arose in part from the widespread view that many Confederate soldiers, even if not conscripted, had little real choice but to join the Southern cause. In that light, the final version of Section 3 was not less punitive so much as it was more targeted. Whereas the House version promised to affect the rank and file, the Senate version would reach only the senior leadership. Moreover, the Senate version was, in important ways, harsher than the House version. The House measure would have sunset in 1870 and applied only to federal elections. By contrast, the final version [of Section 3] permanently rendered virtually the entire political leadership of the South ineligible for office, both state and federal. The final version of Section 3 thus reflected a nuanced view: as compared with felons, Confederate officials were more deserving of punishment and Southern foot soldiers were less so."[20]

46.     Every federal, state, and local public official that offered words of encouragement, show of sympathy, or expression of support for or defense of, the January 6 Insurrection must, pursuant to Section 3 of the 14th Amendment to the United States Constitution, be declared ineligible to hold any civil or military office in the United States at the federal, state, or local level.

---

[20] *See* Richard M. Re, Christopher M. Re, *Voting and Vice: Criminal Disenfranchisement and the Reconstruction Amendments*, 121 Yale L.J. 1584, 1622–23 (2012); *also see* Eric Foner, *Reconstruction: America's Unfinished Revolution 1863-1877*, at 259 (1988).

### Amendment XIV, Section 3, Clause 2

47.    Clause 2 of Section 3 of the 14th Amendment to the United States Constitution reads: "Congress may, by a vote of two-third of *each* House, remove such disability." (*Emphasis added*).

48.    Plaintiff emphasizes the Constitution's use of the term "each" since there appears to be widespread misconception that only the U.S. House of Representatives is needed to remove the disqualifying disability, which stems from the 1868 case of *Butler*.[21] Therefore, if 290 members of the U.S. House of Representatives and 67 members of the U.S. Senate vote to remove the disqualifying disability, a person otherwise ineligible to hold office under Section 3 of the 14th Amendment could hold office. In today's political climate, this is impossible.

49.    It is also critical to anticipatorily highlight that a Presidential pardon does not remove this disability since the United States Constitution provides that only Congress may lift the disability. This is contrary to an old, outdated, and clearly biased Attorney General Opinion from Southern Confederate Augustus Garland that attempted to limit its scope; it inexplicably ignored the term "each" and suggested a presidential pardon could remove the qualification disability notwithstanding the Constitution's clear and exclusive reservation and delegation of that power solely to Congress.[22]

### Scope of Amendment XIV

50.    The disqualification applies to both civil and military positions at both the federal and state level, which has been judicially determined to even include a local

---

[21] *See Butler*, 2 Bart. El. Cas. 461 (1868).
[22] *See Lawton's Case*, 18 Op.Atty.Gen. 149 (1885).

constable position.[23]

51.    "There can be no office which is not either legislative, judicial, or executive [covered by Section 3 of the 14th Amendment because]… it embraces every office… [and] it was passed to punish those high in authority… for their bad faith toward the government they had sworn [in their oath of office] to support."[24]

52.    "The amendment applies to all the states of the Union, to all offices under the United States or under any state, and to all persons in the category of prohibition, and for all time present and future."[25]  It is a lifetime ban from public office.

53.    As mentioned before, Section 3 of the 14th Amendment is merely an Anti-Insurrection Qualification Clause. It was not intended to be a punishment for someone who engaged in an insurrection or gave aid or comfort to insurrectionists any more than the Natural Born Citizen qualification clause is punitive. If you are not a natural born citizen of the United States, you cannot hold the Office of the Presidency. If you violated your oath of office by engaging in an insurrection, you cannot hold the Office of the Presidency. It's a mere qualification for the office.

### Enforcement of Amendment XIV

54.    In an attempt to neutralize Section 3 of the 14th Amendment, some commentators dating as far back as 1868 developed the legal theory that this provision of the United States Constitution was unenforceable without enabling legislation. Such a suggestion is legally baseless, patently frivolous, and wholly without merit.

55.    In fact, it was the President of the Confederacy, Jefferson Davis, who, in 1868,

---

[23] *See U.S. v. Powell*, 65 N.C. 709 (C.C.D.N.C. 1871).
[24] *Id.*
[25] *In re Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869).

contended that Section 3 *was* self-executing and, therefore, barred his criminal trial for treason. *See Gerard N. Magliocca, Amnesty and Section Three of the Fourteenth Amendment*, 36 Const. Comment. 87 (2021). Moreover, it was Judge Chase who agreed in Jefferson Davis' criminal trial that Section 3 was self-executing; thereby implicating the prohibition against Double Jeopardy.[26] Shortly thereafter, however, Justice Chase reversed his position and declared that Section 3 was not self-executing when a black criminal defendant challenged his conviction on the grounds that the judge presiding over his trial fought for the Confederacy and was, therefore, ineligible to preside over his trial rendering his guilty verdict null and void.[27] Following these irreconcilable rulings from a clearly biased Justice Chase who could not make up his mind, Congress decided to act on its own by enacting Section 3 enforcement statutes and, shortly thereafter, federal prosecutors began bringing actions to oust ineligible officials, including half of the Tennessee Supreme Court.[28] Congress' enactment of legislation was not an admission that Section 3 was not self-executing; it was to avoid the lunacy of a clearly biased, conflicted, and politically active Chief Justice that could not perform the functions of his office in a neutral, intellectual, fair, and impartial manner.

56.     In 1871, Amos Powell was indicted, via an enabling statute making it a *crime* to knowingly violate Section 3 of the 14th Amendment, "for accepting the office of sheriff when disqualified from holding office by the 14th Amendment... [and the] indictment charged that the defendant knowingly accepted office under the state of North

---

[26] *See Case of Davis*, 7 F. Cas. 63, 90, 92-94, (C.C.D. Va. 1867) (No. 3,621a) (describing Davis' argument and the Government's response); *Id.* at 102 (noting the Chief Justice's view).

