**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

_____

JOHN ANTHONY CASTRO,

   *Plaintiff,*

v.

SECRETARY OF STATE ANDREW
WARNER AND DONALD
JOHN TRUMP,

   *Defendants.*

WEST VIRGINIA REPUBLICAN PARTY
and STATE OF WEST VIRGINIA,

   *Intervenors.*
_____

Civil Action No. 2:23-cv-00598

The Honorable Irene C. Berger

**DEFENDANT DONALD JOHN TRUMP'S SUPPLEMENTAL BRIEFING**
**IN FURTHER SUPPORT OF HIS MOTION TO DISMISS**
**<u>PURSUANT TO RULES 12(b)(1) AND 12(b)(6)</u>**

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................... 1

II.  LEGAL ARGUMENT ............................................................................................ 3

   A.  Legal Standards........................................................................................... 3

   B.  The Complaint Presents a Nonjusticiable Political Question, with Plaintiff's
   Attempted Distinctions Serving Merely as Distractions.................................... 4

   C.  Plaintiff Lacks Standing.............................................................................. 7

   D.  Section Three of the Fourteenth Amendment Is Not Self-Executing and
   Plaintiff's Claim to the Contrary is Ahistorical. ........................................... 14

   E.  Plaintiff's Claims Are Not Ripe.................................................................. 17

III.  CONCLUSION.................................................................................................... 199

# TABLE OF AUTHORITIES

**Cases**

*Greene v. Secretary of State for Georgia,*
   52 F.4th 907 (11th Cir. 2022) ............................................... 18

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ............................................................ 3

*Azul-Pacifico, Inc. v. City of Los Angeles,*
   973 F.2d 704 (9th Cir. 1992) ............................................... 16

*Baker v. Carr,*
   369 U.S. 186 (1962) ............................................................ 6

*Burns-Toole v. Byrne,*
   11 F.3d 1270 (5th Cir. 1994) ............................................... 16

*Caplan v. Trump,*
   Case # 23-cv-61628-ROSENBERG (S.D. Fla. Aug. 31, 2023) ............. 8

*Castro v. FEC,*
   Civil Action No. 22-2176 (RC), 2022 WL 17976630 (D.D.C. Dec. 6, 2022) ......... 8

*Castro v. N.H. Sec'y of State,*
   Case No. 23-cv-416-JL (D.N.H. Oct. 27, 2023) ................... 4, 5

*Castro v. Trump,*
   Case No. 23-80015-CIV-CANNON (S.D. Fl. June 26, 2023), cert. denied,
   Case No. 23-117, __ S. Ct. __, 2023 WL 6379034 (Oct. 2, 2023) ............ 8

*Cedar-Riverside Assocs., Inc. v. City of Minneapolis,*
   606 F.2d 254 (8th Cir. 1979) ............................................... 16

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ............................................................ 3

*Clark v. Weber,*
   Case No. 2:23-cv-07489-DOC-DFM (C.D. Cal. Oct. 20, 2023) ............ 8

*Doe v. Va. Dep't of State Police,*
   713 F.3d 745 (4th Cir. 2013) ............................................... 17

*Ex parte Va.,*
   100 U.S. 339, 345 (1879) .................................................... 16

*Foster v. Michigan*,
    573 F. App'x. 377 (6th Cir. 2014) ....................................................... 16

*Fouts v. Maryland Cas. Co.*,
    30 F.2d 357 (4th Cir. 1929) ............................................................ 7

*Fulani v. Hogsett*,
    917 F.2d 1028 (7th Cir. 1990) ......................................................... 9

*In re Griffin*,
    11 F.Cas. 7 (C.C.Va. 1869) ............................................................ 15

*Katzenbach v. Morgan*,
    384 U.S. 641 (1966) ................................................................... 15

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) .................................................................... 4

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................ 8, 14

*Lujan v. National Wildlife Federation*,
    497 U.S. 871 (1990) ................................................................... 14

*MacDonald, Sommer & Frates v. Yolo County*,
    477 U.S. 340 (1986) .................................................................... 7

*Massachusetts v. EPA*,
    549 U.S. 497 (2007) .................................................................... 4

*Nat'l Ass'n For The Advancement of Colored People v. Bureau of the Census*,
    945 F.3d 183 (4th Cir. 2019) .......................................................... 17

*Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*,
    636 A.2d 892 (Del. 1994) ............................................................. 13

*Ownbey v. Morgan*,
    256 U.S. 94, 112 (1921) .............................................................. 16

*Pacific Mut. Life Ins. Co. v. Haslip*,
    499 U.S. 1 (1991) .................................................................... 15

*Privett v. Bickford*,
    26 Kan. 52 (1881) .................................................................... 17

*Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*,
    344 U.S. 237 (1952) .................................................................. 17

*Pueschel v. United States*,
    369 F.3d 345 (4th Cir. 2004) ................................................................ 1

*Robinson v. Bowen,*
    567 F. Supp. 2d (N.D. Cal. 2008) ........................................................ 7

*Rosberg v. Johnson*,
    No. 8:22CV384, 2023 WL 3600895 (D. Neb. May 23, 2023) ............... 14

*Schaefer v. Townsend*,
    215 F.3d 1031 (9th Cir. 2000) ............................................................ 18

*Schaefer v. Trump et al.*,
    Case No. 23-cv-1451 JLS (BLM), 2023 WL 6798507 (S.D. Cal. Oct. 13, 2023) .................... 8

*Schulz v. Williams*,
    44 F.3d 48 (2d Cir. 1994) .................................................................... 9

