IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JOHN ANTHONY CASTRO,

        Plaintiff,

v.                                    CIVIL ACTION NO.   2:23-cv-00598

SECRETARY OF STATE ANDREW WARNER
and DONALD TRUMP,

        Defendants,

WEST VIRGINIA REPUBLICAN PARTY
and STATE OF WEST VIRGINIA,

        Intervenors.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Motion to Dismiss of Defendant Donald John Trump* (Document 33), the *Memorandum in Support of Motion to Dismiss of Defendant Donald John Trump* (Document 34), the Plaintiff's *Response to Defendant Donald John Trump's Motion to Dismiss* (Document 38), and the *Reply in Support of Motion to Dismiss of Donald John Trump* (Document 52). The Court has also reviewed the *Secretary of State's Motion to Dismiss* (Document 45), the *Secretary of State's Memorandum of Law in Support of His Motion to Dismiss* (Document 46), the Plaintiff's *Response to Defendant Secretary of State's Motion to Dismiss* (Document 53), and the *Reply to Response to Secretary of State's Motion to Dismiss* (Document 63). Additionally, the Court has reviewed the *West Virginia Republican Party's Motion to*

*Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Memorandum of Law in Support* (Document 42) and the *State of West Virginia's Motion to Dismiss* (Document 44).

On October 31, 2023, the Court issued a *Memorandum Opinion and Order* (Document 66), converting the motions to dismiss to motions for summary judgment on the issue of standing and permitting the parties to submit supplemental briefs and evidentiary exhibits.

The Court has reviewed the supplemental briefs and other additional filings submitted following that order including the Plaintiff's *Affidavit of Candidacy and Media Coverage* (Document 68), the Plaintiff's *Verified Response to Court Order to Brief the Issues* (Document 71), the *Supplemental Filing Regarding Secretary of State's Motion to Dismiss* (Document 75), the *West Virginia Republican Party's Supplement to Its Motion for Summary Judgment* (Document 76), *Defendant Donald John Trump's Supplemental Briefing in Further Support of His Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6)* (Document 78), the *Declaration of Michael Dennehy* (Document 79), the *Declaration* of Mark Blankenship (Document 80), the *State of West Virginia's Supplemental Brief Regarding Standing* (Document 81), and the Plaintiff's *Affidavit of Campaign Activities Prior to Case Filing* (Document 84), as well as all exhibits.

Further, the Court has reviewed the Plaintiff's December 9, 2023 *Notice of Withdrawal of Emergency Application for a Temporary Restraining Order and Expedited Preliminary Injunction Hearing Consolidated with a Bench Trial on the Merits* (Document 86), wherein the Plaintiff objects to the Court's decision to convert the motions to dismiss to motions for summary judgment, arguing that doing so denies him procedural due process. He seeks to have the case "revert back to the dismissal phase" where he would benefit from the "presumption of truthfulness" in his complaint, pending full factual development of the case. (Notice at 1-2). The Court denies any

motion to consider the converted motions under the motion to dismiss standard. The Plaintiff's Notice was filed more than a month after the Court's *Memorandum Opinion and Order* converting the motions, well after the evidence and supplemental brief were due. The Court noted in the conversion order that cases involving most of the same parties and counsel in other jurisdictions had completed jurisdictional discovery and hearings, limiting the time necessary for discovery relevant to standing here. The Plaintiff did not indicate (and still does not claim) that he is unable to access discoverable information relevant to standing. Although the Court finds herein that the Plaintiff's allegations, if proven, would be insufficient to support standing, the procedural mechanism of converting the motions to summary judgment and considering evidence permits a more thorough record and limits the risk of a protracted appellate process in a time sensitive case.

**FACTUAL ALLEGATIONS**

The Plaintiff, John Anthony Castro, initiated this action with a *Verified Complaint for Declaratory and Injunctive Relief* (Document 1) on September 7, 2023. Mr. Castro is a Texas resident proceeding pro-se. He has registered with the Federal Elections Commission (FEC) as a candidate for the Republican nomination for the 2024 Presidential election and is registering for ballot access in various states. He avers that he will register for ballot access for the West Virginia primary during the appropriate time frame or will run as an official write-in candidate in both the primary and general elections. He brings his complaint against Secretary of State Andrew "Mac" Warner, in his official capacity, and Donald John Trump, as a nominal Defendant. The West Virginia Republican Party and the State of West Virginia intervened.