[27] *In re Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869) (No. 5,815).

[28] *See Act of May 31*, 1870 (First Ku Klux Klan Act), ch. 114, § 14, 16 Stat. 140, 143; id. at § 15 (imposing criminal penalties for knowing Section Three violations); Sam D. Elliott, When the United States Attorney Sued to Remove Half the Tennessee Supreme Court: The Quo Warranto Cases of 1870, 49 Tenn B.J. 20 (2013).

Carolina, to which he was ineligible under the provisions of the 3d section of the 14th Amendment."[29]   In other words, to attach criminal penalties, enabling legislation is absolutely required since Section 3 of the 14th Amendment makes no reference to criminal penalties.

57.     Congress has jurisdiction to expel or exclude its own members that it determines have violated Section 3 of the 14th Amendment.[30]  However, it is unclear whether Congress can unilaterally impose said disability on the Executive Branch since that could be deemed an encroachment on a separate branch of the federal government. Nevertheless, a Congressional finding of liability would certainly aid the judiciary's fact-finding mission.

58.     Historically, the neutral finder of fact and arbiter of law has been the judiciary. Consistent with our principles of federalism and separation of powers, it is more likely that the judiciary and, in particular, the United States Supreme Court would be the only authority that the drafters of Section 3 could have possibly envisioned as being the most competent and legitimate body to determine whether an individual is ineligible under the Anti-Insurrection Qualification Clause.

Respectfully submitted,

September 1, 2023.                    By      /s/John Anthony Castro

JOHN ANTHONY CASTRO
12 Park Place
Mansfield, TX 76063
Tel. (202) 594 - 4344
J.Castro@JohnCastro.com
**PLAINTIFF *PRO SE***

---

[29] *See U.S. v. Powell*, 65 N.C. 709 (C.C.D.N.C. 1871).
[30] *See Powell v. McCormack*, 395 U.S. 486 (1969).

## VERIFICATION

I, John Anthony Castro, declare as follows:

1. I am the plaintiff in the present case, a U.S. citizen, and an FEC-registered Republican primary presidential candidate (Candidate FEC ID Number P40007320) for the 2024 Presidential Election.

2. I intend to either appear on the 2024 Republican primary ballot in this state or to file documentation to be a formally recognized write-in candidate in both the primary and general elections. As such, I will maintain "standing" throughout the course of this litigation.

3. I have personal first-hand knowledge of all of the factual matters set forth in this document, and, if called upon to testify or give oral arguments, I would competently do so.

4. Pursuant to 28 U.S.C. § 1746 and state, I verify under penalty of perjury that the entirety of the foregoing document is true and correct.

Executed on September 1, 2023.

/s/ John Anthony Castro
John Anthony Castro



PRIORITY MAIL EXPRESS

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

PS 1000 1000006

3F July 2013    OD: 12.5 x 9.5

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

* Money Back Guarantee to U.S., select APO/FPO/DPO, and select International
destinations. See DMM and IMM at pe.usps.com for complete details.
† Money Back Guarantee for U.S. destinations only.



UNITED STATES
POSTAL SERVICE

| US POSTAGE & FEES PAID | 062S0014950540 |
| PRIORITY MAIL EXPRESS | 9800532 |
| ZONE 7 FLAT-RATE ENVELOPE | FROM 75240 |
| ComBasPrice | |

stamps
endicia
09/01/2023

## PRIORITY MAIL EXPRESS 1-DAY™

 John Castro
Castro & Co.
13155 Noel Road, Suite 900
Dallas TX 75240-6882

**0007**
(202) 594-4344

SIGNATURE REQUIRED

SHIP
TO:   U.S. District Court Clerk
55 Pleasant St Rm 110
Concord NH 03301-3941

USPS ADULT SIG 21 OR OLDER



9472 4112 0620 3050 8795 09

PRIORITY MAIL EXPRESS
POSTAGE REQUIRED

A27

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of New Hampshire

| | |
|---|---|
| JOHN ANTHONY CASTRO | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. |
| SECRETARY OF STATE DAVID SCANLAN | ) |
| and | ) |
| DONALD JOHN TRUMP | ) |
| | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  SECRETARY OF STATE DAVID SCANLAN
107 North Main Street
Room 204
Concord, NH 03301

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  JOHN ANTHONY CASTRO
12 Park Place
Mansfield, TX 76063

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____09/01/2023_____                    _____
                                                          *Signature of Clerk or Deputy Clerk*

A28

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*

was received by me on *(date)*                              .

☐ I personally served the summons on the individual at *(place)*

on *(date)*                              ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*

, a person of suitable age and discretion who resides there,

on *(date)*                     , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)*                              , who is

designated by law to accept service of process on behalf of *(name of organization)*

on *(date)*                              ; or

☐ I returned the summons unexecuted because                              ; or

☐ Other *(specify):*


My fees are $                 for travel and $                 for services, for a total of $      0.00      .


I declare under penalty of perjury that this information is true.


Date:

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

A29

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of New Hampshire

| | | |
|---|---|---|
| JOHN ANTHONY CASTRO | ) | |
| | ) | |
| | ) | |
| | ) | |
| _Plaintiff(s)_ | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| SECRETARY OF STATE DAVID SCANLAN | ) | |
| and | ) | |
| DONALD JOHN TRUMP | ) | |
| | ) | |
| _Defendant(s)_ | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  DONALD JOHN TRUMP
1100 S. Ocean Boulevard
Palm Beach, FL 33480

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  JOHN ANTHONY CASTRO
12 Park Place
Mansfield, TX 76063

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____09/01/2023_____          _____
                                         *Signature of Clerk or Deputy Clerk*

**A30**

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ ᵢᵣ _____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

A31

JS 44 (Rev. 04/21)