*Secor v. Oklahoma*,
    No. 16-CV-85-JED-PJC, 2016 WL 6156316 (N.D. Okla. Oct. 21, 2016) ............................ 14

*Sierra Club v. Peterson*,
    185 F.3d 349 (5th Cir. 1999) .............................................................. 13

*Sierra Club v. Peterson*,
    228 F.3d 559 (5th Cir. 2000) .............................................................. 13

*Sladek v. Trump*,
    Case No. 1:23-cv-02089-LTB-SBP (D. Colo. Oct. 18, 2023) ............... 8

*Smith v. Moore*,
    90 Ind. 294 (1883) ............................................................................. 17

*Sublett v. Bedwell*,
    47 Miss. 266, 274 (1872) ................................................................... 17

*Texas Dem. Party v. Benkiser*,
    459 F.3d 582 (5th Cir. 2006) ............................................................... 9

*Texas v. United States*,
    523 U.S. 296 (1998) ........................................................................... 17

*Trump v. Benson*,
    Case No. 23-000151-MZ at 14-26 (Mich. Ct. Cl. Nov. 14, 2023) ....... 4, 6

*United States v. AVX Corp.*,
    962 F.2d 108 (1st Cir. 1992) .............................................................. 13

*United States v. Hays*,
515 U.S. 737 (1995) ............................................................................................. 5

*United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*,
412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973) ......................................... 13

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) ........................................................................................... 14

*Wild Va. v. Council on Env't Quality*,
56 F.4th 281 (4th Cir. 2022) .............................................................................. 17

*Woods v. Interstate Realty Co.*,
337 U.S. 535 (1949) ............................................................................................. 7

**U.S. Constitution**

U.S. Const. amend. XIV, § 3 ................................................................................. 6

U.S. Const. amend. XIV, § 5 .......................................................................... 6, 15

U.S. Const. amend. XX, § 3 .................................................................................. 6

U.S. Const. amend. XXV ....................................................................................... 6

U.S. Const. art. I, § 2, cl. 2 ................................................................................. 18

U.S. Const. art. I, § 2, cl. 5 ................................................................................... 6

**United States Code**

Act of June 25, 1948, ch. 645, § 2383, 62 Stat. 683, 808 ................................... 15

Act of June 25, 1948, ch. 646, § 39, 62 Stat. 869, 993 ...................................... 15

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................. 3

**Other**

H.R. 1405, 117th Cong. 2021 ............................................................................. 16

## I.      INTRODUCTION

In its October 31, 2023 Order [CM/ECF No. 66], this Court converted President Trump's Motion to Dismiss [CM/ECF Nos. 33, 34] to a motion for summary judgment "to the extent [it] challenge[s] the Plaintiff's standing." This Court further directed that "both parties submit supplemental briefs, together with any evidentiary exhibits . . . ." While President Trump also moved to dismiss Plaintiff's Complaint [CM/ECF No. 1] under Fed. R. Civ. P. 12(b)(6) because Section Three does not apply to the President of the United States and there is no plausible allegation that President Trump engaged in any conduct proscribed by Section Three [CM/ECF No. 34 at 14-27], President Trump understands this Court to have limited supplemental briefing to the issue of whether Plaintiff has standing to bring the claims set forth in his Complaint.

Plaintiff, however, ignores the substance of the dispositive arguments under 12(b)(6), effectively conceding them. President Trump notes that Plaintiff's failure to tackle those arguments constitutes a waiver that permits this Court to dismiss on the "uncontroverted bases asserted." *See Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004). These unrebutted arguments doom Plaintiff's case. Even if this Court were to decline to enforce a waiver due to Plaintiff's *pro se* status (which it should not do),[1] his failure to address these arguments shines a spotlight on his

---

[1]      Although in the context of litigation, Plaintiff seeks to portray himself as a *pro se* plaintiff entitled to special solicitude, in his day-to-day life he depicts himself rather differently—as a practicing lawyer who holds two law degrees and heads an international tax firm. *See* https://www.castroandco.com/staff-profiles/john-anthony-castro-j-d-ll-m/ ("John Anthony Castro is the managing partner of Castro & Co. Dr. Castro earned his Master of Laws (LL.M.) in International Taxation from Georgetown University Law Center in Washington, DC. Dr. Castro also earned a Doctor of Jurisprudence (J.D.) from UNM School of Law. . . . Dr. Castro is listed on each and every return submitted by Castro & Co. and AiTax as a Third-Party Designee, which authorizes him to practice federal tax law in all 50 states as well as the 68 countries with which the U.S. has income and estate tax treaties . . . ."). Lest there be any misunderstanding, the undersigned counsel do not vouch for Plaintiff's bona fides as a lawyer—he does not appear ever to have been admitted to any state bar—but that is how he holds himself out to the public. He

substantive failure to state a claim and overall litigation strategy.