Mr. Castro asserts that "Section 3 of the 14th Amendment created an implied cause of action for a fellow candidate to obtain relief for a political competitive injury by challenging

3

another candidate's constitutional eligibility on the grounds that they engaged in or provided 'aid or comfort' to an insurrection." (Compl. at ¶ 8.) He contends that former President Trump provided aid or comfort to an insurrection, within the meaning of Section 3 of the 14th Amendment, through his actions and statements before, during, and after January 6, 2021, when a group of Mr. Trump's supporters stormed the United States Capitol in an effort to prevent the certification of the 2020 presidential election results.

Mr. Castro claims standing as a political competitor to former President Trump. He alleges that they "are not only competing for the same political position within the same political party but are also appealing to the same voter base." (*Id.* at ¶ 24.) He asserts that "Trump's constitutionally unauthorized undertaking will put Castro at both a voter and donor disadvantage" because he will "siphon off votes in violation of Section 3 of the 14th Amendment to the U.S. Constitution." (*Id.* at ¶¶ 27-28.) He explains that he "has a campaign website, publicly declared his candidacy *before* Trump, has been actively campaigning for political support on social media, has been pursuing Trump's disqualification for over two years now, and has been covered by the national media for his pursuit of Trump's disqualification." (*Id.* at ¶ 36) (emphasis in original.) In his view, "Section 3 of the 14th Amendment was specifically designed to ensure that non-insurrectionists did not have to politically compete with the more politically popular pro-insurrectionist politicians in the South." (*Id.* at ¶ 48.) He seeks declaratory judgment and injunctive relief.

## EVIDENCE

Mr. Castro presented evidence that he will be on the ballot for the Republican Presidential Primary election in New Hampshire and Nevada and intends to take the necessary steps to be on

the ballot in Arizona, Michigan, Montana, West Virginia, and Kansas. He has also provided a list of links to media coverage, much of which appears to be about this litigation and related cases filed in multiple jurisdictions. Mr. Castro also indicates that he has expended money and time on a campaign website, social media engagement, and an online political show with viewers in West Virginia and elsewhere. He states that those expenses were incurred before the case was filed.

Defendants Trump, the State of West Virginia, and the West Virginia Republican Party submitted evidence that Mr. Castro is not engaged in campaign activity in the State of West Virginia. The Chair of County Chairs of the West Virginia Republican Party indicated that, despite her familiarity with Republican politics on the ground in West Virginia, she had not heard of Mr. Castro and was unaware of any campaign effort by him or support for him. A national political strategist, Michael Dennehy, analyzed various aspects of Mr. Castro's campaign and concluded it was not a serious political campaign. (Dennehy Declaration, Document 79.) The website lacked key information and is incomplete, with policy statements left blank and a link for Spanish-language information that leads nowhere. (*Id.* at ¶¶ 7-9.) FEC filings revealed a total of $678 in contributions and $0 in expenditures as of September 30, 2023, while a legitimate presidential campaign requires approximately $20,000,000 to be competitive. (*Id.* at ¶¶ 12, 14.)

Mr. Dennehy found a lack of campaign infrastructure, including in the early primary states, a lack of any serious advertising campaign, and a lack of campaign workers, offices, and events, and concluded that Mr. Castro has zero chance of success at earning significant votes, donations, or any delegates because he has foregone "both basic retail politics and any form of active campaigning." (Dennehy Dec. at ¶ 21.) In response to Mr. Castro's suggestion that his earned media coverage could promote his campaign, Mr. Dennehy explained that the publications are not

targeted at a Republican demographic and the coverage is almost entirely about Mr. Castro's lawsuits seeking to prevent Donald Trump from appearing on a ballot, a topic that is unlikely to resonate with Republican primary voters. Mr. Castro does not register in national or state polling and is not qualified to appear on the ballot in many early states. In short, Mr. Dennehy opines that Mr. Castro has no chance of campaign success, regardless of Mr. Trump's presence on the ballot. Mark Blankenship, a West Virginia pollster, offered a similar opinion. He opined that Mr. Castro has not appeared in polling in West Virginia, and if Donald Trump were disqualified from running for the Republican nomination for President, other candidates with higher name recognition would likely benefit, rather than Mr. Castro.

During a hearing regarding Mr. Castro's standing to pursue essentially identical claims in New Hampshire, Mr. Castro testified that he did not have campaign offices, employees, or advertisements in any state at the time of the hearing. (NH Tr, Castro Testimony, at 53:2-54:24, Document 79-1.) He also admitted that these lawsuits were his sole campaign activity in any state. (*Id.* at 54:25-55:6.)