FILED - USDC -NH
2023 SEP 5 AM 11:19

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| JOHN ANTHONY CASTRO | SECRETARY OF STATE DAVID SCANLAN and DONALD JOHN TRUMP |
| **(b)** County of Residence of First Listed Plaintiff  **Tarrant County, TX** <br> *(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant  **Merrimack County, NH** <br> *(IN U.S. PLAINTIFF CASES ONLY)* <br> NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF <br> THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* <br><br> Pro Se | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government <br> Plaintiff | ☒ 3  Federal Question <br> *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government <br> Defendant | ☐ 4  Diversity <br> *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place <br> of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place <br> of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a <br> Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment <br> & Enforcement of Judgment <br> ☐ 151 Medicare Act <br> ☐ 152 Recovery of Defaulted <br> Student Loans <br> (Excludes Veterans) <br> ☐ 153 Recovery of Overpayment <br> of Veteran's Benefits <br> ☐ 160 Stockholders' Suits <br> ☐ 190 Other Contract <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | **PERSONAL INJURY** <br> ☐ 310 Airplane <br> ☐ 315 Airplane Product <br> Liability <br> ☐ 320 Assault, Libel & <br> Slander <br> ☐ 330 Federal Employers' <br> Liability <br> ☐ 340 Marine <br> ☐ 345 Marine Product <br> Liability <br> ☐ 350 Motor Vehicle <br> ☐ 355 Motor Vehicle <br> Product Liability <br> ☐ 360 Other Personal <br> Injury <br> ☐ 362 Personal Injury - <br> Medical Malpractice | **PERSONAL INJURY** <br> ☐ 365 Personal Injury - <br> Product Liability <br> ☐ 367 Health Care/ <br> Pharmaceutical <br> Personal Injury <br> Product Liability <br> ☐ 368 Asbestos Personal <br> Injury Product <br> Liability <br> **PERSONAL PROPERTY** <br> ☐ 370 Other Fraud <br> ☐ 371 Truth in Lending <br> ☐ 380 Other Personal <br> Property Damage <br> ☐ 385 Property Damage <br> Product Liability | ☐ 625 Drug Related Seizure <br> of Property 21 USC 881 <br> ☐ 690 Other | ☐ 422 Appeal 28 USC 158 <br> ☐ 423 Withdrawal <br> 28 USC 157 <br> **INTELLECTUAL** <br> **PROPERTY RIGHTS** <br> ☐ 820 Copyrights <br> ☐ 830 Patent <br> ☐ 835 Patent - Abbreviated <br> New Drug Application <br> ☐ 840 Trademark <br> ☐ 880 Defend Trade Secrets <br> Act of 2016 | ☐ 375 False Claims Act <br> ☐ 376 Qui Tam (31 USC <br> 3729(a)) <br> ☐ 400 State Reapportionment <br> ☐ 410 Antitrust <br> ☐ 430 Banks and Banking <br> ☐ 450 Commerce <br> ☐ 460 Deportation <br> ☐ 470 Racketeer Influenced and <br> Corrupt Organizations <br> ☐ 480 Consumer Credit <br> (15 USC 1681 or 1692) <br> ☐ 485 Telephone Consumer <br> Protection Act <br> ☐ 490 Cable/Sat TV <br> ☐ 850 Securities/Commodities/ <br> Exchange |
| **REAL PROPERTY** <br> ☐ 210 Land Condemnation <br> ☐ 220 Foreclosure <br> ☐ 230 Rent Lease & Ejectment <br> ☐ 240 Torts to Land <br> ☐ 245 Tort Product Liability <br> ☐ 290 All Other Real Property | **CIVIL RIGHTS** <br> ☐ 440 Other Civil Rights <br> ☐ 441 Voting <br> ☐ 442 Employment <br> ☐ 443 Housing/ <br> Accommodations <br> ☐ 445 Amer. w/Disabilities - <br> Employment <br> ☐ 446 Amer. w/Disabilities - <br> Other <br> ☐ 448 Education | **PRISONER PETITIONS** <br> **Habeas Corpus:** <br> ☐ 463 Alien Detainee <br> ☐ 510 Motions to Vacate <br> Sentence <br> ☐ 530 General <br> ☐ 535 Death Penalty <br> **Other:** <br> ☐ 540 Mandamus & Other <br> ☐ 550 Civil Rights <br> ☐ 555 Prison Condition <br> ☐ 560 Civil Detainee - <br> Conditions of <br> Confinement | **LABOR** <br> ☐ 710 Fair Labor Standards <br> Act <br> ☐ 720 Labor/Management <br> Relations <br> ☐ 740 Railway Labor Act <br> ☐ 751 Family and Medical <br> Leave Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Employee Retirement <br> Income Security Act <br><br> **IMMIGRATION** <br> ☐ 462 Naturalization Application <br> ☐ 465 Other Immigration <br> Actions | **SOCIAL SECURITY** <br> ☐ 861 HIA (1395ff) <br> ☐ 862 Black Lung (923) <br> ☐ 863 DIWC/DIWW (405(g)) <br> ☐ 864 SSID Title XVI <br> ☐ 865 RSI (405(g)) <br> **FEDERAL TAX SUITS** <br> ☐ 870 Taxes (U.S. Plaintiff <br> or Defendant) <br> ☐ 871 IRS—Third Party <br> 26 USC 7609 | ☐ 890 Other Statutory Actions <br> ☐ 891 Agricultural Acts <br> ☐ 893 Environmental Matters <br> ☐ 895 Freedom of Information <br> Act <br> ☐ 896 Arbitration <br> ☐ 899 Administrative Procedure <br> Act/Review or Appeal of <br> Agency Decision <br> ☐ 950 Constitutionality of <br> State Statutes |

(Note: 890 Other Statutory Actions is marked with ☒)

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original <br> Proceeding | ☐ 2 Removed from <br> State Court | ☐ 3 Remanded from <br> Appellate Court | ☐ 4 Reinstated or <br> Reopened | ☐ 5 Transferred from <br> Another District <br> *(specify)* | ☐ 6 Multidistrict <br> Litigation - <br> Transfer | ☐ 8 Multidistrict <br> Litigation - <br> Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
U.S. Const. amend. XIV, § 3