Plaintiff seeks to invoke this Court's federal question jurisdiction under 28 U.S.C. § 1331. [CM/ECF No. 1 at ¶ 1.] Plaintiff further seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring whether Plaintiff has the ability to challenge President Trump's eligibility to be placed on the ballots in West Virginia and whether Plaintiff has standing to bring his claims. [CM/ECF No. 1 at ¶¶ 52-59.] Mindful of this Court's October 31, 2023 Order, President Trump only provides this Court with briefing and evidentiary exhibits demonstrating Plaintiff's lack of standing and this Court's lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

First, as President Trump has argued in briefing before this Court and as other courts facing similar challenges have also found, Plaintiff's case presents a nonjusticiable political question constitutionally committed to Congress. This political question is one that Article III courts, like this one, must refrain from answering. Second, as more recent court decisions confirm, Plaintiff cannot establish that he has standing: he suffers no cognizable injury-in-fact and his Complaint arises to nothing more than a general grievance. Outside of inflammatory rhetoric and conclusory sentences, Plaintiff advances no argument in his "Verified" Response to Court Order to Brief the Issues [*See* CM/ECF No. 71] or his Response to President Trump's Motion to Dismiss [*See* CM/ECF No. 38] to rebut President Trump's standing arguments presented in his Motion to Dismiss ("Motion"). This is insufficient to meet his burden to show this Court has subject-matter jurisdiction. Even though Plaintiff claims that he is a competitive candidate suffering an injury running against a candidate he believes is disqualified from the ballot in West Virginia, President

---

should not be allowed to wear one costume in public and a different one when he thinks it advantages him here.

Trump presents evidence attached to this Supplemental Briefing demonstrating that Plaintiff is not a competitive candidate.

Third, the Fourteenth Amendment is not self-executing—neither Plaintiff nor Defendant Warner has the authority to enforce the Fourteenth Amendment as Plaintiff desires. In addition, Plaintiff conflates questions of who has standing with separate questions of whether Section Three of the Fourteenth Amendment provides a self-executing cause of action. This is irrelevant. And fourth, Plaintiff's claims are not ripe. For these reasons, this Court should dismiss Plaintiff's Complaint with prejudice.

## II.    LEGAL ARGUMENT

### A.  Legal Standards.

This Court converted President Trump's Motion to Dismiss to a motion for summary judgment. [CM/ECF No. 66.] Fed. R. Civ. P. 56(a) governs summary judgment:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The party moving for summary judgment has the burden of establishing there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party meets that burden by showing the nonmoving party failed to prove an essential element of its case for which the nonmoving party will bear the burden of proof at trial. *Id*. at 322. After the moving party challenges the sufficiency of the nonmoving party's evidence on an essential element, the burden shifts to the nonmoving party to produce sufficient evidence. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (internal citations omitted).

**B. The Complaint Presents a Nonjusticiable Political Question, with Plaintiff's Attempted Distinctions Serving Merely as Distractions.**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . which is not to be expanded by judicial decree . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Accordingly, "[i]t is to be presumed that a cause lies outside this limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction . . . ." *Id.* (citations omitted). The political question doctrine calls for an assessment of subject matter jurisdiction. Political questions are nonjusticiable and are therefore not "cases" or "controversies" under Article III, just as questions that seek an advisory opinion or are mooted by subsequent developments are not "cases" or "controversies." *See Massachusetts v. EPA*, 549 U.S. 497, 516 (2007).

As both the United States District Court for the District of New Hampshire and the Michigan Court of Claims have recently held, Plaintiff's claim raises a nonjusticiable political question. *See Castro v. N.H. Sec'y of State*, Case No. 23-cv-416-JL (D.N.H. Oct. 27, 2023); *LaBrant v. Benson*, Case No. 23-000137-MZ at 10-20 (Mich. Ct. Cl. Nov. 14, 2023) (attached as Exhibit 1); *Trump v. Benson*, Case No. 23-000151-MZ at 14-26 (Mich. Ct. Cl. Nov. 14, 2023) (attached as Exhibit 2). "[T]he vast weight of authority has held that the Constitution commits to Congress and the electors the responsibility of determining matters of presidential candidates' qualifications." *Castro v. N.H. Sec'y of State*, Case No. 23-cv-416-JL at 19 (D.N.H. Oct. 27, 2023) (footnote omitted). The New Hampshire District Court specifically rejected Plaintiff's attempts to distinguish these cases based on their timing within the electoral cycle as "without reason," stating "Castro does not point to any factual or legal authority to support the notion that the political question doctrine, and the separation-of-powers principle at its core, simply lay dormant until after the national conventions, and the court finds no reasoned basis for such a conclusion." *Id.*

Plaintiff claims that "[t]he Political Question Doctrine is an affirmative defense to jurisdiction." [CM/ECF No. 71 at 2.] This statement represents a deeply misguided understanding of the law. There is no such thing as an "affirmative defense" to Article III subject-matter jurisdiction. Either the Court has subject-matter jurisdiction or it does not. Indeed, even if President Trump had not raised the issue, "[t]he federal courts are under an independent obligation to examine their own jurisdiction" that is not subject to waiver. *United States v. Hays*, 515 U.S. 737, 742 (1995) (citation omitted). Here, Plaintiff bears the burden of establishing jurisdiction, which includes establishing that his claim does not present a nonjusticiable political question. Regardless, his affirmative defense argument is immaterial because even if some burden of proof were on President Trump—and it is not—President Trump has met it. President Trump extensively briefed and argued that Plaintiff's claims present nonjusticiable political questions before this Court.

Second, Plaintiff asserts that this issue has not been committed to a political branch because the Electoral Count Reform and Presidential Transition Improvement Act of 2022 "amended the Electoral Count Act, by which the Electoral College operates, to limit objections to only two grounds . . . ." [CM/ECF No. 71 at 4-5.] But this conflates the *Constitution's commitment of the issue to Congress* (which triggers the political question doctrine) with *how Congress chooses to act on it* (which is the political question itself). *See generally Castro v. N.H. Sec'y of State*, Case No. 23-cv-416-JL at 16 n.27 ("Castro is correct that the Electoral Count Act was revised in 2022 . . . but, to the extent that he is arguing that this amendment limited the grounds for objections, that does not appear to be the case.").