## STANDARD OF REVIEW

Mr. Castro is proceeding pro-se, and his pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

A motion to dismiss pursuant to Rule 12(b)(1) raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it. To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact must be "an invasion of a

legally protected interest that was concrete, particularized, and not conjectural or hypothetical." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 460 (4th Cir. 2005) (internal quotation marks and citations omitted).

"A defendant may challenge subject-matter jurisdiction in one of two ways: facially or factually." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (explaining that in a facial challenge, the defendant accepts the facts as pled and contends they are insufficient to support subject matter jurisdiction, while a factual challenge argues that the jurisdictional allegations are not true). The district court may consider matters outside the pleadings in a factual challenge to jurisdiction. *Id.* "[T]he procedural posture of the case dictates the plaintiff's burden as to standing," based on whether the parties have had the opportunity to conduct discovery. *Id.* "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," but at summary judgment, "the plaintiff can no longer rest on such mere allegations but must set forth by affidavit or other evidence specific facts." *Spokeo*, 578 U.S. at 338 (internal quotation marks and citations omitted). Courts consider facts as of the time the operative pleading was filed. *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 162 (4th Cir. 2023).

### DISCUSSION[1]

The Defendants presented separate motions with overlapping arguments. In the interest of efficiency and avoiding repetition, the Court will treat the arguments related to standing jointly.

The Defendants argue that the Plaintiff's claim is not ripe, since no candidate may file their formal announcement for the West Virginia primary election until January 8, 2024. The

---

[1] Although the parties presented arguments regarding a variety of grounds for dismissal, the Court will address only standing.

Defendants contend that the Plaintiff lacks standing under either a facial or factual challenge, emphasizing that it is his burden to demonstrate standing. They argue that he has not sufficiently alleged a specific injury and cannot demonstrate that such an injury exists. In their view, he cannot rely on a competitive injury because he is not a true competitor for the Republican nomination for President, given his lack of name recognition and support among Republican primary voters and his lack of campaign activity. Because he is making no effort to secure votes or contributions, the Defendants argue that he cannot show that Mr. Trump's presence on the ballot is preventing him from receiving such support. They urge the Court to reject the Plaintiff's effort to "manufacture" standing by filing campaign paperwork, without genuinely campaigning for President, emphasizing his own admission that his campaign is designed only to provide standing for his litigation efforts. The Defendants further argue that the alleged competitive injury is not traceable to any decision permitting Mr. Trump to appear on the 2024 Republican Presidential primary ballot, because ultimately voters decide which candidate to contribute to and vote for. Likewise, they assert that the Plaintiff has not plausibly alleged and cannot prove causation or redressability because the idea that removing Mr. Trump from the ballot would increase Mr. Castro's vote share is too speculative to support a claim.

    The Plaintiff argues in response that if he loses even one vote because of Mr. Trump's appearance on the ballot after having provided aid and comfort to an insurrection, he has been injured for purposes of the standing analysis. He further argues that the injury is traceable and would be redressed by the relief sought because the Court could enjoin "the state from printing any ballots with Defendant Donald John Trump's name, counting write-in votes in his favor, and any other relief that would prevent the State or Defendant Donald John Trump from violating

Section 3 of the 14th Amendment." (Castro Resp. at 2) (Document 53.) In response to the ripeness challenge, he argues that courts need not wait for an injury to occur but can instead stop a constitutional violation before it happens under these circumstances.

The Plaintiff brings this claim pursuant to Section 3 of the Fourteenth Amendment, which provides as follows:

> No person shall be a Senator or Representative in Congress, or elector of President and Vice-President, or hold any office, civil or military, under the United States, or under any State, who having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

For purposes of the standing analysis, the Court presumes that Mr. Castro's claims would be meritorious on the substance and considers only whether he has suffered an injury traceable to the challenged actions and redressable by the relief sought. *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 161 (4th Cir. 2023).[2]

The Fourth Circuit has found standing based on a political injury where a candidate challenged West Virginia's ballot-placement law, given expert testimony indicating that names listed first received windfall vote. *Nelson v. Warner*, 12 F.4th 376, 384–85 (4th Cir. 2021). The Fourth Circuit found injury based on the vote tally differential corresponding to ballot placement.