Brief description of cause:
Plaintiff is experiencing a political competitive injury traceable to a constitutionally disqualified individual who aided and comforted an insurrection.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $  0

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____  DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| Sep 1, 2023 | /s/ John Anthony Castro |

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

A32

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| JOHN ANTHONY CASTRO | ) | |
| 12 Park Place, Mansfield, TX 76063 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| SECRETARY OF STATE DAVID | ) | Case No. 1:23-cv-00416-JL-TSM |
| SCANLAN | ) | |
| 107 North Main Street, Room 204, Concord, | ) | |
| NH 03301 | ) | |
| | ) | |
| DONALD JOHN TRUMP | ) | |
| 1100 S. Ocean Blvd, Palm Beach, FL 33480 | ) | |
| | ) | |
| Defendants. | ) | |

**OBJECTION AND OPPOSITION TO PRO HAC VICE ADMISSION OF DAVID**
**WARRINGTON**

Plaintiff John Anthony Castro, pro se, submits this Objection and Opposition to Pro Hac

Vice Admission of David Warrington and states as follows:

The U.S. Court of Appeals for the 1st Circuit has held that it is "appropriate… for the court

to consider the effect of the attorney's past actions (especially past ethical violations) on the

administration of justice within the court." *Panzardi-Alvarez v. U.S.*, 879 F.2d 975, 980 (1st Cir.

1989).

In his motion for *pro hac vice* admission, Mr. Warrington stated: "My only involvement

with any of the entities discussed in the ProPublica article is as a lawyer. ***I do not have, and have***

***never had, any rule whatsoever in their operations***." *See* ECF 16.

1

If Mr. Warrington submits an affidavit or declaration pursuant to 28 U.S.C. § 1746 re-confirming that statement under criminal penalty of perjury, Plaintiff will withdraw his objection to *pro hac vice* admission.

## REQUESTED RELIEF

For the foregoing reason, this Honorable Court should not grant pro hac vice admission until Mr. Warrington confirms subject criminal penalty of perjury that we did not have and never has had any role in the operations of any entities referenced in the ProPublica article.

Dated: September 22, 2023.

Respectfully submitted,

By: */s/ John Anthony Castro*
John Anthony Castro
12 Park Place
Mansfield, TX  76063
(202) 594 – 4344
J.Castro@JohnCastro.com
**Plaintiff *Pro Se***

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was electronically filed with the Court via CM/ECG on  September 22, 2023 and that all parties are registered users of said system and will be electronically notified.

*/s/ John Anthony Castro*
John Anthony Castro

2

**A34**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

JOHN ANTHONY CASTRO,

                Plaintiff,

v.                                          No. 1:23-cv-00416-JL-TSM

SECRETARY OF STATE DAVID SCANLAN and
DONALD JOHN TRUMP,

                Defendants.

**DEFENDANT'S RULE 12(B)(1) MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION**

      Plaintiff's request for injunctive relief is meritless. But before even considering the substance of Plaintiff's claims, the Court should dismiss them for lack of subject-matter jurisdiction. President Trump has reviewed Secretary of State Scanlan's thoughtful and well-considered pleading demonstrating that Plaintiff lacks standing. He will not repeat the Secretary's arguments, which he joins in, but rather writes separately to bring emphasis to other aspects of Plaintiff's lack of standing.

      In addition to Plaintiff's lack of standing, this Court lacks subject-matter jurisdiction for two other reasons. First, Plaintiff's claim presents a nonjusticiable political question. As many courts have held, challenges to presidential qualifications are solely within the province of the Electoral College and Congress, not state elections officials or Article III courts. Second, as Chief Justice Chase held just two years after its enactment, the disqualification provision of Section Three of the Fourteenth Amendment is not self-executing. Because Congress has passed no law authorizing individuals such as Plaintiff to raise claims under that provision in federal court, this

Court lacks jurisdiction for that reason as well. Accordingly, this Court should dismiss this case at the threshold.

## ARGUMENT

### I.     Legal Standards.

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert the defense of lack of subject-matter jurisdiction via motion. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Peterson v. U.S.*, 774 F.Supp.2d 418, 420-21 (D.N.H. 2011) (citing *United States v. Coloian*, 480 F.3d 47, 50 (1st Cir. 2007). "'It is to be presumed that a cause [of action] lies outside this limited jurisdiction,' and the burden lies with the plaintiff, as the party invoking the court's jurisdiction, to establish that it extends to his claims." *Id.* at 421 (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).

### II.    Article III courts lack power to decide the nonjusticiable political questions presented here.

Our Constitution commits to Congress and the Electoral College exclusive power to determine presidential qualifications and whether a candidate can serve as President. Courts cannot decide the issue at the heart of this case. Federal and state courts presented with similar cases challenging the qualifications of presidential candidates have uniformly held that they present nonjusticiable political questions reserved for those entities. This Court should do likewise.

Political questions are nonjusticiable and are therefore not cases or controversies as defined

by Article III. *Massachusetts v. E.P.A.*, 549 U.S. 497, 516 (2007). The Supreme Court set out

broad categories that should be considered nonjusticiable political questions in *Baker v. Carr*, 369

U.S. 186, 217 (1962):

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate
> political department; [2] a lack of judicially discoverable and manageable standards
> for resolving it; [3] the impossibility of deciding without an initial policy
> determination of a kind clearly for nonjudicial discretion; [4] the impossibility of a
> court's undertaking independent resolution without expressing lack of the respect
> due coordinate branches of government; [5] an unusual need for unquestioning
> adherence to a political decision already made; [and 6] the potentiality of
> embarrassment from multifarious pronouncements by various departments on one
> question.

Numerous courts have held that similar challenges to the qualifications of presidential

candidates present nonjusticiable political questions. Surrounding the 2008 and 2012 General

Elections, a spate of lawsuits was filed either asking state elections officials to ensure the

qualifications of Barack Obama and/or John McCain or challenging their qualifications outright.