Relatedly, Plaintiff ignores the other constitutional provisions that commit the issue of qualification to Congress. For example, Section Three of the Fourteenth Amendment gives Congress authority to remove any disability under that section. U.S. Const. amend. XIV, § 3.

Section Five expressly provides that "The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article." *Id.* at § 5. The Twentieth Amendment contemplates procedures and *congressional* action where an unqualified President-elect takes office. *See* U.S. Const. amend. XX, § 3. The Twenty-Fifth Amendment provides, "*Congress shall decide the issue*" of Presidential incapacity. U.S. Const. amend. XXV, § 4 (emphasis added). And the Constitution gives *Congress* (and Congress alone) the authority to remove the President from office. *See* U.S. Const. art. I, § 2, cl. 5. Congress's amendments to the Electoral College Act do not erase the political question posed here.

Moreover, Plaintiff only even attempts to address the first *Baker* factor, a clear textual commitment to the political branches. He ignores the other *Baker* factors that *also* support finding his claim presents a political question. *See generally, Baker v. Carr*, 369 U.S. 186 (1962). As the Michigan Court of Claims held in response to similar questions, "factors 2, 4, 5, and 6 apply to the instant case." [Ex. 1 at 15; Ex. 2 at 19.] The Michigan court noted that the sheer number of cases concerning presidential qualifications "presents the risk of completely opposite and potentially confusing opinions and outcomes, which will certainly 'expose the political life of the country to months, or perhaps years, of chaos,'" "there is no 'limited and precise rationale' to guide this Court and others that is also 'clear, manageable, and politically neutral,'" and "[b]ecause the cases involve the office of the President, such confusion and lack of finality will be more pronounced." [Ex. 1 at 18-19; Ex. 2 at 23 (citations omitted).]

Third, Plaintiff claims that the political question doctrine holdings in cases brought to disqualify then-candidates Barack Obama and John McCain may be disregarded as *dicta*. This is wrong. [*See* CM/ECF No. 71 at 5-9.] Often, they cannot even be accurately characterized as dicta, as in *Robinson v. Bowen* in which, after holding that the named plaintiff lacked standing, the court

refused to allow an intervenor who claimed to have standing to intervene because the claim was nonjusticiable and the intervention would therefore be futile. 567 F. Supp. 2d 1144, 1147 (N.D. Cal. 2008). In other cases, they are more appropriately viewed as alternative holdings, which are not *dicta. See, e.g.*, *Woods v. Interstate Realty Co.,* 337 U.S. 535, 537 (1949) ("where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum"); *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 346 n.4 (1986) (alternative holdings are not *dicta*). Further, even "[i]f these conclusions were dicta, it does not necessarily follow that they were wrong . . . ." *See Fouts v. Maryland Cas. Co*., 30 F.2d 357, 359 (4th Cir. 1929). The fact that similar lawsuits suffered *multiple* jurisdictional defects—including the same defects presented here—does not support Plaintiff's position.

Fourth, Plaintiff claims that the "the political question doctrine applies only after the major political parties hold their conventions and submit the nomination paperwork to the state for placement on the general election ballot." [CM/ECF No. 71 at 6.] But as discussed above, there is no support for this distinction. None of the political question cases cited above explicitly, or implicitly, tie the application of the doctrine to whether the action is filed before or after party conventions. This Court should reject Plaintiff's claims on this basis alone.

### C.     Plaintiff Lacks Standing.

Plaintiff merely alleges that he is a "Republican Primary Write-in Candidate" after paying and filing "a simple nominal fee and a ministerial Declaration of Candidacy" and that he "has earned millions of dollars in free media coverage, is extensively campaigning, and is ballot-placed in multiple states." [CM/ECF No. 71 at 11.] Besides failing to reveal that his "earned media" is the result of filing dozens of these cases—and litigation makes up most of his "campaigning" as well—Plaintiff's Response does not even attempt to rebut the central themes of the Motion's

standing argument, effectively conceding this dispositive argument for purposes of the Motion. Perhaps this is because three federal courts have already held in cases brought by this very same Plaintiff that his allegations are insufficient to confer Article III standing—including one that ruled within the past month.[2] Additionally, four other federal courts have rejected similar actions brought by individual voters based on a lack of standing.[3]

What little information Plaintiff does provide, which is controverted by President Trump's evidentiary exhibits cited below, confirms his complaint is nothing more than a generalized grievance. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573-74 (1992) ("[A] plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."). Any person in the country can be considered a write-in candidate if he or she files a "ministerial" form and pays the filing fee. [*See* CM/ECF No. 71 at 11.]

Plaintiff fails to allege facts sufficient to establish any of the required showings for Article III standing. The Complaint's highly attenuated claim of injury—that President Trump's presence on the 2024 ballot deprives Plaintiff of the political support he needs to win the Republican Party's nomination for the next President of the United States—strains way too far. That a vote—or

---

[2]    *See Castro v. Trump*, Case No. 23-80015-CIV-CANNON (S.D. Fl. June 26, 2023), cert. denied, Case No. 23-117, __ S. Ct. __, 2023 WL 6379034 (Oct. 2, 2023); *Castro v. FEC*, Civil Action No. 22-2176 (RC), 2022 WL 17976630 (D.D.C. Dec. 6, 2022); and *Castro v. N.H. Sec'y of State*, Case No. 23-cv-416-JL (D.N.H. Oct. 27, 2023).