---

2 The Supreme Court of Colorado recently reached the merits of a case challenging former President Trump's qualification to appear on the ballot under Section 3 of the Fourteenth Amendment and concluded that "President Trump is disqualified from holding the office of President under Section Three," because he had engaged in insurrection within the meaning of that provision, and therefore he could not appear as a candidate on the presidential primary ballot. *Anderson v. Griswold*, 2023 CO 63, 2023 WL 8770111, at * 3 (S. Ct. Colo., Dec. 19, 2023).

*Id*. The court further concluded that the injury was traceable to the challenged policy and redressable by the relief sought from the named defendants because an injunction barring enforcement of the ballot placement statute would provide redress. *Id.* (but ultimately finding that the ballot placement statute was permissible). However, the court did not "reach the question of whether the so-called doctrine of competitive standing…is applicable in a case challenging a statute directing the order of listing partisan candidates for elective office on a statewide election ballot." *Id.* at 385, n. 9.

Because the Plaintiff filed more than two dozen similar cases, the Court has the benefit of previous decisions addressing these precise issues, arising from essentially identical complaints and facts, in other states. The courts that have ruled have uniformly concluded that the Plaintiff lacks standing. *Castro v. Trump*, 9:23-cv-80015 (S.D. Fla. 2023) (Doc. 33, June 26, 2023); *Castro v. New Hampshire Sec'y of State*, No. 23-CV-416-JL, 2023 WL 7110390, at *5–6 (D.N.H. Oct. 27, 2023), *aff'd sub nom. Castro v. Scanlan*, 86 F.4th 947 (1st Cir. 2023); *Castro v. Fed. Election Comm'n*, No. CV 22-2176 (RC), 2022 WL 17976630, at *2 (D.D.C. Dec. 6, 2022), *aff'd*, No. 22-5323, 2023 WL 2899541 (D.C. Cir. Apr. 10, 2023); *Castro v. Fontes and Trump*, 2:23-cv-01865 (D. Ariz.) (Document 74, Dec. 5, 2023); *Castro v. Amore and Trump*, 1:23-cv-00405 (D. R.I. Nov. 27, 2023). The reasoning in those previous decisions is persuasive, and neither the Plaintiff nor the Court has identified Fourth Circuit precedent that would support a different result here.

The First Circuit noted that "Castro does not suggest that his claimed injury stems from a restriction that has been placed on his ability to run in the 2024 New Hampshire Republican presidential primary. He contends that his injury stems solely from the absence of a restriction

10

on the ability of someone else to run in that race." *Castro v. Scanlan, et al.*, No. 23-1902, at 15 (1st Cir., Nov. 21, 2023). The First Circuit found that Mr. Castro could not show that he was competing with former President Trump in the 2024 New Hampshire Republican presidential primary. The court found that reaching the merits when the basis for standing was so weak would risk offering an advisory opinion – and doing so:

> in a case that asks us to render an opinion on a matter as important to our democratic system of government as any that is likely to arise in connection with a claim of political competitor standing: may a former President run for the Office of the President of the United States again even if he is shown to have engaged in insurrection or rebellion against the U.S. Constitution, or given aid or comfort to the enemies thereof.

*Id.* at 26 (internal punctuation omitted). Even if Mr. Castro took the necessary steps to appear on the ballot, the First Circuit explained that a plaintiff's "nominal appearance on the ballot" alone is not sufficient to "show a competitive injury with the requisite degree of concreteness and particularity." *Id.* at 30.

> [B]ecause a plaintiff incurs the kind of competitive injury that grounds Castro's assertion of standing by actually being a putative rival's competitor for either votes or contributions, we cannot agree that a showing that a plaintiff has taken the steps required to be placed on the ballot in the primary contest at issue necessarily always suffices to show such an injury.

*Id.* at 30-31. After outlining the record regarding Mr. Castro's "non-existent" "efforts to compete for votes and contributors," the court concluded that "any claim that the former President's presence on the ballot in the contest at issue will diminish Castro's votes or contributions is simply too speculative to credit." *Id.* at 32.

The District Court for the Federal District of Arizona similarly concluded that Mr. Castro lacked standing, addressing a facial challenge to the court's subject-matter jurisdiction, although

11

the court did consider some additional materials submitted by Mr. Castro. That court found that "Castro alleges no facts demonstrating a campaign presence in Arizona." *Castro v. Fontes, et. al.*, No. CV-23-01865-PHX-DLR, at 7 (D. Ariz.) (Document 74, Dec. 5, 2023). The court rejected Mr. Castro's "transparent efforts to manufacture standing for the sole purpose of pursuing litigation." *Id.* at 8-9. The court emphasized that its conclusion

> is not based on political prognostication or a perception that Castro is unlikely to win. Instead, it is based on a finding that Castro is not truly running for office. His campaign's raison d'etre is to contrive standing in order to pursue litigation to keep Trump off the ballot. Because Castro is not, in any real or concrete sense, competing with Trump for the Republican Party's presidential nomination, Trump's motion to dismiss for lack of subject-matter jurisdiction will be granted.