The Third Circuit, in an order issued during one such challenge, stated that this was a political

question not within the province of the judiciary. *See Berg v. Obama*, 586 F.3d 234, 238 (3d Cir.

2009) (noting "Berg's apparent lack of standing and also stating that Berg's lawsuit seemed to

present a non-justiciable political question."). Multiple district courts have also ruled that lawsuits

challenging presidential qualifications presented nonjusticiable political questions. For example,

in *Robinson v. Bowen*, 567 F. Supp. 2d 1144 (N.D. Cal. 2008), a case brought before the 2008

election seeking to remove Senator McCain from the California ballot on grounds that he did not

qualify as a "natural-born citizen" within the meaning of Article II of the Constitution, Judge Alsup

explained why, even if the plaintiff's lack of standing could be cured, the case was due to be

dismissed in its entirety:

It is clear that mechanisms exist under the Twelfth Amendment and 3 U.S.C. § 15 for any challenge to any candidate to be ventilated when electoral votes are counted, and that the Twentieth Amendment provides guidance regarding how to proceed if a president elect shall have failed to qualify. Issues regarding qualifications for president are quintessentially suited to the foregoing process. Arguments concerning qualifications or lack thereof can be laid before the voting public before the election and, once the election is over, can be raised as objections as the electoral votes are counted in Congress. The members of the Senate and the House of Representatives are well qualified to adjudicate any objections to ballots for allegedly unqualified candidates. Therefore, this order holds that the challenge presented by plaintiff is committed under the Constitution to the electors and the legislative branch, at least in the first instance. Judicial review—if any—should occur only after the electoral and Congressional processes have run their course.

*Id.* at 1147.

The scholarly opinion in *Grinols v. Electoral College*, No. 2:12–cv–02997–MCE–DAD, 2013 WL 2294885, at *5-7 (E.D. Cal. May 23, 2013) (stating "the Constitution assigns to Congress, and not to federal courts, the responsibility of determining whether a person is qualified to serve as President of the United States. As such, the question presented by Plaintiffs in this case—whether President Obama may legitimately run for office and serve as President—is a political question that the Court may not answer"), is also highly instructive. *Grinols* dismissed a challenge to President Obama's qualifications as a "natural-born citizen" after finding it presented a nonjusticiable political question and violated the separation of powers because the Constitution expressly entrusted the issue of presidential qualifications and removal from office to the legislative branch.[1] Plaintiff will undoubtedly attempt to distinguish this opinion on grounds that it dealt with a plaintiff seeking removal of a sitting president from office, rather than a challenge

---

[1] So, too, did *Kerchner v. Obama*, 669 F. Supp. 2d 477, 483 n.5 (D.N.J. 2009) (rejecting challenge to President Obama's qualifications because, among other things, the claim was "barred under the 'political question doctrine' as a question demonstrably committed to a coordinate political department"). The court observed that "[t]he Constitution commits the selection of the President to the Electoral College in Article II, Section 1, as amended by the Twelfth Amendment and the Twentieth Amendment, Section 3" and that "[n]one of these provisions evince an intention for judicial reviewability of these political choices." *Id.*

to the election of a supposedly disqualified president.  But an earlier opinion in *Grinols* refused to grant a temporary restraining order to prevent President Obama's 2012 re-election on the same "birther" theory because "numerous articles and amendments of the Constitution together make clear that the issue of the President's qualifications and his removal from office are textually committed to the legislative branch, and not the Courts."  *Grinols v. Electoral Coll.*, No. 12-CV-02997-MCE-DAD, 2013 WL 211135, at *4 (E.D. Cal. Jan. 16, 2013).  As a result:

> These various articles and amendments of the Constitution make it clear that the Constitution assigns to Congress, and not the Courts, the responsibility of determining whether a person is qualified to serve as President. As such, the question presented by Plaintiffs in this case—whether President Obama may legitimately run for office and serve as President—is a political question that the Court may not answer. If the Court were to answer that question, the Court would "[interfere] in a political matter that is principally within the dominion of another branch of government." This Court, or any other federal court, cannot reach a decision on the merits of a political question because doing so would ignore the Constitutional limits imposed on the courts. Accordingly, Plaintiffs ask the Court to answer a question the Constitution bars the Court from answering.

*Id.* (internal citation omitted).

Similarly, in *Taitz v. Democrat Party of Mississippi*, No. 3:12-CV-280-HTW-LRA, 2015 WL 11017373 (S.D. Miss. Mar. 31, 2015), another case that sought to have a candidate (President Obama) barred from the 2016 ballot based on the claim that he was not a "natural-born citizen," Judge Wingate's thorough opinion carefully analyzed the application of the political question and related separation of powers doctrines to such challenges.  *Id*. at *12-16.  Observing that the Twelfth and Twentieth Amendments charged the legislative branch with responsibility for the presidential electoral and qualification process ("These prerogatives are firmly committed to the legislative branch of our government"), *Taitz* held that "these matters are entrusted to the care of the United States Congress, not this court" and that the plaintiffs' disqualification claims were therefore nonjusticiable.  *Id.*

5

**A39**

These "birther" cases are particularly telling inasmuch as Plaintiff expressly admitted—in a brief he filed in the Eleventh Circuit just a few days ago in support of an appeal from dismissal of another of his cases seeking the same relief sought here (albeit with respect to the Florida ballot)—that his lawsuits seeking President Trump's disqualification from the ballot under the 14th Amendment are "no different than asking the Court to determine who is a natural born citizen…." Appellant John Anthony Castro's Reply Brief, Case No. 23-12111 (11th Cir. Sept. 20, 2023) at p. 2.[2]

Multiple state courts have also held that secretaries of state had no such power to disqualify a presidential candidate from a ballot because of the doctrine of separation of powers. For example, in *Strunk v. New York State Bd. Of Elections*, No. 6500/11, 2012 WL 1205117 (Sup. Ct. Kings County NY Apr. 11, 2012), the court found the Secretary of State did not have the authority to check qualifications because that authority presented a political question and a separation of powers issue. The court stated:

> If a state court were to involve itself in the eligibility of a candidate to hold the office of President, a determination reserved for the Electoral College and Congress, it may involve itself in national political matters for which it is institutionally ill-suited and interfere with the constitutional authority of the Electoral College and Congress.