[3]    *See Caplan v. Trump*, Case # 23-cv-61628-ROSENBERG (S.D. Fla. Aug. 31, 2023); *Schaefer v. Trump et al.*, Case No. 23-cv-1451 JLS (BLM), 2023 WL 6798507 (S.D. Cal. Oct. 13, 2023) (CM/ECF No. 6); *Sladek v. Trump*, Case No. 1:23-cv-02089-LTB-SBP (D. Colo. Oct. 18, 2023) (CM/ECF No. 12); and *Clark v. Weber*, Case No. 2:23-cv-07489-DOC-DFM (C.D. Cal. Oct. 20, 2023) (CM/ECF No. 35).

hundreds for that matter [CM/ECF No. 71 at 10]—may change in the future is insufficient to establish an injury-in-fact for purposes of standing. *See Castro v. N.H. Sec'y of State*, Case No. 23-cv-416-JL at 11. ("[Castro's] claimed injury is also speculative, as it depends on what voters and contributors—independent, third parties—may do if Trump's name is not listed on the New Hampshire primary ballot. Castro provides no evidence that any Trump supporter would support Castro under that circumstance. . . . An injury based on speculation about the decisions of independent actors does not confer standing.").

It is of no moment that Plaintiff claims competitive injury. Generally, cases finding competitive standing in the election law context have been brought by political parties seeking to exclude competing parties and candidates from the general election ballot. *See, e.g., Texas Dem. Party v. Benkiser*, 459 F.3d 582, 586-87 n.4 (5th Cir. 2006); *Schulz v. Williams*, 44 F.3d 48, 53 (2d Cir. 1994); *Fulani v. Hogsett*, 917 F.2d 1028, 1030 (7th Cir. 1990). But Plaintiff's claimed injury-in-fact is different in kind from that of an established political party. Plaintiff has identified no instance in which competitive injury standing has been extended to a political party's primary election, where the question is not who will win a public office, but rather who will be that party's nominee. Nor has he cited a case in which competitive standing was established in a contest to elect delegates to a national political convention. And certainly, neither Congress nor common law nor history support such a proposition.

Indeed, the facts on the ground in West Virginia paint a grim picture of Plaintiff's presidential aspirations. The Declaration of experienced West Virginia pollster, Mark Blankenship, makes this clear. Mr. Blankenship testifies that through his regular interactions "with voters, activists, candidates, and political groups," he has "not seen any support for John Anthony

Castro in any 2024 poll for President of the United States." [Blankenship Decl. at ¶¶ 2-3.] He states further:

> I have not discerned any support for John Anthony Castro in West Virginia from any of the other typical indicators, either. I am not aware of any expenditures or media outreach by John Anthony Castro in the State of West Virginia, nor am I aware of any West Virginia voters or political organizations offering support John Anthony Castro. To the best of my knowledge, John Anthony Castro has very limited/no political presence in West Virginia.

[*Id*. at ¶ 4.] Blankenship's testimony indicates that West Virginia voters know other Republican candidates better, and that "it is near-certain that these candidates would be the beneficiaries of a hypothetical disqualification of former President Donald Trump." [*Id*. at ¶ 5.] Damningly:

> [T]here is no reason to conclude that John Anthony Castro would benefit from a material increase in political support here in West Virginia if former President Trump were to be disqualified from seeking office. To the contrary, if anything, under those circumstances, it is reasonable to expect supporters of President Trump to be angry at Mr. Castro due to his efforts to disqualify President Trump.

[*Id*. at ¶ 6.]

Michael Dennehy's Declaration shows that Plaintiff's campaign fundraising, expenditures, and activities are inconsistent with someone running a serious presidential campaign. Mr. Dennehy has "three decades of experience as a professional political strategist specializing in political campaigns, encompassing the nuts and bolts of campaign management." [Dennehy Decl. at ¶ 3.] Based on his experience and knowledge of Republican campaigns, Mr. Dennehy first notes that Plaintiff's campaign website is "generic, incomplete, amateurish, and even contains material for one of his other campaigns." [*Id*. at ¶ 7.] His website contains dead links, has blanks where information should be contained under policy planks, and is "rudimentary at best making it an unserious and useless campaign tool." [*Id*. at ¶¶ 7-9.]

Plaintiff "is one of approximately 300 to date who have filed papers with the FEC indicating that they intend to run for President this cycle," a phenomenon that occurs every cycle.

[Dennehy Decl. at ¶ 11.] Further, Plaintiff's FEC filings raise serious issues: 1) as of September 30, 2023, his campaign has only taken in $678 in contributions, which indicates an unserious campaign knowing that it costs about $20 million to run a legitimate presidential campaign, despite Plaintiff's claims that he is willing to loan his campaign between $100,000 and $250,000, [*Id*. at ¶¶ 12-14]; 2) "[t]he lack of any claimed expenditures indicates a non-serious campaign, as it is simply impossible to run a legitimate presidential campaign without spending any money," [*Id*. at ¶ 15]; and 3) Plaintiff has $0 in expenditures, despite every campaign having basic compliance and operational costs, and, while not actually serving as his own treasurer, is signing off on all FEC filings as the campaign treasurer, [*See id*. at ¶¶ 15-19.] Plaintiff admitted during cross-examination at the New Hampshire District Court hearing that the $20 million loan made to his campaign is fictitious and his "second amended version of the first quarter 2023 campaign finance report . . . now omits that fake loan entirely. Additionally, he again knowingly and falsely signed the recent amendment as Treasurer." [*Id*. at ¶ 18.] In Mr. Dennehy's opinion, "[n]o serious candidate for President can be the Treasurer of their own Campaign Committee and continue to consistently violate basic FEC laws." [*Id*. at ¶ 19.]