*Id.* at 10. The court went on to deny a motion to amend, explaining that "Castro is not genuinely competing for the Republican Party's presidential nomination; he is transparently and in bad faith attempting to manufacture an injury for the sole purpose of pursing litigation, not to obtain redress for any concrete, non-speculative injury." *Id.*

The Court has little to add to the thorough, well-reasoned opinions from the District Court for the District of New Hampshire, the First Circuit Court of Appeals, and the District Court for the District of Arizona. Under either a facial or factual challenge, the Plaintiff has not met his burden. The Plaintiff alleged that he is a candidate for the Republican nomination for President and anticipates being on the ballot in West Virginia. His complaint contains few specific factual allegations related to his candidacy. The law is not well-developed with respect to standing based on political competition. However, the Court finds that Mr. Castro's complaint relies on supposition and speculation: that if Mr. Trump were removed from the ballot, his voters and

contributors would default to other candidates, including Mr. Castro.[3] But he supplies no specifics to support the conclusion that any Trump voters would become Castro voters if his suit was successful. As such, he has not met his burden of showing a concrete and particularized injury to him caused by Mr. Trump's allegedly wrongful anticipated presence on the ballot, or that any injury would be redressed by precluding Mr. Trump's appearance on the ballot.

The evidentiary submissions only make matters worse for the Plaintiff. His admission under oath during testimony in New Hampshire that he has no meaningful campaign activity beyond pursuing these lawsuits is fatal to his claim that he is in genuine competition with Donald Trump for the Republican nomination for President or for West Virginia's delegates. The evidence establishes that he has no campaign offices, staff, or advertising in West Virginia, does not appear in polling, has little name recognition among West Virginia Republican primary voters, and has extremely minimal campaign funds, vastly insufficient to run an actual campaign. If there were any question as to whether the allegations in the complaint are sufficient to overcome a facial challenge, the evidentiary submissions remove any doubt that Mr. Castro's purported "campaign" exists as a vehicle for pursuing litigation, not votes. Because he is not actually campaigning for the Republican nomination for President, he has no concrete and particularized competitive injury based on former President Trump's appearance on the ballot. Likewise, his purported injury of being deprived of votes could not be redressed by precluding Mr. Trump from appearing on the ballot, because without an active campaign, there is no reason to suppose he would receive those

---

3 As the Defendants point out, no candidate may officially file in West Virginia until January 8, 2024. For purposes of this opinion, the Court has presumed that both Mr. Trump and Mr. Castro will take the necessary procedural steps to appear on the ballot. Mr. Castro has averred that he will do so, and the record is clear that Mr. Trump is taking all the steps ordinarily associated with a serious campaign. Requiring parties to wait until the filing period to bring litigation of this nature would often prevent the resolution of such claims, given the time necessary to brief and resolve litigation, even on an expedited basis, and the relatively brief period between the official filing period in West Virginia and the primary election.

votes.[4]   Therefore, the Court finds that Mr. Castro lacks standing, depriving this Court of subject-matter jurisdiction, and the motions to dismiss, as converted to motions for summary judgment, should be granted.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Motion to Dismiss of Defendant Donald John Trump* (Document 33), the *Secretary of State's Motion to Dismiss* (Document 45), the *West Virginia Republican Party's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Memorandum of Law in Support* (Document 42) and the *State of West Virginia's Motion to Dismiss* (Document 44) be **GRANTED**.   The Court further **ORDERS** that this matter be **DISMISSED** without prejudice for lack of jurisdiction and **REMOVED** from the Court's docket.   Finally, the Court **ORDERS** that all pending motions be **TERMINATED as moot.**

The Court **DIRECTS** the Clerk to send a certified copy of this Order to Magistrate Judge Aboulhosn, to counsel of record and to any unrepresented party.

ENTER:       December 21, 2023

*Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

---

[4] As some of the Defendants and their witnesses point out, it is unlikely that voters who currently support Mr. Trump would select as a second choice the candidate whose campaign is based entirely on an effort to remove their first-choice candidate from the race, further exemplifying the lack of redressability.