*Id*. at *12. The California Court of Appeals' language in *Keyes v. Bowen*, 189 Cal.App.4th 647, 660 (2010), is also instructive:

> In any event, the truly absurd result would be to require each state's election official to investigate and determine whether the proffered candidate met eligibility criteria of the United States Constitution, giving each the power to override a party's selection of a presidential candidate. The presidential nominating process is not subject to each of the 50 states' election officials independently deciding whether a presidential nominee is qualified, as this could lead to chaotic results. Were the courts of 50 states at liberty to issue injunctions restricting certification of duly-

---

[2] For the Court's convenience a copy of Plaintiff's Eleventh Circuit brief has been provided as Exh. 1.

elected presidential electors, the result could be conflicting rulings and delayed transition of power in derogation of statutory and constitutional deadlines. Any investigation of eligibility is best left to each party, which presumably will conduct the appropriate background check or risk that its nominee's election will be derailed by an objection in Congress, which is authorized to entertain and resolve the validity of objections following the submission of the electoral votes.

*Id.*; *accord, e.g.*, *Jordan v. Secretary of State Sam Reed*, No. 12-2-01763-5, 2012 WL 4739216, at *1 (Wash. Super. Aug. 29, 2012) (rejecting birther claims seeking to exclude President Obama from the Washington ballot; "I conclude that this court lacks subject matter jurisdiction. The primacy of congress to resolve issues of a candidate's qualifications to serve as president is established in the U.S. Constitution….").

Thus, it is well-settled law that the Constitution vests responsibility for determining whether a presidential candidate is qualified in the legislative branch—and only in the legislative branch—and that the courts are barred from trenching on the legislature's exclusive territory. As numerous courts have held, that alone is sufficient ground for concluding that challenges like this one must be dismissed as barred under the political question doctrine and related concepts of separation of power.

But in this case, there is a further reason for this Court to refrain from wading into this dispute: President Trump was impeached by the United States House of Representatives, tried for incitement of insurrection by the United States Senate, and found not guilty. *See* Impeaching Donald John Trump, President of the United States, for high crimes and misdemeanors, H. 24, 117th Cong. (2021).[3] This further shows the potential for embarrassment of a coordinate branch of government if a court were to seek to substitute its judgment on the issue for that of Congress.

---

[3] A true and correct copy of the Senate vote of Not Guilty can be found at https://www.senate.gov/legislative/LIS/roll_call_votes/vote1171/vote_117_1_00059.htm (last visited on September 28, 2023).

If Congress wishes to revisit that issue following the election and make the political decision to override a decision by the American people to re-elect President Trump, then the Constitution prescribes a mechanism by which that momentous decision might be made. But it is not a decision that is—or should be—committed to the jurisdiction of this Court.

### III. Plaintiff also lacks standing because he cannot plausibly establish injury, causation or redressability.

The Constitution limits the judicial power of the federal courts to actual cases and controversies." *Katz v. Pershing, LLC*, 672 F.3d 64, 72 (1st Cir. 2012) (citing U.S. Const. Art. III, § 2, cl. 1). "A case or controversy exists only when the party soliciting federal court jurisdiction (normally, the plaintiff) demonstrates 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends.'" *Id.* (quoting *Baker*, 369 U.S. at 204). "To satisfy the personal stake requirement, a plaintiff must establish each part of a familiar triad: injury, causation, and redressability." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *Ortiz v. Sig Sauer, Inc*., 448 F.Supp.3d 89, 95–96 (D.N.H. 2020) (Laplante, J.).

Concrete injuries must be "*de facto*; that is, [they] must actually exist." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 340 (2016). The injury does not have to be 'tangible' "like a picked pocket or a broken leg to be concrete." *Laufer v. Acheson Hotels, LLC,* 50 F.4th 259, 267 (1st Cir.2022) (citation omitted). "Intangible injuries–like 'the suppression of free speech or religious exercise' or the invasion of common-law rights…can also be concrete." *Id.* at 331 (citing *Spokeo,* 578 U.S. at 340; *Valley Forge Christian College,* 454 U.S.464, 486 (1982)). But in determining whether such an intangible harm rises to the level of a concrete injury, the Supreme Court has held that "both history" (particularly 'whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as provided a basis for a lawsuit in English of American

8

**A42**

courts') and the 'judgment of Congress play important roles.'" *Id.* at 268 (quoting *Spokeo,* 578 U.S. at 340-41. "Congress," the Supreme Court has said, "is well positioned to identify intangible harms that meet minimum Article III requirements and may 'elevate' to the status of legally cognizable injuries that were previously inadequate in law." *Spokeo,* 578 U.S. at 341 (citing *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 775-777 (2000)).

Plaintiff's allegation of an intangible injury fails to meet each of the injury, causation, and redressability triad factors. First, he fails to allege an injury that is sufficiently individual and particularized *to him* to confer standing. Plaintiff claims only to suffer a competitive harm because he must compete with President Trump. But he fails to plausibly allege that this injures him in any particularized or concrete fashion. He has not identified a single voter who identifies Castro as his or her "second choice" after Donald Trump. And he has proffered no expert or social science evidence that could support the inherently improbable claim that there is a latent Castro movement that would surface, if only Trump was not on the ballot. Ultimately, he alleges only the same, generalized injury as anyone else, and that is insufficient to confer standing.