According to Mr. Dennehy, Plaintiff also has no campaign infrastructure in any of the early primary states and has hired no "campaign workers, opened any campaign headquarters or offices, nor held any events or otherwise campaigned in any serious way in the early primary states—or any other state." [Dennehy Decl. at ¶ 20.] In his experience, "even a well-known candidate who does not establish a strong presence and ground game in the early primary states will not attract significant voting support." [*Id.* at ¶ 21.] And "[f]or a political unknown like Mr. Castro to completely forego both basic retail politics and any form of active campaigning means that his campaign has zero chance of success . . . ." [*Id*.] Based on his experience and knowledge, Mr.

Dennehy further avers that Mr. Castro will be unable to win a significant number of votes in the West Virginia Republican presidential primary without a serious infrastructure to deliver early state wins. [*Id.* at ¶¶ 20-22.]

Regarding advertising in West Virginia, Plaintiff "has not offered any proof or verification of these advertisements, as he did in his Arizona filing for a billboard, and there has been no evidence of this advertising, nor that it's been effective or made any impact." [Dennehy Decl. at ¶ 30.] Podcasting without name recognition is a means of advertising that should be heavily discounted. [*Id.* at ¶ 32.] As far as Plaintiff's "earned media" claims go, the publications he is featured in "appear[] targeted to the wrong demographic [and] it is also the wrong kind of coverage to be effective in a Republican primary campaign. Almost uniformly, it focuses on Mr. Castro's legal crusade against Donald Trump." [*Id.* at ¶ 34.] "[T]he real and true value of any so-called earned media coverage is at most approximately $250.00 (two-hundred fifty dollars), not even close to the claim of $5,000,000.00—an estimated value that Mr. Castro nowhere explains or justifies." [*Id.* at ¶ 35.] Additionally, Plaintiff does not even register in any polls and is referred to in the media as a "long-shot candidate." [*Id.* at ¶¶ 36-43.] "But at a more basic level, a candidate for President of the United States who is not on the ballot in most of the first ten states by today's date, is not really and truly a national candidate for President." [*Id.* at ¶ 43.]

Critically, for purposes of the standing analysis, Mr. Dennehy's conclusions would not change if President Trump were not on the ballot. According to Mr. Dennehy, if President Trump were not on the ballot, there is a field of serious candidates who enjoy actual name recognition, measurable support in the polls, and established track records who have made the necessary investments in a West Virginia campaign infrastructure. They would stand to benefit from President Trump's absence and Mr. Castro is not among that group. [*Id.* at ¶¶ 49-54.] Likewise,

Mr. Dennehy concludes "[t]here is no reason to expect that Mr. Castro will garner any substantial amount of financial support whether President Trump is in the race or not." [*Id*. at ¶ 47.] The United States District Court for the District of New Hampshire heard and credited Mr. Dennehy's testimony at the evidentiary hearing that it conducted on Mr. Castro's standing.

Plaintiff's claim that he would benefit if President Trump were not on the ballot is not only excessively speculative as a matter of law, it is also refuted as a factual matter. Plaintiff is not running a real campaign that seeks to compete with President Trump. Nor is he actually harmed by President Trump's presence on the ballot. He is effectively running a self-aggrandizing public relations campaign masquerading as a lawsuit.

In Plaintiff's Notice of Supplemental Authority [CM/ECF No. 73], he cites *U.S. v. SCRAP*, 412 U.S. 669, 690 (1973). That case, however, has not been good law for decades. *See, e.g., United States v. AVX Corp.,* 962 F.2d 108, 117–18 (1st Cir. 1992) ("the Court has lately limited *SCRAP* to its particular facts, observing that *SCRAP* 's 'expansive expression of what would suffice for [5 U.S.C.] § 702 review . . . has never since been emulated by this Court.' In light of *Lujan,* the continued vitality of *SCRAP* as a divining rod for locating associational standing is highly questionable.") (internal citations omitted); *Sierra Club v. Peterson*, 185 F.3d 349, 361 n.13 (5th Cir. 1999), *on reh'g,* 228 F.3d 559 (5th Cir. 2000) ("it seems safe (and sage) to note that *Lujan I* likely eviscerated certain prior cases that afforded procedural rights plaintiffs standing where the three-part test was not met, *see, e.g., United States v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 683–685, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973) . . . ."); *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 904 n.16 (Del. 1994) ("The references in WSI's brief to . . . *SCRAP* . . . as controlling law in the area of environmental standing, are misleading and incorrect. These cases have long been called into question, and narrowed to the

point of invalidation.") (citing *Lujan v. Defs. of Wildlife,* 504 U.S. 555; *Whitmore v. Arkansas,* 495 U.S. 149 (1990); *Lujan v. National Wildlife Federation,* 497 U.S. 871 (1990)). Moreover, even if it had not been effectively abrogated, *SCRAP* "is of no relevance here, since it involved not a Rule 56 motion for summary judgment but a Rule 12(b) motion to dismiss on the pleadings." *Lujan*, 497 U.S. at 889. Plaintiff lacks standing, and this Court therefore lacks subject matter jurisdiction over his claim.

### D. Section Three of the Fourteenth Amendment Is Not Self-Executing and Plaintiff's Claim to the Contrary is Ahistorical.