Second, Plaintiff also fails to allege facts sufficient to establish that it is President Trump, as opposed to other factors, that are causing his asserted injury. Castro claims to be a candidate in the New Hampshire presidential preference primary. The purpose of the primary is to select the delegates and alternates "who shall represent the candidate as his or her delegation to the national convention." RSA 655:50. Plaintiff makes no claim–let alone a *plausible* claim–that preventing the secretary of state from including President Trump on the ballot materially reduces *his* chances of winning the primary and being awarded New Hampshire's delegates to the Republican National Convention. The truth is, of course, that no one has ever heard of Mr. Castro and, even if one were

to assume that President Trump was not on the ballot, there is absolutely no reason to suppose that any meaningful number of votes would go to him, as opposed to candidates who are actually recognized in the polls and on the streets. Absent any such plausible factual allegation, he has not met his obligation to show a causal relationship between President Trump being on the ballot and his inevitable failure to win the New Hampshire primary.

Finally, any injury to the Plaintiff caused by the inclusion of President Trump on the ballot is not redressable by this Court. The removal of President Trump from the New Hampshire ballot would not result in Mr. Castro winning even a single delegate in this State. Certainly, he has not alleged—much less proven—any plausible mechanism by which it would.

Plaintiff's claim that he has "competitive injury" standing is misplaced. Generally, cases finding competitive standing in the election law context have been brought by political parties seeking the exclude competing parties and candidates from the general election ballot. *See*, *e.g.*, *Texas Dem. Party v. Benkiser*, 459 F.3d 582, 586-87 n.4 (5th Cir.2006); *Schulz v. Williams,* 44 F.3d 48, 53 (2nd Cir.1994); *Fulani v. Hogsett*, 917 F.2d 1028, 1030 (7th Cir.1990). But Plaintiff has identified no instance in which competitive injury standing has been extended to a political party's primary election, where the question is not who will win a public office, but rather who will be that party's nominee. Nor has he cited a case in which competitive standing was established in a contest to elect delegates to a national political convention. And certainly, neither Congress nor common law or history support such a proposition.

Nor, in this instance, does common sense. Even if Plaintiff's status as a putative "competitor" serves to distinguish him in some measure from those whose generalized claim to standing derives merely from their status as voters, it does not remedy the standing defects posed by the sheer implausibility—unleavened by any measure of reality—of Plaintiff's claims of injury,

causation, and redressability. At some point, when a plaintiff claims that he has standing because, if only the Court would order his opponent to do X he would float into the sky, reality and common sense require there to be a better reason to believe that his feet will actually leave the ground than that the plaintiff merely says it is so.

For these reasons, this Court should rule that Plaintiff lacks standing.

## IV. The Fourteenth Amendment is not self-executing when used offensively and requires enforcement mechanisms from Congress.

Even if Plaintiff did not lack standing and if this Court were not deterred by the political question doctrine, the case would still not be properly before it because Section Three of the Fourteenth Amendment is not self-executing and cannot be applied to support a cause of action seeking judicial relief absent Congressional enactment of a statute authorizing Plaintiff to bring such a claim in court. A recent article by scholars Joshua Blackman and Seth Barrett Tillman summarizes the question of whether Section Three is self-executing as follows:

> In our American constitutional tradition there are two distinct senses of self-execution. First, as a shield—or a defense. And second, as a sword—or a theory of liability or cause of action supporting affirmative relief. The former is customarily asserted as a defense in an action brought by others; the latter is asserted offensively by an applicant seeking affirmative relief.
>
> For example, when the government sues or prosecutes a person, the defendant can argue that the Constitution prohibits the government's action. In other words, the Constitution is raised defensively. In this first sense, the Constitution does not require any further legislation or action by Congress. In these circumstances, the Constitution is, as Baude and Paulsen write, self-executing.
>
> In the second sense, the Constitution is used offensively–as a cause of action supporting affirmative relief. For example, a person goes to court, and sues the government or its officers for damages in relation to a breach of contract or in response to a constitutional tort committed by government actors. As a general matter, to sue the federal government or its officers, a private individual litigant must invoke a federal statutory cause of action. It is not enough to merely allege some unconstitutional state action in the abstract. Section 1983, including its statutory antecedents, *i.e.*, Second Enforcement Act a/k/a Ku Klux Klan Act of

11

**A45**

1871, is the primary modern statute that private individuals use to vindicate constitutional rights when suing state government officers.

Constitutional provisions are not automatically self-executing when used offensively by an applicant seeking affirmative relief. Nor is there any presumption that constitutional provisions are self-executing.

Blackman and Tillman, *Sweeping and Forcing the President Into Section 3: A Response to William Baude and Michael Stokes Paulsen*, last seen September 28, 2023, https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4568771 (emphasis in original; internal footnote omitted). Blackman and Tillman then thoroughly analyze whether Section Three is self-executing and explain at length why it is not.

Among the arguments they analyze is the historical treatment of the issue by, among others, Chief Justice Chase, and the Congress of 1870, just two years after the 1868 ratification of the Fourteenth Amendment. One year after ratification, the Chief Justice of the Supreme Court of the United States, in a circuit court case, ruled that Section Three was not self-executing and that it could only be enforced through specific procedures prescribed by Congress or the United States Constitution. *See In re Griffin*, 11 F.Cas. 7 (C.C.Va 1869). Otherwise, if anyone had tried it at that time, it would have created an immediate and intractable national crisis. There is no contemporaneous record of any outcry or protest about this holding. Instead, Congress almost immediately provided the legislation suggested by the Chief Justice.

The text of Section Five of the Fourteenth Amendment specifically states that "The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article." In 1870, Congress exercised its Section Five power, passing a law, entitled the "Enforcement Act," which allowed federal district attorneys to enforce Section Three. But the Enforcement Act did not give *state* election officials enforcement authority; it gave *federal* district attorneys that authority. Section 3 of the Enforcement Act allowed U.S. district attorneys to seek writs of *quo*

12

**A46**

*warranto* from federal courts to remove from office people who were disqualified by Section Three. Section 14 of the Enforcement Act required the courts to hear such proceedings before "all other cases on the docket." Section 15 provided for separate criminal trials of people who took office in violation of Section Three to take place in the federal courts. Federal prosecutors immediately started exercising *quo warranto* authority, bringing up on trial Jefferson Davis and others pursuant to that ability. These actions, however, waned after a few years. *See* Amnesty Act of 1872 (removing most disqualifications in the manner provided by Section Three; Pres. Grant Proclamation 208 (suspending *quo warranto* prosecutions)). The Amnesty Act of 1898 completely removed all Section Three disabilities incurred to that date.