As set forth in detail in President Trump's Motion, Section Three is not self-executing; it requires an act of Congress to give it effect. [*See* CM/ECF No. 34 at 12-14.] The federal courts lack subject matter jurisdiction over Plaintiff's claim because Section Three is not self-executing and, therefore, cannot support a cause of action absent an authorizing statute. *See, e.g., Rosberg v. Johnson*, No. 8:22CV384, 2023 WL 3600895, at *3 (D. Neb. May 23, 2023); *Secor v. Oklahoma*, No. 16-CV-85-JED-PJC, 2016 WL 6156316, at *4 (N.D. Okla. Oct. 21, 2016). There is no operative authorizing statute that allows the Secretary of State, purported political competitors, or individual voters to strike a presidential candidate from appearing on a ballot and there is therefore no basis for federal question jurisdiction.

Plaintiff's rebuttal is flat wrong. He claims that the "1870 Enforcement Act was created to grant law enforcement that otherwise did not have a direct injury . . . to remove public officials holding office in violation of Section 3 . . . ." [CM/ECF No. 71 at 10.] In other words, according to Plaintiff, Section Three was always self-executing and actionable by any aggrieved private party—but Congress enacted the Enforcement Act to give that same authority to district attorneys, too.

14

This argument conflates questions of who has standing with questions of whether Section Three provides a private right of action. It is also ahistorical. The Fourteenth Amendment itself provides that "*Congress* shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. amend. XIV, § 5 (emphasis added). One year after the Fourteenth Amendment's ratification, the Chief Justice of the Supreme Court, riding circuit, rejected an attempt to disqualify a sitting judge under Section Three by a petitioner who had recently been sentenced by that judge. *In re Griffin*, 11 F.Cas. 7 (C.C.Va. 1869). The Chief Justice denied the petition, holding that Section Three "clearly requires legislation in order to give effect to it," that it is "beyond reasonable question" that Section Three is "to be made operative . . . by legislation of congress in its ordinary course," and that to allow petitioner to enforce it himself would unleash "manifold evils." *Id*. One year later, Congress enacted the Enforcement Act, which reads, "[I]t shall be the duty of the district attorney of the United States . . . to proceed against a [violator of Section Three] . . . and to prosecute the same to the removal of such person from office." The original Enforcement Act was codified as 13 Judiciary ch. 3, sec. 563 and later recodified into 28 Judicial Code 41—but in 1948, Congress repealed 28 U.S.C. § 41 in its entirety. *See* Act of June 25, 1948, ch. 646, § 39, 62 Stat. 869, 993; *see also* Act of June 25, 1948, ch. 645, § 2383, 62 Stat. 683, 808.

That the Fourteenth Amendment is not self-executing for offensive purposes is well established. The United States Supreme Court has regularly reiterated that the enforcement power of the Fourteenth Amendment lies only in Congress, and Section Five of the Fourteenth Amendment confers the enforcement power on Congress to determine "whether and what legislation is needed to" enforce the Fourteenth Amendment. *Katzenbach v. Morgan*, 384 U.S. 641, 651 (1966); *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 33 (1991) (Scalia, J., concurring)

("It cannot rightly be said that the Fourteenth Amendment furnishes a universal and self-executing remedy. Its function is negative, not affirmative, and it carries no mandate for particular measures of reform.") (quoting *Ownbey v. Morgan*, 256 U.S. 94, 112 (1921)). "Congress is authorized to *enforce* the prohibitions by appropriate legislation. Some legislation is contemplated to make the amendments fully effective." *Ex parte Va.*, 100 U.S. 339, 345 (1879).

It is Congress that has been provided the sole authority to provide the enforcement for the Fourteenth Amendment, not the states. *Cedar-Riverside Assocs., Inc. v. City of Minneapolis*, 606 F.2d 254, 255 n.3 (8th Cir. 1979) (stating that Congress intended "42 U.S.C. § 1983 as an exclusive remedy for constitutional violations committed by municipalities and that 'no reason exists to imply a direct cause of action (for such violations) under the fourteenth amendment.'")*; Foster v. Michigan*, 573 F. App'x. 377, 391 (6th Cir. 2014) ("[W]e have long held that § 1983 provides the exclusive remedy for constitutional violations."); *Burns-Toole v. Byrne*, 11 F.3d 1270, 1273 n.3 (5th Cir. 1994) (providing that § 1983 is the appropriate vehicle for asserting violations of constitutional rights); *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) ("We have previously held that a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983."). In other words, it is clear and black-letter law that absent Congressional authorization, no private individual has a self-executing right to sue on the basis of any provision of the Fourteenth Amendment.

Currently, no implementing legislation executes Section Three. Recent efforts to enact a cause of action under Section Three died in Congress. See H.R. 1405, 117th Cong. 2021. Plaintiff's revisionism is therefore entitled to no credence. Section Three is not self-executing. It cannot be wielded as an offensive weapon without authorizing legislation. And there is no operative authorizing legislation today. Thus, because the sole basis for Plaintiff's claim of subject matter

jurisdiction was supposed federal question jurisdiction and his complaint raises no cognizable federal question, this Court lacks subject matter jurisdiction over Plaintiff's claim.

### E.  Plaintiff's Claims Are Not Ripe.

"[R]ipeness involves 'when [a plaintiff may] sue.'" *Wild Va. v. Council on Env't Quality*, 56 F.4th 281, 293 (4th Cir. 2022) (cleaned up). A court must wait until a case has "taken on [a] fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 244 (1952). Ripeness is necessary because courts should not be required to resolve "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). "A controversy becomes 'fit' for review when it no longer is 'dependent on future uncertainties.'" *Nat'l Ass'n For The Advancement of Colored People v. Bureau of the Census*, 945 F.3d 183, 192 (4th Cir. 2019). In determining ripeness, courts consider hardship, or "the immediacy of the threat and the burden imposed on the petitioner . . . ." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 759 (4th Cir. 2013).