In 1925, the Enforcement Act was repealed. In 2021, legislation was introduced to provide a cause of action to remove individuals from office who were engaged in insurrection or rebellion, but no further action was taken on that bill. *See* H.R. 1405, 117th Cong. 2021. Thus, there is presently no statute authorizing *any* person to bring actions seeking disqualifications under Section Three of the Fourteenth Amendment. Chief Justice Chase's order and the subsequent legislative history show that Section Three is not self-executing unless Congress takes action to make it so and that it does not give secretaries of state the authority to remove a presidential candidate from the ballot. Creating a 51-jurisdiction patchwork of state election laws and potentially conflicting orders and judgments to enforce Section Three would simply fly in the face of this precedent and constitutional tradition, causing the exact crisis Justice Chase feared.

## CONCLUSION

This Court lacks subject-matter jurisdiction over Plaintiff's claims. Those claims present a nonjusticiable political question reserved to the legislative branch and Congress has declined to create any sort of vehicle permitting any such claim to be brought by anyone in this or any other

court. And Plaintiff further fails to meet his burden to adduce the evidence required to establish the ordinary standing requirements of injury, causation, and redressability. This Court should dismiss the case without delay.

Respectfully submitted,
Donald J. Trump
By his attorneys,
Lehmann Major List, PLLC

September 29, 2023

/s/ Richard J. Lehmann
Richard J. Lehmann (Bar No. 9339)
6 Garvins Falls Road
Concord, N.H. 03301
(603) 731-6435
rick@nhlawyer.com

Dhillon Law Group, Inc.
David Warrington (Pro Hac Vice)
Jonathan Shaw (Pro Hac Vice)
2121 Eisenhower Ave., Ste. 608
Alexandria, VA 223141
(415) 433-1700
dwarrington@dhillonlaw.com
jshaw@dhillonlaw.com

Dhillon Law Group, Inc.
Mark P. Meuser (Pro Hac Vice)
177 Post Street, Ste. 700
San Francisco, CA 94108
(415) 433-1700
mmeuser@dhillonlaw.com

<u>CERTIFICATION</u>

I certify that a copy of this pleading was this day forwarded to all counsel and pro se parties of records.

September 29, 2023

/s/ Richard J. Lehmann

14

**A48**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>John Anthony Castro</u>

     v.                        Civil No.  23-cv-416-JL

<u>N. H. Secretary of State, et al.</u>

## **<u>PROCEDURAL ORDER</u>**

The evidentiary hearing on the merits in this case is currently scheduled for October 20, 2023, with certain filing requirements to precede the hearing.  The parties' filings have demonstrated a substantial issue as to whether this court has jurisdiction to hear this case, which must be decided before the court reaches the merits of the plaintiff's claim for injunctive relief.  **For that reason, the evidentiary hearing scheduled for Friday, October 20, 2023, at 9:30 a.m., will be limited to those jurisdictional issues,** and the court will schedule an evidentiary hearing on the merits, if necessary, after the jurisdictional issues are resolved. The filing requirements and deadlines set in the court's procedural order (doc. no. 26) issued on September 28, 2023, are suspended.

On or before **October 17, 2023**, each party shall file:

      • a witness list;

      • an exhibit list; and

      • proposed findings of fact and rulings of law in this case pertaining to the jurisdictional issues.

**A49**

Should counsel and Castro **unanimously** wish to reschedule the hearing before or after the current October 20 date, they may **jointly** arrange with the Deputy Clerk to do so. The plaintiff bears the burden to establish standing as to each defendant (the New Hampshire Secretary of State and Donald J. Trump) separately and that his case presents a justiciable question within the court's jurisdiction.

     **SO ORDERED.**

Joseph N. Laplante
United States District Judge

Dated: October 5, 2023

cc:    John Anthony Castro, pro se
       Counsel of record

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

U.S. DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

CASTRO

v.

SCANLAN and TRUMP

OCT 20 2023

Case # 1:23 - cv- 00816

FILED

## EXHIBITS

**OFFERED BY:** Plaintiff

| NUMBER/LETTER | DESCRIPTION |
|---|---|
| 1 | RECEIPT FOR PAYMENT OF BALLOT ACCESS FEE IN NEW HAMPSHIRE |
| 2 | NEVADA DECLARATION OF CANDIDACY |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

USDCNH-25 (2-96)

A51

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| JOHN ANTHONY CASTRO | ) | |
| 12 Park Place, Mansfield, TX 76063 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| SECRETARY OF STATE DAVID | ) | Case No. 1:23-cv-00416-JL-TSM |
| SCANLAN | ) | |
| 107 North Main Street, Room 204, Concord, | ) | |
| NH 03301 | ) | |
| | ) | |
| DONALD JOHN TRUMP | ) | |
| 1100 S. Ocean Blvd, Palm Beach, FL 33480 | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S NOTICE OF APPEAL**

Notice is given that Plaintiff John Anthony Castro in the above-captioned case hereby

appeals to the United States Court of Appeals for the First Circuit.

Dated: October 27, 2023.                    Respectfully submitted,

By: /s/ *John Anthony Castro*
John Anthony Castro
12 Park Place
Mansfield, TX  76063
(202) 594 – 4344
J.Castro@JohnCastro.com
**Plaintiff** *Pro Se*

1

**A52**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 27, 2023, a true and correct copy of the foregoing document was served upon counsel of record for Defendants through the Court's CM/ECF system.

 

 

John Anthony Castro

2

**A53**