In his Complaint, Plaintiff does not allege that he has taken appropriate steps to run for President in West Virginia. Additionally, the Fourteenth Amendment contemplates that any violation of Section Three occurs when a person who has engaged in insurrection or other forbidden acts takes office, not when he or she merely runs. *See Smith v. Moore*, 90 Ind. 294, 303 (1883) (describing congressional practice indicating that Section Three limits who can hold office, not who can run); *Privett v. Bickford*, 26 Kan. 52, 57 (1881) (explaining that an ineligible person can run for election, win, and take office as long as the "disabilities had been subsequently [to election] removed"); *Sublett v. Bedwell*, 47 Miss. 266, 274 (1872) (same). Section Three does not,

however, prohibit individuals from inclusion on the ballot, being nominated, or being elected. In other words, whether President Trump will hold office, is a contingent future event that may not occur at all.

The Ninth Circuit's opinion in *Schaefer v. Townsend*, 215 F.3d 1031, 1038 (9th Cir. 2000), further illustrates why this is important. In *Schaefer*, the court evaluated a California law that required candidates for Congress to satisfy a residency requirement at the time he or she filed his or her nomination papers. As Plaintiff claims to be seeking to do in this case, California's law sought to implement a constitutional requirement, the requirement that a member of the House of Representatives be an inhabitant of the state in which he shall be chosen. *See id*. at 1032-34. Nevertheless, the court determined that California's law was unconstitutional because it added qualifications that are not found in the Constitution. *See id*. at 1034, 1038-39 (citing U.S. Const. art. I, § 2, cl. 2). Timing was critical in reaching this conclusion. The Constitution provides that an individual must be an inhabitant of the state "when elected." *Id.* at 1038-39. "When elected" is not "when nominated" because nonresident candidates could move into the State and "inhabit" it in the period between nomination and election. *Id.*; *accord Greene v. Secretary of State for Georgia*, 52 F.4th 907, 913–16 (11th Cir. 2022) (Branch, J., concurring) ("by requiring Rep. Greene to adjudicate her eligibility under § 3 to run for office through a state administrative process without a chance of congressional override, the State imposed a qualification in direct conflict with the procedure in § 3—which provides a prohibition on being a Representative and an escape hatch.").

Thus, Plaintiff's claim is unripe because he seeks to have this Court adjudicate constitutional questions whose relevance will depend upon the happening of a series of contingent events between now and January 2025.

18

## III.     CONCLUSION

For all the reasons set forth herein and in President Trump's Motion to Dismiss, each of which are independently dispositive of this case, President Trump requests that the Complaint be dismissed with prejudice.

DONALD JOHN TRUMP,

By Counsel,

*/s/ J. Mark Adkins*
J. Mark Adkins (WVSB #7414)
Richard R. Heath, Jr. (WVSB #9067)
William M. Lorensen (WVSB #13223)
BOWLES RICE LLP
600 Quarrier St.
Charleston, West Virginia 25301
(304) 347-1100
madkins@bowlesrice.com
rheath@bowlesrice.com
wlorensen@bowlesrice.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel does hereby certify that on the **21st** day of **November, 2023**, the foregoing *Defendant Donald John Trump's Supplemental Briefing in Further Support of His Motion to Dismiss* was served upon all parties of record electronically via the Court's CM/EMF system as follows:

John Anthony Castro
12 Park Place
Mansfield, Texas 76063
J.Castro@CastroAndCo.com
*Pro Se Plaintiff*

Elgine Heceta McArdle
MCARDLE LAW OFFICE
2139 Market Street
Wheeling, West Virginia 26002
elgine@mcardlelawoffice.com

-and-

Jay Alan Sekulow
Jordan A. Sekulow
Stuart J. Roth
Andrew J. Economou
Benjamin P. Sisney
Nathan J. Moelker
THE AMERICAN CENTER FOR LAW AND JUSTICE
201 Maryland Avenue, NE
Washington, DC 20002
sekulow@aclj.org
jordansekulow@aclj.org
sroth@aclj.org
aekonomou@aclj.org
bsisney@aclj.org
nmoelker@aclj.org
*Counsel for Intervenor-Plaintiff West Virginia Republican Party*

Douglas P. Buffington, II
 Chief Deputy Attorney General
Curtis R. A. Capehart
 Deputy Attorney General
Chanin Wolfinbarger Krivonyak
 Deputy Attorney General
Office of the Attorney General
1900 Kanawha Blvd. E., Bldg 1, Rm 26E
Charleston, West Virginia 25305
Doug.P.Buffington@wvago.gov
Curtis.R.A.Capehart@wvago.gov
ckrivonyak@wvago.gov
*Counsel for Defendant Andrew Warner, West Virginia Secretary of State*

Michael R. Williams
 Principal Deputy Solicitor General
David E. Gilbert
 Deputy Attorney General
State Capitol Complex
Building 1, Room E-26
michael.r.williams@wvago.gov
dgilbert@wvago.gov
*Counsel for Intervenor The State of West Virginia – Patrick Morrisey, Attorney General*

/s/ J. Mark Adkins
J. Mark Adkins (WVSB #7414)

16325406.1